UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DENNIS ALLEN, MARY JANE CRACRAFT, LELAN LITTRELL and GLASS, MOLDERS, POTTERY, PLASTIC AND ALLIED INDUSTRIAL WORKERS, LOCAL NO. 41, AFL-CIO,<br><br>      Plaintiffs,<br><br>vs.<br><br>LEONARD D. KRISTAL, and JOHN L. CRARY,<br><br>      Defendants. | Case No: C-1-01-159<br><br>Judge Herman J. Weber<br>Magistrate Judge Timothy S. Hogan<br><br>DEFENDANT JOHN L. CRARY'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| JOHN L. CRARY,<br><br>      Cross-Claimant,<br><br>vs.<br><br>LEONARD D. KRISTAL,<br><br>      Cross-Defendant. | |
| JOHN L. CRARY,<br><br>      Third-Party Plaintiff,<br><br>vs.<br><br>POLLY JONES, SHIRLEY MONROE, JAMES THELAN,<br><br>      Third-Party Defendants | |

1

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.  **FINDINGS OF FACT:**

    A.  **Background information regarding Defendant John L. Crary, Defendant Leonard D. Kristal, The Lassen Companies, Inc. and Wright-Bernet, Inc.**

1. John L. Crary ("Crary") was an outside director of The Lassen Companies, Inc. ("Lassen") between December 1998 through August 2000 (the "Relevant Time Period").
   a. Declaration of John L. Crary at paragraph 2.
2. During the entirety of the Relevant Time Period, Crary lived in Northern California; Lassen's offices were approximately 350 miles away in Southern California and Wright-Bernet's facilities and officers were in Ohio.
   a. Declaration of John L. Crary at paragraph 35.
3. From approximately October 1999 through approximately May 2000, Crary was employed full time at a company called Ants Software, Inc.
   a. Declaration of John L. Crary at paragraph 36.
4. Lassen had three directors, Crary, Robert Morris and Leonard D. Kristal ("Kristal"), who comprised its entire board, during the Relevant Time Period.
   a. Declaration of John L. Crary at paragraph 5.
   b. Declaration of Robert Morris at paragraph 10.
   c. Declaration of Robert Howard at paragraph 6.
   d. Declaration of James Thelen at paragraph 6.
5. Crary's duty as Chairman of the board was to chair board meetings, and as an individual director, he had no individual authority or duty to monitor or oversee Kristal, the CEO of Lassen. Kristal reported to the entire board of three persons, not to any one director. Any oversight function of the CEO is accomplished by the Board collectively.
   a. Declaration of John L. Crary at paragraph 22.
   b. Declaration of Robert Morris at paragraph 10.
   c. Declaration of Robert Howard at paragraph 8.
   d. Declaration of Paul Marotta, Exhibit A.

2
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

  e. Declaration of James Thelen at paragraph 8.

6. Crary was never involved in the day-to-day operations of Lassen or its wholly owned subsidiary Wright-Bernet, Inc. ("Wright-Bernet").

  a. Declaration of John L. Crary at paragraph 6.

  b. Declaration of Robert Morris at paragraph 5.

  c. Declaration of Robert Howard at paragraph 4.

  d. Declaration of James Thelen at paragraph 4.

7. Crary was never employed by Lassen in any capacity.

  a. Declaration of John L. Crary at paragraph 3.

8. Crary never worked at Lassen's offices.

  a. Declaration of John L. Crary at paragraph 4.

9. Crary never had an operating role with Lassen/Wright-Bernet and no operating people reported to him at any time.

  a. Declaration of John L. Crary at paragraph 7.

  b. Declaration of Robert Morris at paragraph 6.

  c. Declaration of Robert Howard at paragraph 5.

  d. Declaration of James Thelen at paragraph 5.

10. Leonard D. Kristal originated and promoted Lassen.

  a. Declaration of John L. Crary at paragraph 8.

