**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION, CINCINNATI**

| | | |
|---|---|---|
| **Dennis Allen, et al.** | : | |
| **Plaintiffs** | : | **Case No. C-1-01-159** |
| | : | **Judge Herman S. Weber** |
| **v.** | | **Magistrate Judge Timothy S. Hogan** |
| | : | |
| **Leonard Kristal** | : | **PLAINTIFFS  MEMORANDUM IN OPPOSITION TO DEFENDANT JOHN** |
| **and** | : | **L. CRARY S MOTION FOR SUMMARY JUDGMENT** |
| **John Crary** | : | |
| **Defendants** | : | **and** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS  CROSS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JOHN L. CRARY**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Background and Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Wright-Bernet, The Lassen Companies Inc. and the Lassen Group
            Benefits Plan.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    Lassen s Deduction of  Employee Contributions, Conversion of them to
            Corporate Use, Failure to Fund the Group Benefits Plan, and  Ultimate
            Termination of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.    Crary Breached His ERISA Fiduciary Duties By Failing to Monitor and
            Oversee Kristal as Plan Fiduciary.  . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    Case Law Clearly Establishes Erisa Fiduciary Liability upon Those
                  Who Have the Power to Appoint, Retain and Remove Plan
                  Fiduciaries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    Crary Possessed the Power to Appoint, Retain And/or Remove
                  Leonard D. Kristal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            3.    Crary Had Both Actual and Constructive Knowledge of Leonard D.
                  Kristal s Malfeasance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                  a.    Crary Had Actual Knowledge of Kristal s Failure to Remit
                        Deducted Health Care Premiums to Great West.  . . . . . . 23

                  b.    Crary Had Constructive Knowledge of Kristal s Failure to
                        Remit Deducted Health Care Premiums to Great West.  . 24

      B.    Crary May Be Held Liable For Breach of ERISA Fiduciary Duty on Two
            Additional Grounds.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            1.    Crary May be Held Liable for Breach of Fiduciary Duty Based on
                  His Own Exercise of Discretion Over the Management and/or
                  Disposition of Plan Assets. . . . . . . . . . . . . . . . . . . . . . . . . . . 26

       2.      <u>Crary May Be Found Liable As A Co-fiduciary to the Lassen Plans</u>.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

C.      Crary, As a Party-in-Interest Under ERISA, Is Liable for Prohibited
Transactions He Engaged or Participated In. . . . . . . . . . . . . . . . . . . . 29

D.      The Union Has Standing to Sue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

E.      Plaintiffs Seek Appropriate Remedies in this Case. . . . . . . . . . . . . . . 31

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## SUMMARY OF ARGUMENT

Plaintiffs commenced this action on March 16, 2001 against Defendants, The Lassen Companies, Inc. ( Lassen ) and Leonard D. Kristal for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act of 1974. <u>See</u> 29 U.S.C. § 1001, <u>et</u> <u>seq.</u> Plaintiffs amended their Complaint to name John L. Crary as a party defendant to this action on June 26, 2002. Plaintiffs claim Defendant Kristal acted as a fiduciary to the Lassen Companies, Inc. health plans by exercising discretion and control over plan assets; that Kristal breached his fiduciary duties to the plan and its participants by diverting the amounts employees contributed to the health plan through payroll deductions to support the general business purposes of Lassen. In their Amended Complaint, Plaintiffs allege that John Crary was himself a fiduciary to the health plan by virtue of his power to appoint and/or remove Kristal as fiduciary to the Group Benefits Plan, or to effect his removal and that he breached his fiduciary duties of loyalty and prudence by his repeated failures and refusals to monitor and oversee the performance of Kristal as a fiduciary.

The crux of Plaintiffs case against John Crary is that he became a fiduciary under ERISA by virtue of his <u>power</u> to appoint and remove (or effect the removal) of Leonard Kristal as a fiduciary to the Group Benefits plan and as plan administrator for

the Section 401K plan. As a fiduciary, Crary had an absolute obligation to monitor and oversee Kristal in Kristal s performance of his fiduciary duties. Crary never monitored Kristal, and readily admits he did not.

Multiple courts have ruled that where an employer establishes and maintains an employee benefit plan, members of the employer s board of directors are plan fiduciaries to the extent they control selection or termination of [plan] fiduciaries. *See, e.g., Authier v. Ginsberg*, 757 F.2d 796, 801 (6th Cir. 1985) (summarizing holding of *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984), cert. denied, 489 U.S. 1078 (1989)); *accord*: *American Federation of Unions v. Equitable Life Assurance Society of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988); *Tittle v. Enron Corp. (In re Enron Corp. Sec. Derivative & ERISA Litig.)*, 2003 U.S. Dist. LEXIS 17492 at *60 (S.D. Tex. September 30, 2003) ( A person or entity that has the power to appoint, retain and/or remove a plan fiduciary from his position has discretionary authority or control over the management or administration of a plan and is a fiduciary to the extent that he or it exercises that power. ); *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) (finding that directors with power to appoint plan fiduciaries can be considered fiduciaries in certain circumstances), cert. denied, 506 U.S. 1054 (1993).

Crary possessed both actual and constructive knowledge of Kristal s failure to remit deducted health care premiums to Great West. Crary had to immediately contact Pickering Insurance Services in February 1999 to assure prompt payment of his wife s medical bills after an automobile accident, and Randy Pickering informed him of Kristal s failure to remit employee health care deductions and that fraud was occurring

4

with the health plan.  Crary also had extensive knowledge of Kristal s other

malfeasance, including failing to pay vendors and  failing  to remit monies received from

employees from payroll deductions

Crary may also be held liable (1) for his own independent exercise of

 discretionary control or discretionary authority . . . respecting management or

disposition of [plan] assets  and his (2) under Section 405 of ERISA for his knowledge

of and assistance in the breaches of fiduciary duty by Kristal.  See 29 U.S.C. §

1002(21)(A), ERISA § (3)(21)(A); 29 U.S.C. § 1106, ERISA § 405.

Crary may still be held liable under ERISA Section 406 for his knowing

participation in prohibited transactions.  *See Brock v. Hendershott*, 840 F.2d 339, 342

(6th Cir. 1988); *Harris Trust and Savings Back v. Salomon Smith-Barney, Inc.*, 530 U.S.

238 (2000); *McDannold v. Star Bank*, 261 F.3d 478, 486 (6th Cir. 2001).  Lassen and

Crary both were parties-in-interest.  *See* 29 U.S.C. §1002(14)(C) and (E)(i).

The union has standing in this case.  A union may serve as a §502(a) plaintiff to

the extent it can show that it represents plan participants who are members of a union.

*See, e.g., Air Line Pilots Association v. Northwest Airlines*, 627 F.2d 272 (D.C. Cir.