11. In connection with this origination and promotion, Kristal ensured that he was in charge of all operations of Lassen, ensured that he was Chief Executive Officer ("CEO") of Lassen, and ensured that he kept his Board seat.

  a. Declaration of John L. Crary at paragraph 9.

12. The Board of Lassen, not Crary individually, appointed Kristal as the CEO and Chief Financial Officer of Lassen.

  a. Declaration of John L. Crary at paragraph 10.

  b. Declaration of Robert Morris at paragraph 13.

  c. Declaration of Robert Howard at paragraph 6.

13. Kristal was the CEO of Wright-Bernet during the Relevant Time Period.

    a. Declaration of John L. Crary at paragraph 11.

    b. Declaration of Robert Morris at paragraph 8.

    c. Declaration of Robert Howard at paragraph 7.

    d. Declaration of James Thelen at paragraph 7.

14. Robert Morris, Kristal and Crary entered into a Shareholders Agreement binding each of them to elect the others as the directors of Lassen so long as they owned any stock of Lassen.

    a. Declaration of John L. Crary at paragraph 12.

15. Crary is the managing member of Juniper Capital LLC ("Juniper"), a California limited liability company, and the main capital investor in Lassen.

    a. Declaration of John L. Crary at paragraph 13.

16. On or about January 31, 2000, Juniper made a loan in the principal amount of $1,000,000.00 (the "Loan") in favor of Lassen.

    a. Declaration of John L. Crary at paragraph 14.

17. Kristal failed to disclose to Crary, prior to or after the Loan being made, that he had been systematically withholding money from employees' paychecks for federal withholding taxes, state withholding taxes and health insurance premiums and payments, and had failed to pay over these withheld monies to the internal revenue service, the appropriate state taxing authorities and the persons to whom health insurance premiums and payments were to be made.

    a. Declaration of John L. Crary at paragraph 15.

18. The Loan was never repaid.

    a. Declaration of John L. Crary at paragraph 16.

19. Crary repeatedly asked for a copy of financial statements of Lassen but never received one.

    a. Declaration of John L. Crary at paragraph 17.

    b. Declaration of Paul Marotta, Exhibit B.

20. Kristal is dishonest and may lie under oath.

    a. Declaration of Paul Marotta, Exhibit C.

    b. Declaration of Paul Marotta, Exhibit D.

    c. Declaration of Paul Marotta, Exhibit E.

    d. Declaration of Robert Morris at paragraph 28.

    e. Declaration of Leslie Leath at paragraph 13.

    f. Declaration of John L. Crary at paragraph 37.

    g. Declaration of James Thelen at paragraph 15.

**B. Defendant Leonard D. Kristal's fiduciary status and breach thereof.**

21. <u>Kristal was the named "plan administrator" of the Lassen 401k Plan during the Relevant Time Period.</u>

    a. Declaration of Paul Marotta, Exhibit F.

22. <u>Kristal functioned as a fiduciary with respect to the Lassen Group Benefit Plan (the "Plan") during the Relevant Time Period.</u>

    a. Declaration of Paul Marotta, Exhibit G.

23. <u>Kristal failed to tender Lassen health insurance premium money to the persons to whom health insurance premiums and payments were to be made during the Relevant Time Period.</u>

    a. Declaration of Paul Marotta, Exhibit H.

24. <u>Kristal failed to tender employee contributions to the Lassen 401k Plan during the Relevant Time Period.</u>

    a. Declaration of Paul Marotta, Exhibit I.

25. <u>Kristal exercised discretionary control and dominion over all Lassen/Wright-Bernet funds during the Relevant Time Period.</u>

    a. Declaration of John L. Crary at paragraph 18.

    b. Declaration of Paul Marotta, Exhibit J.

    c. Declaration of Paul Marotta, Exhibit K.

    d. Declaration of Leslie Leath at paragraph 11.

    e. Declaration of Robert Morris at paragraph 9.