1982); *Walker v. Jaffee*, 5 E.B.C. 2736 (W.D. Tex. 1983); *Southern Illinois Carpenters*

*Welfare Fund v. Carpenters Welfare Fund of Illinois*, 326 F.3d 919, 922 (7th Cir. 2003).

At no point has the Union maintained it has standing to sue as a union, nor has the

Union attempted to seek any recovery that would flow solely to the Union.  Therefore,

the Union has standing in this case.

Plaintiffs seek appropriate remedies in this case.  Section 502(a)(2) of ERISA

provides a cause of action to obtain appropriate relief: under Section 409 to redress violations of the ERISA fiduciary responsibility provisions defined in Title I. Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2). Section 502(a)(3) of ERISA provides a cause of action to enjoin an act or practice which violates a provision of Title I of ERISA or the terms of the plan, or to obtain any other appropriate equitable relief to redress such violation. 29 U.S.C. § 1132(a)(3). In *Varity v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that due to ERISA s basic purposes and the statutory language itself, Section 502(a)(3) authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations for injuries caused by violations that Section 502 does not elsewhere adequately remedy. *Id*. at 512. *See also, In re Unisys Corporation Retiree Medical Benefit ERISA Litigation*, 57 f.3d 1265 (3rd Cir. 1995), *cert. denied*, 517 U.S. 103 (1996).

Crary s motion for summary judgment is wholly without merit and should be denied. Conversely, Plaintiffs motion for summary judgment against Crary should be granted.

## I.    INTRODUCTION

Plaintiffs Dennis Allen, et al. ( Plaintiffs ) submit their Memorandum in Support of their Response to Defendant John L. Crary s ( Crary ) Motion for Summary Judgment and their Cross Motion for Summary Judgment against Defendant John L. Crary ( Crary ). There are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law against Crary because he appointed Defendant Leonard D. Kristal ( Kristal ) as a plan fiduciary, possessed the authority to remove Kristal, yet

failed to monitor and subsequently remove Kristal after learning of his malfeasance.

## II.     STATEMENT OF FACTS

### A.     Background and Introduction.

Plaintiffs commenced this action on March 16, 2001 against Defendants, The Lassen Companies, Inc. ( Lassen ) and Kristal for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act of 1974. (ERISA)  See 29 U.S.C. § 1001, et seq.  Plaintiffs amended their Complaint to name John L. Crary as a party defendant to this action on June 26, 2002. (First Amended Complaint  FAC ; R. 22.)  Plaintiffs claim Defendant Kristal acted as a fiduciary to the Lassen Companies, Inc. health plans by exercising discretion and control over plan assets; that Kristal breached his fiduciary duties to the plan and its participants by diverting the amounts employees contributed to the health plan through payroll deductions to support the general business purposes of Lassen.

In the FAC, Plaintiffs allege that Crary, who served as Chairman of the Board for Lassen, was the majority shareholder of the corporation, one of but three total Board members, and a fiduciary to the health plan by virtue of his power to appoint and/or remove Kristal as fiduciary to the Group Benefits Plan, or to effect his removal.  Crary breached his fiduciary duties of loyalty and prudence by his repeated failures and refusals to monitor and oversee the performance of Kristal as a fiduciary.

Plaintiffs also assert that Kristal, who served as the named plan administrator for The Lassen Companies, Inc. Section 401K plan, failed to file - at all - the required Forms 5500 with the Department of Labor and the Internal Revenue Service.  And,

Plaintiffs assert Crary is liable also as a co-fiduciary to Kristal, under ERISA Section 405. 29 U.S.C. §1105.

Finally, Plaintiffs assert Crary is liable for losses caused by prohibited transactions engaged in by Kristal and Lassen.  Crary s liability here lies under both his status as a fiduciary or on his status as a party-in-interest to the plans.

Defendant Crary moved to dismiss the claims against him. (R. 28.)  Plaintiffs opposed the motion. (R. 32.)  In a Report and Recommendation dated April 3, 2003, Magistrate Judge Hogan denied Crary  motion, and set forth the recommended standard by which Crary s actions would be judged in this action. (R. 39.)  Plaintiffs moved this court to review that Report and Recommendation, asserting the standard established by the Magistrate failed to conform to the relevant case law on the issue. (R. 46.)

**B.    Wright-Bernet, The Lassen Companies Inc. and the Lassen Group Benefits Plan.**

Prior to filing bankruptcy in January 2003, Lassen, a closely-held corporation, was a holding company that owned and operated Wright-Bernet, Inc. ( Wright-Bernet ) in Hamilton, Ohio.[1]  The employees at Wright-Bernet were represented by the Glass, Molders, Pottery, Plastic and Allied Industrial Workers International Union, AFL-CIO.  ( GMP )  During the relevant time period, Kristal was the president and CEO of Lassen, and Crary, who was the majority owner of Lassen, was

---

[1]  Since Lassen s filing for bankruptcy, Plaintiffs are pursuing this action against solely Kristal and Crary in their individual capacities as fiduciaries to the subject health plan, and not in any corporate capacity.  A fiduciary is personally liable to a plan for any losses the plan suffered as a result of the fiduciary s breach. *See* Section 409(a) of ERISA, 29 U.S.C. § 1109(a).

the chairman of Lassen s Board of Directors. (Kristal Answer, ¶9, Depo. Ex. 96; Crary, p. 15; DX 97 - Crary Consulting Agreement; DX 98 - Crary letter of resignation)

Prior to the purchase of Wright-Bernet by Lassen in late 1998, the union contract between the GMP and Kellogg Brush (prior owner of Wright Bernet) required the employer to pay 83% of the cost of the health pan, and the employees to pay 17%. That contract was extended and renewed by agreement between Lassen and the GMP effective February 5, 1999. The 1999 agreement modified the health plan by obligating Wright Bernet/Lassen to pay 79% of the cost, and the employees to pay 21%. John Crary personally negotiated the revisions to the collective bargaining agreement effecting this change. (Dedaration of David M. Cook, Exhibit B - Collective Bargaining Agreement.)

The amounts employees were required to contribute to the health plan were deducted on a weekly basis from their paychecks. (Deposition of Shirley Monroe, April 24, 2002 Monroe I, pp. 41-42).

Lassen s Board of Directors consisted of but three members: John Crary, Leonard Kristal and Robert Morris. Crary maintained his position as director and Chairman of the Board from January 1, 1999 to August 7, 2000. (DX 97 - Crary Consulting Agreement; DX 98 - Crary letter of resignation).

Lassen selected Great-West Life & Annuity Insurance Company ( Great West ) to administer the Lassen Health Benefits Plans ( Health Plans ), which included an HMO and PPO plan. The Health Plans were partially self-insured plans. Under this arrangement, Lassen paid Great West both a monthly premium to pay for the fixed costs of administering the plan and a monthly payment to cover health benefit claims

9

made by Lassen s employees. If the value of the monthly claims exceeded a certain

amount, Great West s stop-loss coverage was triggered.  (Deposition of Polly Jones s,

pp. 13, 23-25; Depo. Exh. 30 (Services Contract between Great West and Lassen);

Deposition of Randy Pickering, pp. 23-25).