26. Kristal exercised discretionary authority and control with respect to management of the Plan and exercised authority and control with respect to the management and disposition of employee contributions to the Plan during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit L.

**C. Third-Party Defendants Shirley Monroe and Polly Jones' status and conduct.**

27. Shirley Monroe was a Wright-Bernet employee charged with the administration of payroll, human resources and the 401(k) plan

    a. Declaration of Paul Marotta, Exhibit M.

28. Shirley Monroe was the director of human resources for Lassen and was responsible for informing Lassen's payroll service how much to deduct for each Lassen employee each week for contributions to the health benefit plan.

    a. Declaration of Paul Marotta, Exhibit N.

29. Shirley Monroe has never spoken with Crary about anything, including the health benefit plan and the contributions thereto.

    a. Declaration of Paul Marotta, Exhibit O.

30. Shirley Monroe did not inform Crary that Kristal had failed to pay health insurance premiums and payments during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit P.

31. Polly Jones was the named Plan Administrator for the Lassen Group Benefit Plan during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit Q.

32. Polly Jones did not inform Crary that Kristal had failed to pay health insurance premiums and payments during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit R.

33. The health insurance company, Great-West Life terminated the health plan in February 2000, and the health plan or individual participants did not suffer any loss before February 2000.

    a. Declaration of Paul Marotta, Exhibit S.

D. **Defendant John L. Crary's non-fiduciary status and lack of knowledge of Defendant Leonard D. Kristal's breaches.**

34. Kristal failed to inform Crary that he had been systematically withholding money from employees' paychecks for health insurance premiums and payments, and had failed to pay over these withheld money's to the persons to whom health insurance premiums and payments were to be made.

    a. Declaration of John L. Crary at paragraph 19.

35. Kristal failed to inform Crary that he had been systematically withholding money from employees' paychecks for 401k Plan payments, and had failed to pay over all the withheld money's to the 401k Plan.

    a. Declaration of John L. Crary at paragraph 20.

36. Kristal told employees and affiliates of Lassen/Wright-Bernet not to contact Crary during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit T.
    b. Declaration of Paul Marotta, Exhibit U.
    c. Declaration of Paul Marotta, Exhibit V.
    d. Declaration of Robert Morris at paragraph 27.
    e. Declaration of Leslie Leath at paragraph    12.

37. Crary never appointed Kristal as a fiduciary to the 401(k) plan or the Plan.

    a. Declaration of John L. Crary at paragraph 21.

38. Crary was unaware that any such appointment had made.

    a. Declaration of John L. Crary at paragraph 22.

39. As an individual director, Crary had no authority or duty to monitor or oversee any fiduciary for Lassen Group Benefit Plan or 401(k) plan (collectively, the "Plans").

    a. Declaration of John L. Crary at paragraph 23.
    b. Declaration of Robert Morris at paragraph 11.
    c. Declaration of Robert Howard at paragraph 9.
    d. Declaration of James Thelen at paragraph 9.

7
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

40. As an individual director, Crary had no capacity to unilaterally appoint or remove the CEO of Lassen during the Relevant Time Period.

    a. Declaration of John L. Crary at paragraph 24.

    b. Declaration of Robert Morris at paragraph 12.

    c. Declaration of Robert Howard at paragraph 10.

    d. Declaration of James Thelen at paragraph 10.

41. As an individual director, Crary had no capacity to unilaterally appoint or remove any fiduciary of the Plans.

    a. Declaration of John L. Crary at paragraph 25.

    b. Declaration of Robert Morris at paragraph 14.

    c. Declaration of Robert Howard at paragraph 11.

    d. Declaration of James Thelen at paragraph 11.

42. Crary had no prior knowledge of any wrongdoing by Kristal or other fiduciaries of the Plans. The first time Crary became aware of Plaintiffs' allegations was when he read the allegations contained in this lawsuit.

    a. Declaration of John L. Crary at paragraph 26.