Under Lassen s arrangement with Great West, Lassen was supposed to deposit

the employee contributions and the company contributions in a  claim account  that

Great West could access to pay claims.  (Pickering, pp. 26-27).   With respect to the

monthly premium, Lassen was expected to pay this amount directly to Great West.  (*Id.*)

**C.    Lassen s Deduction of  Employee Contributions, Conversion of them
to Corporate Use, Failure to Fund the Group Benefits Plan, and
Ultimate Termination of the Plan.**

Almost immediately upon Lassen s acquisition of Wright-Bernet, Lassen

CEO Kristal began engaging in a host of financial misconduct, specifically in connection

with the Health Plans and 401K Retirement Savings Plan ( 401K Plan ) (collectively,

 Plans ).  Lassen, under the direction of Kristal, stopped timely paying its monthly

premium and payment of claims to Great West.  (Jones, p.14.)  Great West put the

Health Plans on  administrative hold  twice for several months in 1999 and 2000, and

then ultimately advised Lassen in July, 2000 that it was terminating the Plans.  (Monroe

I, pp. 71-72, 103; Depo. Exh. 69 (July 19, 2000 letter from Great West to Lassen).)

During this tumultuous period, Pickering Insurance Services, Lassen s insurance

broker, acted as a messenger between Great West and Lassen.  On a regular basis,

Great West would contact Polly Jones ( Jones ) and ask why it had not received its

monthly payment from Lassen.  Jones would then communicate with Lassen that it was

in arrears, stressing the importance of Lassen s immediately catching up on its payments.  (Jones, pp. 14, 41-42; Dep. Ex. 40 (5/17/99 facsimile from Jones to Kristal).)  Of course, due to Lassen s failure to pay Great West, Lassen employees medical bills went unpaid.  (Pickering pp. 22-23.)

Crary had intimate knowledge of Kristal s misdeeds.[2]  To start with, Crary was personally involved in negotiation of employee contributions to the health plan - contributions known to be deducted from employee paychecks.  Crary was told by several of Wright-Bernet s management personnel as early as March 1999 that Wright-Bernet was suffering from a severe monetary crisis directly attributable to Kristal.  In June 1999, Crary received direct notification from Robert Bernet, Jr. ( Bernet ) that Lassen was, among other financial misdeeds, deducting child care payments from employee checks and not remitting them to the proper agencies.  (Bernet, Jr., p. 48; Depo Ex. 107 - Bernet, Jr. Letter to Lassen Business Partners; Lindemuth, p. 18.)

Crary also had direct, personal knowledge of Kristal s failure to remit deducted health care premiums to Lassen s insurance carrier, Great-West Life & Annuity Insurance Company ( Great-West ).  Crary was told by Lassen s insurance broker, Randy Pickering of Pickering Insurance Services, that Kristal was committing  fraud with the health insurance.  (Pickering, p. 56.)

In an even more personal connection, Crary s wife was unfortunately involved in a serious automobile accident in February 1999.  Crary was covered under the Lassen

---

[2] The full scope and extent of Kristal s actions with respect to the Group Benefits Plan and the Section 401K plan are detailed in Plaintiffs memorandum in support of their motion for summary judgement against Kristal, filed contemporaneously with this cross-motion as to Crary.  For reasons of page limitations, Plaintiffs refer the court to that recitation, and incorporate it here.

group benefits plan as an employee of the corporation.  (Jones, pp. 16; Dep. Ex. 38, 39,

90.) Because of Lassen s problems with payment of health care premiums to Great

West, Crary demanded both in writing and in phone calls that Pickering Insurance

Services work diligently to procure payment of those medical bills.  (Jones, pp. 36-39;

Pickering, pp. 41-44; Dep. Ex. 38,39.)

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only when there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed R.

Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of material fact

is genuine if the evidence is such that a reasonable jury could return a verdict for the

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This

Court has explained that these principles require that a   party may move for summary

judgment by demonstrating that the opposing party will not be able to produce sufficient

evidence at trial to withstand a directed verdict motion.   *Southwest Ohio Reg'l Council*

*of Carpenters & Joiners of Am. v. Schaefer*, 267 F. Supp. 2d 813 (S.D. Ohio 2003)

(citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).  Once the

moving party has carried its initial burden of demonstrating the absence of material fact,

 its opponent must do more than simply show that there is some metaphysical doubt as

to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).  Credibility judgments and weighing of the evidence are prohibited during

the consideration of a motion for summary judgment; rather, the evidence should be

viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.[3]

## III.    ARGUMENT

### A.    Crary Breached His ERISA Fiduciary Duties By Failing to Monitor and Oversee Kristal as Plan Fiduciary.

#### 1.    <u>Case Law Clearly Establishes Erisa Fiduciary Liability upon Those Who Have the Power to Appoint, Retain and Remove Plan Fiduciaries</u>.

The crux of Plaintiffs case against John Crary is that he became a fiduciary under ERISA by virtue of his <u>power</u> to appoint and remove (or effect the removal) of Leonard Kristal as a fiduciary to the Group Benefits plan and as plan administrator for the 401K plan.  As a fiduciary, Crary had an absolute obligation to monitor and oversee Kristal in Kristal s performance of his fiduciary duties.  Crary never monitored Kristal, and readily admits he did not. (Crary Dep. at p. 82. )

Crary argues he held no such authority to appoint and remove, and in his motion attempts to skew the fundamental issue to be determined here.  Crary s motion claims the substance of Plaintiffs  allegations is that because Kristal, the CEO, breached his fiduciary duties, Crary, *as one of three directors and as Chairman of the Board*, purportedly also breached his fiduciary duties to the Plans because he did not learn of Kristal s breaches and single-handedly remove him.  (R. 68; Crary Memorandum in Support at p. 3; emphasis original.)  As noted above - that s <u>not</u> the issue.  Rather, did Crary have the <u>power</u> to appoint and remove Kristal *as a fiduciary to the plans*?  If so, he then held the absolute obligation to monitor and oversee Kristal.  Having fully admitted he did *nothing* to monitor or oversee Kristal in the performance of Kristal s fiduciary duties, Crary must be held liable in this case.

---

[3] Crary assets that the court should judge the credibility of any proffered testimony of defendant Kristal.  As noted in *Anderson*, credibility determinations are not appropriate in considering a motion for summary judgment.

Under ERISA, a person is a plan fiduciary to the extent he or she (i) exercises any discretionary control or discretionary authority over plan management or any authority or control over management or disposition of plan assets, (ii) renders investment advice regarding plan assets for a fee or other compensation, or has authority or responsibility to do so, or (iii) has any discretionary authority or responsibility in plan administration.  29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A).  In determining whether a person is a fiduciary under ERISA, a court will use a functional analysis, examining whether a person actually exercises any of the functions described in the definition of fiduciary set forth in ERISA.  *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).