43. Crary never exercised any discretionary authority or discretionary control over the management of the Plans or any authority or control over management or disposition of the Plans' assets during the Relevant Time Period.

    a. Declaration of John L. Crary at paragraph 27.

    b. Declaration of Robert Morris at paragraph 15.

44. Crary never rendered any investment advice regarding the Plans' assets for a fee or other compensation, nor ever had authority or responsibility to do so during the Relevant Time Period.

    a. Declaration of John L. Crary at paragraph 28.

    b. Declaration of Robert Morris at paragraph 16.

45. Crary never had any discretionary authority or responsibility in connection with the administration of the Plans during the Relevant Time Period.

  a. Declaration of John L. Crary at paragraph 29.

  b. Declaration of Robert Morris at paragraph 17.

46. Crary never exercised any dominion or control over any funds at Lassen or Wright-Bernet during the Relevant Time Period.

  a. Declaration of John L. Crary at paragraph 30.

  b. Declaration of Leslie Leath at paragraph 5.

  c. Declaration of Robert Morris at paragraph 18.

47. Crary never signed any checks on behalf of Lassen or Wright-Bernet, nor performed any banking functions on behalf of either of them.

  a. Declaration of Paul Marotta, Exhibit W.

  b. Declaration of John L. Crary at paragraph 31.

  c. Declaration of Paul Marotta, Exhibit X.

  d. Declaration of Leslie Leath at paragraph 5.

  e. Declaration of Robert Morris at paragraph 19.

48. Crary resigned as a director in August 2000, and tendered all of his stock back to Lassen/Wright-Bernet.

  a. Declaration of John L. Crary at paragraph 32.

49. Crary resigned as a director of Lassen because he was concerned that Lassen was not making payroll tax payments to the IRS after being assured by Kristal that such payments were being properly handled.

  a. Declaration of John L. Crary at paragraph 33.

50. Crary never exercised any dominion or control over any of the Plans' contributions or proceeds.

  a. Declaration of Paul Marotta, Exhibit Y.

  b. Declaration of John Crary at paragraph 34.

  c. Declaration of Robert Morris at paragraph 20.

  d. Declaration of Leslie Leath at paragraph 5.

51. None of the Plaintiffs in this action have any information that John Crary was a fiduciary of

1    the Plan.
2        a.  Declaration of Paul Marotta, Exhibit Z.
3        b.  Declaration of Paul Marotta, Exhibit AA.
4        c.  Declaration of Paul Marotta, Exhibit BB.
5    52. None of the Plaintiffs in this action have any information that Crary was a 401K plan fiduciary.
7        a.  Declaration of Paul Marotta, Exhibit CC.
8        b.  Declaration of Paul Marotta, Exhibit DD.
9        c.  Declaration of Paul Marotta, Exhibit EE.
10   53. None of the Plaintiffs in this action ever wrote letters to, called, or otherwise contacted Crary to tell him that there were problems with health deducted Plan contributions not being paid to Great West, the Wright-Bernet health insurance provider.
13       a.  Declaration of Paul Marotta, Exhibit FF.
14       b.  Declaration of Paul Marotta, Exhibit GG.
15       c.  Declaration of Paul Marotta, Exhibit HH.
16       d.  Declaration of Paul Marotta, Exhibit II.
17   54. Randy Pickering's telephone records do not support his claim that he called John Crary during the winter of 1999-2000 and told him that deducted Plan contributions were not being properly paid to Great West, the Wright-Bernet health insurance provider.
20       a.  Declaration of Paul Marotta, Exhibit JJ.
21   55. All of Plaintiffs Dennis Allen and Mary Cracraft's health insurance bills have been paid and they have suffered no losses or injury.
23       a.  Declaration of Paul Marotta, Exhibit KK.
24       b.  Declaration of Paul Marotta, Exhibit LL.
25   56. None of the Plaintiffs have any information that Crary personally used deducted Plan contributions for his own interests or purposes during the Relevant Time Period.
27       a.  Declaration of Paul Marotta, Exhibit MM.
28       b.  Declaration of Paul Marotta, Exhibit NN.

   c. Declaration of Paul Marotta, Exhibit OO.

   d. Declaration of Paul Marotta, Exhibit PP.