Plaintiffs here assert liability against Crary based upon their motion for review of the Magistrate s Report and Recommendation on Crary s motion to dismiss.  (R. 39; Report and Recommendation; R. 46; Motion to Review).  In his Report and Recommendation, the Magistrate recommended that,  ...in order to establish liability on behalf of Defendant Crary, Plaintiffs must demonstrate what he knew and when he knew it and apply either actual or constructive knowledge of Mr. Crary to each transaction engaged in by the Plan Administrator.   Report, at 5.

Plaintiffs sought review of this Report and Recommendation, on the grounds the Magistrate misread or misapplied the duty to monitor by one whose fiduciary status is premised on the power to appoint and remove a fiduciary.  Specifically, in *Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984), the court found *no* requirement that the duty to monitor included an obligation to examine every action at issue, but did find a requirement for the appointing fiduciary  to take reasonable and prudent action to determine whether the administrators were fulfilling their fiduciary duties.  *Id*., at 135.  And, in *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992), the court cited *Leigh* for the proposition that  depending on the circumstances, the [corporate] director s duty to

14

monitor the actions of appointed trustees may impose a duty to prevent wrongful conduct. *Id*. at 669-670.

The Magistrate s error was in reading *Feilen* as requiring a finding as to each transaction engaged in by the plan administrator. The *Feilen* court had directed the district court on remand to make specific findings as to whether the director s fiduciary duty was breached with respect to each transaction *subject to ERISA*. In *Feilen* the parties disputed that every transaction at issue was even subject to ERISA. Here, there can be no question that *all* transactions involving the Group Benefits Plan, and in particular the conversion of employee contributions, were at all times subject to ERISA.

Regardless, Plaintiffs demonstrate below that under either standard - that posited by the Magistrate, or the more correct interpretation presented by Plaintiffs in their motion for review - Crary breached his fiduciary duties to monitor Kristal in his performance of Kristal s fiduciary duties as to the plans at issue here.

A plethora of courts, including the Sixth Circuit, have ruled that where an employer establishes and maintains an employee benefit plan, members of the employer s board of directors are plan fiduciaries to the extent they control selection or termination of [plan] fiduciaries. *Authier v. Ginsberg*, 757 F.2d 796, 801 (6th Cir. 1985) (summarizing holding of *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984), cert. denied, 489 U.S. 1078 (1989)); *accord*: *American Federation of Unions v. Equitable Life Assurance Society of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988) (holding that individual can be liable under ERISA for failure to adequately train and supervise an ERISA fiduciary where the individual was in a position to appoint or remove plan fiduciaries and monitor their activities); *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1465 (4th Cir. 1996) ("the power . . . to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the

meaning of §§ 1002(21)(A) ); *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988) ("[Defendant] is a fiduciary within the meaning of ERISA . . . because it appoints and removes the members of the administrative committee that administers the pension plan."); *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc. Of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988) ( Liability for failure to adequately train and supervise an ERISA fiduciary arises where the person exercising supervisory authority is in a position to appoint or remove plan administrators and monitor their activities."); *Mehling v. New York Life Ins. Co.*, 163 F. Supp.2d 502, 509-10 (E.D. Pa. 2001); *Liss v. Smith*, 991 F. Supp. 278, 310, 311 (S.D.N.Y. 1998) ( It is by now well-established that the power to appoint plan trustees confers fiduciary status;" "the duty to monitor carries with it, of course, the duty to take action upon discovery that the appointed fiduciaries are not performing properly"); *Tittle v. Enron Corp. (In re Enron Corp. Sec. Derivative & ERISA Litig.)*, 2003 U.S. Dist. LEXIS 17492 at *60 (S.D. Tex. September 30, 2003) ( A person or entity that has the power to appoint, retain and/or remove a plan fiduciary from his position has discretionary authority or control over the management or administration of a plan and is a fiduciary to the extent that he or it exercises that power. ); *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132 (N.D. Ind. 1991) (directors have duties to monitor plan fiduciaries whom they appoint but do not breach duties in the absence of "notice of possible misadventure by their appointees"); *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) (finding that directors with power to appoint plan fiduciaries can be considered fiduciaries in certain circumstances), cert. denied, 506 U.S. 1054 (1993); *Freund v.*

16

*Marshall & Ilsley Bank*, 485 F.Supp. 629, 640 (W.D. Wis. 1979) (failure to monitor the

conduct of seller trustees is a failure to discharge fiduciary duties with the prudence and

diligence required by ERISA Section 404(a)(1)(B); *Shaw v. International Ass'n of*

*Machinists and Aerospace Workers Pension Plan*, 563 F.Supp. 653, 657 (C.D. Cal.

1983) (officials of a company which sponsors a plan are themselves fiduciaries to the

extent that they retain authority for selection and retention of plan fiduciaries because,

to that extent, they have retained discretionary authority or discretionary control

respecting management of the plan.)

In addition to multiple courts, the Department of Labor likewise has decided that

a company's board of directors may be considered fiduciaries with respect to a benefit

plan if they are "responsible for the selection and retention of plan fiduciaries." See

ERISA Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8 (1983); *Leigh*, 727 F.3d at

133-134 (quoting same). As a result of the director's fiduciary status, he or she has a

"duty to monitor the actions of appointed [plan fiduciaries]," which "may impose a duty

to prevent wrongful conduct" by such other fiduciaries. *Feilen*, 965 F.2d at 670. *See*

*also*, *Martin v. Harline*, 1992 U.S. Dist. LEXIS 8778 at *26 (D. Utah 1992) (holding that

a fiduciary responsible for the appointment and removal of the plan trustee breached

the duty of prudence by failing to conduct any independent investigation into the

trustee's qualifications to serve as fiduciary and periodically reviewing and generally

overseeing the trustee's performance after appointment); *Arakelian v. National Western*

*Life Ins. Co.*, 755 F. Supp. 1080, 1084 (D.D.C. 1990) ("The fact that all the

administrative functions of the Plan were delegated to the Plan administrator . . . did not

and does not absolve the trustees of their duty to review and insure the administrator was acting in the best interests of the participants. ); 29 C.F.R. § 2509.75-8, D-4, D-17. (discussing whether members of a board of directors are fiduciaries, and ongoing responsibilities of a fiduciary who has appointed other fiduciaries).