57. None of the Plaintiffs know what was discussed between Crary and Kristal during the Relevant Time Period.

   a. Declaration of Paul Marotta, Exhibit QQ.

   b. Declaration of Paul Marotta, Exhibit RR.

   c. Declaration of Paul Marotta, Exhibit SS.

   d. Declaration of Paul Marotta, Exhibit TT.

58. None of the Plaintiffs know how often Crary spoke with Kristal.

   a. Declaration of Paul Marotta, Exhibit UU

   b. Declaration of Paul Marotta, Exhibit VV.

59. None of the Plaintiffs know what actions Crary took concerning Wright-Bernet's financial problems during the Relevant Time Period.

   a. Declaration of Paul Marotta, Exhibit WW.

60. None of the Plaintiffs know what Crary did to monitor or oversee Kristal during the Relevant Time Period.

   a. Declaration of Paul Marotta, Exhibit XX.

   b. Declaration of Paul Marotta, Exhibit YY.

   c. Declaration of Paul Marotta, Exhibit ZZ.

61. None of the Plaintiffs have any information that Crary failed to monitor or oversee Kristal during the Relevant Time Period.

   a. Declaration of Paul Marotta, Exhibit AAA.

   b. Declaration of Paul Marotta, Exhibit BBB.

62. None of the Plaintiffs have any information that Crary appointed Kristal as the 401(k) plan fiduciary.

   a. Declaration of Paul Marotta, Exhibit CCC.

   b. Declaration of Paul Marotta, Exhibit DDD.

   c. Declaration of Paul Marotta, Exhibit EEE.

    d. Declaration of Paul Marotta, Exhibit FFF.

63. None of the Plaintiffs have any information that Crary actually appointed Kristal as the Plan fiduciary.

    a. Declaration of Paul Marotta, Exhibit GGG.

    b. Declaration of Paul Marotta, Exhibit HHH.

    c. Declaration of Paul Marotta, Exhibit III.

64. Plaintiff Dennis Allen first learned there was a problem with the Plan in February or March 2000.

    a. Declaration of Paul Marotta, Exhibit JJJ.

65. Plaintiff Lelan Litrell first learned there was a problem with the Plan in April 2000.

    a. Declaration of Paul Marotta, Exhibit KKK.

66. None of the Plaintiffs know what actions Crary took with regard to Lassen/Wright Bernet during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit LLL.

67. Plaintiff Dennis Allen is not a participant in the 401(k) plan.

    a. Declaration of Paul Marotta, Exhibit MMM.

68. Plaintiff Mary Cracraft is not a participant in the 401(k) plan at issue.

    a. Declaration of Paul Marotta, Exhibit NNN.

69. Plaintiff Lelan Littrell participated in the 401(k) plan for the last three months of 1999, and all of his 401(k) contributions were paid over into the 401(k) plan.

    a. Declaration of Paul Marotta, Exhibit OOO.

70. Plaintiff Lelan Littrell has not sued Crary for the benefit of the Plans, but only for his personal damages.

    a. Declaration of Paul Marotta, Exhibit PPP.

71. Robert Bernet was the President of Wright-Bernet.

    a. Declaration of Paul Marotta, Exhibit QQQ.

72. Robert Bernet has no information that (i) Crary was a fiduciary of the health Plan, (ii) Crary was a 401K plan fiduciary, (iii) Crary actually appointed Kristal as the health plan

fiduciary, or (iv) Crary appointed Kristal as the 401(k) plan fiduciary.

    a. Declaration of Paul Marotta, Exhibit RRR.

73. Robert Bernet does not have any information that Crary personally used deducted health Plan contributions for his own interests or purposes during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit SSS.