**2.    Crary Possessed the Power to Appoint, Retain And/or Remove Leonard D. Kristal.**

In his motion for summary judgment, Crary disputes he had the power to appoint, retain or remove Kristal.  Crary continues to misconstrue Plaintiffs allegations, contending that Plaintiffs have brought their claims against Crary solely because he held the corporate title of Chairman of the Board and he proffered a loan to Lassen.  (R. 68; Memorandum in Support of Defendant John L. Crary s Motion for Summary Judgment, p. 9.)  Plaintiffs do not base their allegations of breach of fiduciary duty against Crary on any decisions which were routine corporate activities, nor on Crary s financial backing of Lassen.    Rather, Plaintiffs here focus on Crary s <u>authority</u> as Chairman of the Board of Lassen, his <u>knowledge</u> of key information as to the fraud occurring in the health plan, and his <u>conduct</u> related to his duty to monitor and oversee Kristal in his exercise of his fiduciary duties to the Plans <u>after learning of Kristal s fiduciary breaches</u>.

Crary s own testimony shows he knew full well that when he executed the employment agreement on behalf of Lassen (as its Chairman of the Board) he gave Kristal complete authority over all of Lassen s employees benefit plans. (Crary Dep., at 81; Dep. Ex. 96.)  That employment agreement made Kristal subject to removal for a variety of factors, including engaging in illegal conduct.  And, Crary - having employed

18

Kristal as Chairman on behalf of Lassen - also held the authority to either remove him as CEO, *to remove the responsibility for the benefits plans from him*, or *to cause the Board to do so*.

Contrary to Crary's assertion that Lassen would have had difficulty in removing Kristal as Plan fiduciary, the employment agreement provided ample grounds to justify his removal.  (Crary, p. 25; Depo. Ex. 96 - Kristal's Employment Agreement.)[4] Specifically, Lassen could terminate Kristal's employment without severance in the event of documented illegal business practices, documented gross negligence or malfeasance in the performance of duties, and/or documented gross and habitual misconduct.

Kristal's employment agreement did not give him *carte blanche* control of Lassen.  Rather, Kristal had a duty to report to and <u>take direction</u> from the board of directors.  (Depo. Ex. 96, p. 1).  Crary argues that even though Kristal had a stated obligation to report to and take direction from the board of directors,  no operating people reported to [Crary] at any time.   Crary disingenuously would have the court believe there exists some definitive legal distinction between an obligation to report to the Lassen Board, and Crary's role and function as the Chairman of that Board, and his status as majority shareholder.   (See: Crary's Findings, p. 3).

Recall that Lassen's Board has but 3 members: Crary, Kristal and Morris.  And Crary was the majority shareholder in the corporation. (Crary, pp. 15, 52.)  It becomes

_____

[4] Curiously, Crary references an altogether <u>different</u> employment agreement in his declaration in support of his motion for summary judgment.  Crary refers to a May 12, 1998 employment agreement between Kristal and Lassen Manufacturing, Inc., <u>not</u> the January 1, 1999 employment agreement between Kristal and The Lassen Companies, Inc.  (Dep. Ex. 96.)

19

even more disingenuous for Crary to argue he had no <u>authority</u> and no <u>ability</u> to appoint or remove the very man he insisted was his sole choice to run the company.

Both Crary and Morris expressly conveyed to the management personnel at Wright-Bernet that while Kristal was primarily responsible for operating the day-to day activities at Lassen, Crary was the top decision-maker in the company.  Morris told Robert Bernet, Jr., ( Bernet ) a board member of Wright-Bernet, Inc., that the chain of command was Crary, Kristal and Morris, and that if anyone wanted to change the actions of Kristal, the only person to effect that change was Crary.  (Bernet, Jr., pp. 26-27.)  Morris conveyed to Bernet that he was in agreement that Kristal should be removed, and that Crary was considering removing Kristal from involvement at Wright-Bernet.  (Bernet, pp. 33-34.)  When Bernet called Crary at his home in May 1999 to again voice his concerns with Kristal s management of Wright-Bernet, Crary informed Kristal that Bernet was  trying to go around [Kristal].   (Bernet, Jr., p. 30.)  Kristal subsequently threatened to fire Bernet for calling Crary.  (Bernet, Jr., p. 30-31.)

Bernet informed Crary, Kristal and Morris of his displeasure of the operation of Wright-Bernet by a letter dated June 15, 1999, (a letter in which Bernet specifically addressed Lassen s failure to remit child support payments withheld from employee checks).  Crary traveled to Wright-Bernet <u>the next day</u> to address his concerns - not the act of a remote and disinterested investor. Rather, Crary s immediate attention to this matter reflects the true role he played - he had his hands on the strings of the instrument at all times.  (Bernet, Jr., p. 48; Dep. Ex. 107 - Bernet, Jr. Letter to Lassen Business Partners.)  At this June 16, 1999 meeting,  . . . everybody realized that

whatever Lenn [Kristal] said really was meaningless, so what John [Crary] said was the only thing that mattered. . .  (Bernet, Jr., p. 48.)

Michael Lindemuth, who attended the June 16 meeting testified,  We were basically told in the meeting by John Crary that John does not always like the way Lenn handles things, that sometimes it drives him absolutely nuts, but that Lenn was his man and that if anyone in the room didn t like it they probably should think about finding employment elsewhere.   (Lindemuth, p. 24.)

Lindemuth s and Bernet s deposition testimony corroborates the deposition testimony of Kristal.  Kristal testified that Crary had the authority and responsibility to oversee and control Kristal s performance of his duties at Lassen, that Crary did, in fact, control his performance, and Crary had the authority to remove Kristal, but many times refused to do so.  (Kristal Dep. Vol. II, pp. 82, 105, 142, 146-148, 174).

While Crary takes great pains to challenge the veracity of Kristal, he cannot deny that management personnel of Wright-Bernet (who are not plaintiffs in this action) have corroborated the vast majority of Kristal s testimony regarding Crary s oversight of him.[5] Both Bernet and Lindemuth verify Kristal s testimony that:

"       [Crary] was supposed to be basically responsible for  . . . overseeing what I was doing.   (Kristal II, p. 82).

"       . . . the fact of the matter is if the chairman of the board, John Crary, didn t like what I was proposing, it didn t happen.   (Kristal II, p. 142).

---

[5] Crary s attack on Kristal s veracity is also fruitless, as credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment.  *Anderson*, 477 U.S. at 255.

"    [Crary] also told people like Bob Morris, who wanted to remove me, that he would not allow that to happen.   (Kristal (II), p. 148).

"    Bob Bernet [then the president of Wright-Bernet] wanted me dismissed as president of [Lassen] and he appealed directly to John Crary, and John Crary said no . . . .   (Kristal (II), p. 174).

"    [Morris] on numerous occasions would appeal directly to John Crary relative to my involvement as president of the company, . . . and [Crary] said there was no one to replace me and that he would not continue to support the company if I was not running it . . . .   (Kristal (II), p. 174).

Those at the highest level of Wright-Bernet management were flabergasted as to why Crary allowed Kristal to continue in his malfeasance.   The only way it makes sense for John Crary to let Lenn Kristal do what he was doing was if Lenn had made money for John in some of these past dealings, and there was a grand scheme to all this. <u>Because on the surface it made no sense at all</u>.  <u>They were running the company into the ground</u>.   (Lindemuth, p. 62, emphasis added.)  Michael Pekar testified that  no one could understand how a personal investor such as John Crary could just watch his money go away.   (Pekar, pp. 41-42.)