74. Michael Lindemuth was the director of operations of Lassen.

    a. Declaration of Paul Marotta, Exhibit TTT.

75. Michael Lindemuth has no information that (i) Crary was a fiduciary of the Plan, (ii) Crary was a 401K plan fiduciary, (iii) Crary actually appointed Kristal as the health plan fiduciary, or (iv) Crary appointed Kristal as the 401(k) plan fiduciary.

    a. Declaration of Paul Marotta, Exhibit UUU.

76. Michael Lindemuth believes that Crary did not personally use deducted health Plan contributions for his own interests or purposes during the Relevant Time Period.

    a. Declaration of Paul Marotta, Exhibit VVV.

77. Leslie Leath was the controller at Lassen and Wright-Bernet from October 2000 to November 2001.

    a. Declaration of Leslie Leath at paragraph 3.

78. Leslie Leath never wrote letters to, called, or otherwise contacted Crary to tell him that there were problems with deducted health Plan contributions not being paid to Great West, the Lassen health insurance provider, or problems with deducted Lassen 401(k) plan contributions.

    a. Declaration of Leslie Leath at paragraph 4.

79. Crary never instructed Leslie Leath on which Lassen or Wright-Bernet bills to pay, nor did he ever make any decisions with regard to spending at Lassen/Wright-Bernet.

    a. Declaration of Leslie Leath at paragraph 5.

80. Kristal made all decisions concerning corporate finances of Lassen/Wright-Bernet, including use of payment of funds that came into the corporate accounts.

    a. Declaration of Leslie Leath at paragraphs 6 & 8.

      b. Declaration of Robert Morris at paragraph 21.

81. Kristal signed all checks on behalf of Lassen and Wright-Bernet during the period from October 2000 to November 2001.

      a. Declaration of Leslie Leath at paragraph 7.

82. Lassen did not produce any financial statements during the period from October 2000 to November 2001.

      a. Declaration of Leslie Leath at paragraph 9.

83. Leslie Leath has no information or knowledge that (i) Crary was a fiduciary of the Lassen Group Benefit Plan, (ii) Crary was a fiduciary for the Lassen 401K plan, (iii) Crary actually appointed Kristal as the health plan fiduciary, or (iv) Crary appointed Kristal as the 401(k) plan fiduciary.

      a. Declaration of Leslie Leath at paragraph 10.

84. Robert Morris was a consultant with the title of vice-president, a shareholder and one of the three directors of Lassen from approximately May, 1998 to January, 2002. He was also in charge of sales for Lassen and Wright-Bernet.

      a. Declaration of Robert Morris at paragraph 3.

85. Kristal wasted an incredible amount of money on an accounting system for Lassen that he was never able to get working properly and Lassen, to Morris' knowledge, never produced any usable financial statements.

      a. Declaration of Robert Morris at paragraph 4.

86. Robert Morris had no knowledge that there were any problems with deducted health plan contributions not being paid to the health insurance carrier.

      a. Declaration of Robert Morris at paragraph 22.

87. Robert Morris never discussed with Crary or told him that there were problems with deducted Lassen health benefit plan contributions not being paid to Great West, the Lassen health insurance provider, or problems with deducted Lassen 401(k) plan contributions, nor is he aware of any other person who so informed Crary nor does he believe that Crary knew of such problems.

    a. Declaration of Robert Morris at paragraph 23.

88. Robert Morris had no knowledge that there were any problems with payroll taxes not being paid to the proper taxing authorities, nor did he ever discuss with Crary or tell him that there were problems with Lassen/Wright-Bernet payroll taxes.

    a. Declaration of Robert Morris at paragraphs 24 and 25.

89. Robert Morris has no information or knowledge that (i) Crary was a fiduciary of the Lassen Group Benefit Plan, (ii) Crary was a fiduciary for the Lassen 401(k) plan, (iii) Crary appointed Kristal as either CEO or as a health plan fiduciary, or (iv) Crary appointed Kristal as the 401(k) plan fiduciary.

    a. Declaration of Robert Morris at paragraph 26.