### 3.   <u>Crary Had Both Actual and Constructive Knowledge of Leonard D. Kristal s Malfeasance.</u>

Incredibly, Crary not only denies he had knowledge of Kristal s failure to remit health care premiums to Great West, but that he had no knowledge of <u>any</u> mismanagement of Lassen by Kristal.  (See Crary s Memorandum in Support, p. 13; Crary s Findings, p. 8.)  These contentions are overwhelmingly contradicted by the

22

clear evidence in the record.

          **a.**      **Crary Had Actual Knowledge of Kristal s Failure to
Remit Deducted Health Care Premiums to Great West.**

      Crary possessed direct knowledge of Kristal s failure to remit

deducted health care premiums to Great West.  Crary had to immediately contact

Pickering Insurance Services after his wife s accident in February 1999 to assure

prompt payment of her medical bills.  (Jones, p. 36-39; Depo Ex. 90 - Crary medical

bills).

      In what must be considered a  smoking gun  here, Randy Pickering testified

under oath and under penalty of perjury that he made three telephone calls to Crary

***informing him of Kristal s failure to remit employee health care deductions.  At***

***one point Pickering advised Crary that  fraud  was occurring with the health***

***plan.***  (Pickering, p 56).

      To counter this damaging testimony, Crary argues in his memorandum in

support of his motion for summary judgment that Pickering s telephone records do not

support testimony that he telephoned Crary on three occasions in 2000 to discuss

Kristal s failure to remit health care premiums to Great West.  (See Crary

Memorandum, p. 10).  Crary alleges that Pickering only made telephone calls to him in

August and October, 1999.  (See Declaration of Paul Marotta, Exhibit JJ).  However,

Crary s telephone number listed in Exhibit JJ of Paul Marotta  Declaration is his <u>office</u>

<u>number</u> at Juniper Capital, LLC - Pickering testified explicitly that he contacted Crary on

Crary s <u>cell phone</u>, not his office at Juniper Capital, LLC.

Other deposition witnesses also verified Crary s direct knowledge of Kristal s

failure to remit deducted health care premiums to Great West.  Michael Lindemuth

testified that:

> . . . John was aware of the problem, simply because, I believe it was his
> wife, was involved in a serious accident.  I m not sure of the timing of the
> accident.  I believe it occurred in  99.  And there were a lot of medical bills
> related to that accident, and those medical bills were not being paid.  So,
> in my opinion, John Crary was aware that there was a problem with the
> health insurance, as far as premiums not being paid, because his bills
> were getting rejected along with everyone else s . . . we saw the health
> insurance bills from Great Western (*sic*). [Crary s] name was on there . . .
> [s]o I know at that time he knew what the status of the health insurance
> was, because he was in the same boat as everyone else.   (Lindemuth,
> pp. 36, 66.)

Lindemuth s deposition testimony corroborates Kristal that Crary had personal

knowledge of Lassen s failure to pay health care premiums to Great West.

### b.    Crary Had Constructive Knowledge of Kristal s Failure to Remit Deducted Health Care Premiums to Great West.

In addition to having direct knowledge of Kristal s

misappropriation of Wright-Bernet employees  health care contributions, Crary routinely

received information indicating Kristal was failing to remit monies received from

employees from payroll deductions, and was mishandling finances at Lassen(as early

as March 1999).  In March and May, 1999, Robert Bernet, Jr. contacted Crary to

discuss removing Kristal.  (Bernet, Jr., pp. 20-22).  Crary visited Wright-Bernet on June

16, 1999 in response to a letter and message from Bernet regarding the unexplained

poor financial condition of Wright-Bernet.  (Bernet, Jr., p. 36; Depo Ex. 107).  Bernet

testified that his general opinion was that  John Crary was overseeing [Lassen] and had

24

a general idea of what was going on. And Bob Morris was leading me to believe that he was talking to John probably, you know, once or twice a week, in some instances almost weekly. (Bernet, Jr., p. 65).

Michael Lindemuth verified that in June 1999 Bob Bernet, Jr. contacted John Crary regarding Lenn Kristal s handling of the finances. (Lindemuth, p. 18). Lindemuth met with Crary during his visit to Wright-Bernet on June 16, 1999. Gina LoFredo, a representative of Cleaning Specialty Company (another subsidiary of Lassen) also attended the June 16 meeting. (Lindemuth, p. 21). Both LoFredo and Lindemuth brought to Crary s attention at the meeting that child support payments withheld from employee paychecks were not being remitted to the proper agencies. (Lindemuth, pp. 21-22).

Contrary to both Crary s and Morris contentions, Morris was fully aware of Kristal s failure to remit deducted health care contributions to Great West. (See Crary s Proposed Findings, p. 14; Morris Declaration, p. 4). Both Lindemuth and Pekar specifically discussed with Morris problems about health insurance deductions. (Lindemuth, p. 70; Pekar, p. 49). Morris went to far as to advise Lindemuth to obtain his own health insurance coverage separate from the coverage offered by Lassen. (Lindemuth, p.70). Pekar believed that the easiest way to contact Crary was through Morris, as Morris would tell Pekar about his contact with Crary. (Pekar, p. 49).

Crary fails to even address this evidence, as though it does not exist.

**B. Crary May Be Held Liable For Breach of ERISA Fiduciary Duty on Two Additional Grounds.**

Plaintiffs have shown above that Crary held the <u>power</u> to appoint and

25

remove Kristal as a fiduciary to the plans.  Under the clear interpretation of ERISA by

numerous courts, Crary then became a fiduciary with respect to the plans, and subject

to the duties of loyalty and prudence imposed by ERISA Section 404(a).  29 U.S.C.

§1104(a).  In addition to Crary s role in appointing and retaining Kristal in Kristal s

fiduciary capacities with Lassen, Crary may be liable here under ERISA on two

additional grounds.  Crary may held liable (1) for his own independent exercise of

 discretionary control or discretionary authority . . . respecting management or

disposition of [plan] assets  and his (2) under Section 405 of ERISA for his knowledge

of and assistance in the breaches of fiduciary duty by Kristal.  See 29 U.S.C. §

1002(21)(A), ERISA § (3)(21)(A); 29 U.S.C. § 1106, ERISA § 405.

         1.      **Crary May be Held Liable for Breach of Fiduciary Duty Based on His Own Exercise of Discretion Over the Management and/or Disposition of Plan Assets.**

As discussed in Section III(A)(1) of Plaintiffs  Memorandum, under

ERISA a person is a plan fiduciary to the extent he or she (i) exercises any

discretionary control or discretionary authority over plan management or any authority

or control over management or disposition of plan assets, (ii) renders investment advice

regarding plan assets for a fee or other compensation, or has authority or responsibility

to do so, or (iii) has any discretionary authority or responsibility in plan administration.