90. Robert Howard was the special corporate counsel and Secretary of Lassen and Wright-Bernet.

    a. Declaration of Robert Howard at paragraph 3.

91. Robert Howard never knew that there were problems with deducted Lassen health benefit plan contributions not being paid to Great West, the Lassen health insurance provider, or problems with deducted Lassen 401(k) plan contributions during the period of time he worked for Lassen.

    a. Declaration of Robert Howard at paragraph 12.

92. Robert Howard never discussed with Crary or told him that there were problems with deducted Lassen health benefit plan contributions not being paid to Great West, the Lassen health insurance provider, or problems with deducted Lassen 401(k) plan contributions.

    a. Declaration of Robert Howard at paragraph 13.

93. Robert Howard never discussed with Crary or told him that there were problems with Lassen/Wright-Bernet payroll taxes.

    a. Declaration of Robert Howard at paragraph 13.

94. Robert Howard has no information or knowledge that (i) Crary was a fiduciary of the Lassen Group Benefit Plan, (ii) Crary was a fiduciary for the Lassen 401(k) plan, (iii) Crary appointed Kristal as either CEO or as a health plan fiduciary, or (iv) Crary appointed

Kristal as the 401(k) plan fiduciary.

    a. Declaration of Robert Howard at paragraph 14.

95. James Thelen was the controller at Lassen and Wright-Bernet from August 1999 to September 2000.

    a. Declaration of James Thelen at paragraph 3.

96. James Thelen never discussed with Crary or told him that there were problems with deducted Lassen health benefit plan contributions not being paid to Great West, the Lassen health insurance provider, or problems with deducted Lassen 401(k) plan contributions.

    a. Declaration of James Thelen at paragraph 12.

97. James Thelen never discussed with Crary or told him that there were problems with Lassen/Wright-Bernet payroll taxes.

    a. Declaration of James Thelen at paragraph 13.

98. James Thelen has no information or knowledge that (i) Crary was a fiduciary of the Lassen Group Benefit Plan, (ii) Crary was a fiduciary for the Lassen 401K plan, (iii) Crary actually appointed Kristal as the health plan fiduciary, or (iv) Crary appointed Kristal as the 401(k) plan fiduciary.

    a. Declaration of James Thelen at paragraph 14.

## II. CONCLUSIONS OF LAW:

1. **DEFENDANT JOHN L. CRARY WAS NEVER A FIDUCIARY OF THE PLANS UNDER ERISA DURING THE RELEVANT TIME PERIOD.**

[ERISA §3(21)(A); §3(21)(B); 29 U.S.C. §1002(21)(A); See *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *Brock v. Hendershott,* 840 F.2d 339, 342 (6th Cir. 1988); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir.1990). *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995); *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998)].

2. **CRARY HAD NO ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF KRISTAL'S BREACH OF FIDUCIARY DUTY DURING THE RELEVANT TIME PERIOD AND, THEREFORE, HAD NO REASON TO CLOSELY MONITOR KRISTAL.**

[ERISA §405(a), 29 U.S.C. §1105(a); Conference Report at 299, 3 ERISA Leg. Hist. At 4566; See also *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan*, 650 F.Supp. 359, 369-370 (N.D. Ga. 1986); *Monson v. Century Manufacturing Co.*, 739 F.2d 1293 (8th Cir. 1984); *Davidson v. Cook*, 567 F.Supp. 225 (E.D. Va. 1983), *aff'd*, 734 F.2d 10 (4th Cir.), *cert. den.*, 469 U.S. 899 (1984); *Fink v. National Savings & Trust Co.*, 772 F.2d 951, 958 (D.C. Cir. 1985)].