29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A).

According to Kristal s deposition testimony, Crary exercised discretionary control

over the management and/or disposition of assets of the Plans.  Specifically, Kristal

testified that Crary participated in decisions regarding the misuse of plan assets.

Courts have held that corporate officers who participate in decisions as to diversions of plan assets to corporate purposes in fact exercise discretion and control over those assets. *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2nd Cir. 1997). Kristal testified that Crary, as chairman of the board and a majority owner of this closely-held corporation, was active and busy working on company matters during the relevant time period. Crary assisted in negotiation of the collective bargaining agreement with the union at Wright-Bernet. Kristal and others informed Crary on a regular basis about the poor financial status of Lassen s business. (See, discussion *supra* p. 13-14). Crary was a signatory on Lassen bank accounts, and, most importantly, Crary knew full well that employee contributions to the Group Health Plan were being diverted away from health plan purposes. (See discussion *supra* p. 11-12; see also Kristal II, pp. 81-87, 102-103, 132-133, 151-152, 155, 157, 177-179, 192, 206, 210, 233-234).

Additionally, Crary as a fiduciary with power to appoint and remove was charged with the responsibility of assuring that Kristal adequately performed his duties. Contrary to Crary s assertion that he was an outside director of Lassen, he received health benefits as an employee of the corporation, and had a written consulting agreement. Conveniently, Crary does not broach the fact that his position as Chairman of the Board was established by that consulting agreement, wherein Crary was paid a substantial fee to exercise all of the duties and responsibilities customarily associated with the position [of Chairman of the Board]. (Depo. Ex. 97 - Crary s Consulting Agreement). Crary was to be paid $130,000 per year. These payments were not merely in exchange for his simply holding a titular office.

2.    **Crary May Be Found Liable As A Co-fiduciary to the Lassen Plans.**

ERISA provides for the liability of fiduciaries for permitting a breach of fiduciary responsibility of another fiduciary in certain circumstances. Section 405(a) of ERISA, 20 U.S.C. § 1105(a). Those circumstances are:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with Section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

*See Mazur v. Gaudet*, 826 F. Supp. 188, 190 (E.D. La. 1992).

Here, Crary may be found liable under each of the three sub-sections. He knowingly participated in decisions to use plan assets for general corporate purposes. Section 405(a)(1). In his failure to monitor and oversee Kristal in the administration of the Lassen plans, he enabled Kristal to commit his fiduciary breaches. Section 405(a)(2). And, he had clear actual and constructive knowledge of Kristal s breaches in the failure to remit the deducted health contributions to the insurance company. Section 405(a)(3).

28

### C.    Crary, As a Party-in-Interest Under ERISA, Is Liable for Prohibited Transactions He Engaged or Participated In.

Assuming, *arguendo*, that this Court finds, as a matter of law, Crary did

not act as a fiduciary to the Plans, Crary may still be held liable under ERISA Section

406 for his knowing participation in prohibited transactions (here the transfer to or use

of plan assets for corporate purposes).  In *Brock v. Hendershott*, 840 F.2d 339, 342 (6th

Cir. 1988), the Sixth Circuit found that a non-fiduciary could be held liable under ERISA

Section 406(b)(1), 29 U.S.C. 1106(b)(1),  where the non-fiduciary aided and assisted a

plan fiduciary who engaged in prohibited transactions.  The Supreme Court confirmed

that liability for prohibited transactions may be imposed against non-fiduciary parties-in-

interest in *Harris Trust and Savings Back v. Salomon Smith-Barney, Inc.*, 530 U.S. 238

(2000) (holding ERISA Section 502(a)(3) extends its authorization to suits against a

non-fiduciary party-in-interest engaging in prohibited transactions); *accord*, *McDannold*

*v. Star Bank*, 261 F.3d 478, 486 (6th Cir. 2001)(applying *Harris Trust* and confirming

holding of *Brock v. Hendershott*).

Plaintiffs have shown that Crary knew full well of Kristal s failure to remit

employee contributions to the Group Health Plan, yet Crary took no action to stop this.

Under *McDannold v. Star Bank*, and *Harris Trust v. Salomon Smith-Barney*, even if

Crary is found not to be a fiduciary, as a party-in-interest, he may be held liable for

participating in a prohibited transaction.  ERISA Section 406 prohibits a fiduciary to a

plan from any  transfer to or use by a party in interest of plan assets. 29 U.S.C.

29

§1106(b)(1)(D). Kristal without question was a fiduciary[6], and it was he who caused the withheld contributions to be converted to corporate use - both a prohibited transaction and a fiduciary breach. Lassen and Crary both were parties-in-interest, Lassen as the employer, and Crary as a greater than 50% owner of Lassen. See: ERISA Section 3(14)(C) (employer) and (E)(i) (owner of 50 percent or more of the combined voting power of all classes of stock or the total value of shares of all classes of stock of a corporation). 29 U.S.C. §1002(14)(C) and (E)(i).

**D.    The Union Has Standing to Sue.**

Crary alleges that the Union does not have standing to sue. However, the Union has never asserted standing in this action <u>as a union</u>. A union may serve as a §502(a) plaintiff to the extent it can show that it represents plan participants who are members of a union. *See, e.g., Air Line Pilots Association v. Northwest Airlines*, 627 F.2d 272 (D.C. Cir. 1982); *Walker v. Jaffee*, 5 E.B.C. 2736 (W.D. Tex. 1983). Recently, the Seventh Circuit rejected the holding in *New Jersey State AFL-CIO v. New Jersey*, 747 F.2d 891, 892-93 (3rd Cir. 1983) and found that unions may sue on behalf of plan participants. Congress can withdraw the right to sue, of course, but with all due respect to the contrary view of the Third Circuit, we do not think that by confining the right to sue under section 1132(a)(1) to plan participants and beneficiaries Congress intended to prevent unions from suing on behalf of participants. The union in such case

---

[6] At p. 9 of his memorandum, Crary makes the incredible assertion that, In fact, it s not even clear that Kristal knew he was an actual or functional fiduciary in this case. Not only did Crary know all along of Kristal s role and function (Crary Dep., p. 81: Crary acknowledges that in executing Kristal s employment agreement on behalf of Lassen, he knew Kristal s duties as CEO would encompass overall responsibility for Lassen s benefit plans), but ***Kristal admitted his fiduciary status in his Answer.*** (R. 3; Answer, ¶ 9 and ¶ 10.)

is not seeking anything for itself; the real plaintiffs in interest are plan participants.

*Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois*, 326

F.3d 919, 922 (7th Cir. 2003).[7]

Here, the Union has continuously asserted that its standing is based on its

representative capacity.  At no point has the Union maintained it has standing to sue <u>as</u>

<u>a union</u>, nor has the Union attempted to seek any recovery that would flow solely to the

Union.  Therefore, the Union has standing in this case.[8]

### E.    Plaintiffs Seek Appropriate Remedies in this Case.

Section 502(a)(2) of ERISA provides a cause of action to obtain

 appropriate relief: under Section 409 to redress violations of the ERISA fiduciary

responsibility provisions defined in Title I.   Section 502(a)(2) of ERISA, 29 U.S.C. §

1132(a)(2).  Section 502(a)(3) of ERISA provides a cause of action to enjoin an act or

practice which violates a provision of Title I of ERISA or the terms of the plan, or to

obtain any other appropriate equitable relief to redress such violation. 29 U.S.C. §

1132(a)(3).  As noted above, under *Harris Trust v. Salomon Smith-Barney*, participants

may recover losses to the plan caused by prohibited transactions under Section

502(a)(3).

---

[7] The Sixth Circuit recently stated in *Local 6-0682 International Union of Paper, Allied-Industrial, Chemical & Energy Workers v. National Industrial Group Pension Plan*, 342 F.3d 606 (6th Cir. 2003) that a union is not one of the enumerated parties listed in Section 502(a) of ERISA.  *Id.* at 609, n.1.  However, the union in *National Industrial Group Pension Plan* never alleged it had statutory standing to sue, and it requested the court establish standing by creating a federal common law cause of action for negligence under ERISA.  The Sixth Circuit refused to create such a federal common law.

[8] Crary also alleges that with respect to the 401(k) plan, summary judgment be granted against Dennis Allen and Mary Cracraft because they have no standing.  However, Plaintiffs have never alleged Mr. Allen and Ms. Cracraft participated in the 401(k) plan, and Plaintiffs specifically added Lelan Littrell, a participant in the 401(k) plan, to their Amended Complaint.

In *Varity v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that due to

ERISA s basic purposes and the statutory language itself, Section 502(a)(3) authorizes

lawsuits for individualized equitable relief for breach of fiduciary obligations  for injuries

caused by violations that Section 502 does not elsewhere adequately remedy.   *Id*. at

512.  At the Circuit Court level, *Varity* held that plaintiffs, though not entitled to

compensatory damages under ERISA for breach of fiduciary duty, were entitled to

restitution for benefits of which they were deprived, and were awarded the amount of

their past-due benefit.  *See Varity v. Howe*, 36 F.3d 746 (8th Cir. 1994), *aff d on other*

*grounds*, 516 U.S. 489 (1996); *see also*, *In re Unisys Corporation Retiree Medical*

*Benefit  ERISA  Litigation*, 57 f.3d 1265 (3rd Cir. 1995), *cert. denied*, 517 U.S. 103

(1996) (ordering injunction for specific performance of assurances to lifetime benefits

and restitutionary reimbursement for back benefits, but no right to money damages).

Crary s contention that Plaintiffs  may not seek recovery for his breach of

fiduciary duty is without merit.  The plaintiffs - participants in the Group Benefits Plan  -

seek proper relief under ERISA in the form of equitable restitution.  Plaintiffs here

cannot seek recovery directly to the Plans - the Plans have been terminated.  Plaintiffs

only seek restitution of  <u>what they would have received</u> had Kristal not breached his

fiduciary duties, and had Crary adequately performed his.  Where as here, the plan at

issue no longer exists (indeed, the employer itself no longer exists), in the exercise of

its equitable powers, the court may either a) restore the plan to existence and order

sufficient funds into the plan to award all benefits due (and to pay the cost of

administration); or b) order equitable restitution directly to the participants in lieu of

restoration of the plan (as permitted by the court in *Varity*).  That equitable restitution would be in the amount of benefits due them under the terms of the plan.[9]

Crary cites to *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir. 1993) and *Bryant v. International Fruit Prod. Co.*, 886 F.2d 132 (6th Cir. 1989) for the proposition that participants may not recover under ERISA Section 1109 for personal pension benefits lost.  The proposition Crary cites them for is no longer good law.  Both decisions pre-date the Supreme Court s decision in *Varity v. Howe*, which found participants indeed <u>may</u> pursue individual relief for breaches of fiduciary duty under Section 502(a)(3). 29 U.S.C. §1132(a)(3).[10]

## IV.    CONCLUSION

Crary s motion for summary judgment is wholly without merit and should be denied.  Conversely, Plaintiffs  motion for summary judgment against Crary should be granted.  There are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law against Crary because he appointed Leonard D. Kristal as a plan fiduciary, possessed the authority to remove Kristal, yet failed monitor and subsequently remove Kristal after learning of his malfeasance.  Accordingly, Plaintiffs

---

[9] Two Circuit Courts have found equitable restitution may be made to plan participants even if it takes the form of money payments.  In *Strom v. Goldman Sachs & Co.*, 202 F.3d 138 (2nd Cir. 1999) the Second Circuit permitted payment of expected insurance benefits to a widow of a plan participant as equitable relief despite the fact the remedy was monetary relief.  And, in *Clair v. Harris Trust & Savings Bank*, 190 F.3d 495, at 498 (7th Cir. 1999) *cert. denied* 120 S.Ct. 1166 (2000) the Seventh Circuit stated  not all monetary relief is damages.  Equity sometimes awards monetary relief, or the equivalent, and restitution is both a legal and an equitable remedy that is monetary yet distinct from damages.

[10] Crary asserts in the heading to his argument section G that plaintiff Littrell seeks only to recover personal losses suffered in the 401K plan. Crary memo, p. 14.  See: Crary Findings, No. 70.  Again, Crary misreads Plaintiffs claims.  Littrell can only seek recovery for losses sustained by the 401K plan caused by the failure to file the required Forms 5500.  R. 22; FAC ¶¶ 45-46.  The FAC makes no claim on behalf of Littrell that he suffered any personal or individual loss.

cross motion for summary judgment against Defendant John L. Crary should be

GRANTED and Crary s motion for summary judgment should be DENIED.  Plaintiffs

should be awarded as equitable restitution the value of unpaid benefits due under the

health plan.  In addition, defendants should by held solely responsible for the effect of

any fines or penalties as may be imposed for the failures to file the required Forms

5500 and 990.

Respectfully submitted,

/s/ David M. Cook

_____

David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178

Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

II hereby certify that a copy of the foregoing hI hereby certify that a copy of the foregoing November, 2003, via U.S. regular mail, postage prepaid, upon the following:

Leonard Kristal
107 Diablo Drive
Kentfield, California 94904

Stephen R. Felson
617 Vine Street
Suite 1401
Cincinnati, Ohio 45202
Trial Attorney For Defendant Crary

Paul D. Marotta
Christopher D. Denny
Jennifer Chen
The Corporate Law Group
500 Airport Blvd., Suite 120
Burlingame, CA 94010
Of Counsel for Defendant Crary__

s/ David M. Cook

_____
ATTORNEY FOR PLAINTIFFS