3. <u>CRARY NEVER ENGAGED IN PROHIBITED TRANSACTIONS UNDER ERISA DURING THE RELEVANT TIME PERIOD.</u>

[ERISA §3(14)(A), 29 U.S.C. §1002(14)(A); §406(b)(1), 29 U.S.C. §1106(b)(1)].

4. <u>PLAINTIFFS CANNOT RECOVER THEIR INDIVIDUAL LOSS UNDER ERISA.</u>

[§409(a) of ERISA, 29 U.S.C. §1109(a); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-44 (1985); *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993) (plaintiff may not recover under § 1109 for personal losses suffered as a result of poor management of an ERISA plan); *Bryant v. International Fruit Prod. Co.*, 886 F.2d 132 (6th Cir.1989) (plaintiff may not recover under §1109 for personal pension benefits lost)].

5. <u>PLAINTIFF GLASS, MOLDERS, POTTERY, PLASTIC AND ALLIED INDUSTRIAL WORKERS, LOCAL NO. 41, AFL-CIO UNION HAS NO STANDING TO SUE UNDER</u> ERISA.

[ERISA §502(a); 29 U.S.C. §1132(a); See *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir.1989) (plaintiff must be either a participant or a beneficiary to bring an ERISA action); *Cf., Utility Workers Union v. Consumers Power Co.*, 453 F.Supp. 447 (E.D.Mich.1978) (employee organization has no standing under ERISA § 502), *aff'd*, 637 F.2d 1082 (6th Cir.1981), vacated on other ground*s*, 451 U.S. 1014 (1980); *Intern. Union v. Auto Glass Employees Fed. Credit*, 858 F.Supp. 711, 722 (M.D.Tenn. 1994); 29 U.S.C. §1002(7); 29 U.S.C. §1002(8); 29 U.S.C. §1002(21)(A)(i), (iii); *New Jersey State AFL-CIO v. New Jersey*, 747 F.2d 891, 893 (3d Cir.1984) ("It is clear from the statute that labor unions are neither participants nor beneficiaries")].

///

///

///

6. **CRARY IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW WITH RESPECT TO THE ENTIRE FIRST AMENDED COMPLAINT BECAUSE THERE IS NO TRIABLE ISSUE OF MATERIAL FACT.**

[See, Sections 1-5 above].

Dated: October 15, 2003

/s/ Stephen R. Felson
_____
Stephen R. Felson (0038432)
617 Vine St.  Suite 1401
Cincinnati, Ohio 45202
Phone: (513) 721-4900
Fax: (513) 639-7011
Email:  stevef8953@aol.com

Paul David Marotta, California State Bar No. 111812
Jennifer Chen, California State Bar No. 205264
THE CORPORATE LAW GROUP
500 Airport Boulevard, Suite 120
Burlingame, CA 94010
Telephone:    (650) 227-8000
Facsimile:     (650) 227-8001

## CERTIFICATION OF SERVICE

I hereby certify that on October 15, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following.

Leonard Kristal (pro se)
107 Diablo Drive
Kentfield, CA 94904

Leonard Kristal
ldkristal@yahoo.com

David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax: (513) 721-1178

/s/ Stephen R. Felson
_____

1  I hereby certify that the foregoing was served upon the following by ordinary U.S. Mail this 15th day of October, 2003 addressed as follows:

2

3  Leonard Kristal (pro se)
107 Diablo Drive
Kentfield, CA 94904

4

5  Leonard Kristal
ldkristal@yahoo.com

6  David M. Cook (0023469)
Stephen A. Simon (0068268)

7  David M. Cook, LLC
22 West Ninth Street

8  Cincinnati, Ohio 45202
Phone: (513) 721-7500

9  Fax: (513) 721-1178

10                                          /s/ Roberto Galvez
                                            _____
11                                          Roberto Galvez
                                            500 Airport Blvd., Suite 120
12                                          Burlingame, CA 94010
                                            Telephone: (650) 227-8000
                                            Facsimile:  (650) 227-8001

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW