UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **Dennis Allen, et al.** | : | |
| Plaintiffs | : | Case No. C-1-01-159 |
| | : | Judge Herman S. Weber |
| v. | | Magistrate Judge Timothy S. Hogan |
| | : | |
| **Leonard Kristal** | | |
| | : | PLAINTIFFS MEMORANDUM IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT LEONARD D. KRISTAL |
| and | | |
| | : | |
| **John Crary** | | |
| | : | |
| Defendants | | |

I.  INTRODUCTION

Plaintiffs Dennis Allen, et al. ( Plaintiffs ) submit their Memorandum in Support of their Motion for Summary Judgment against Defendant Leonard D. Kristal ( Kristal ). There are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law against Kristal because Kristal was an ERISA fiduciary and he breached his fiduciary duties by 1) directly and personally determining not to remit employee contributions to the employees health plan, 2) failing to file Forms 5500 and 990, and 3) participating in prohibited transactions.

II. STATEMENT OF FACTS

A. Background and Introduction.

Plaintiffs commenced this action on March 16, 2001 against Defendants, The Lassen Companies, Inc. ( Lassen ) and Leonard D. Kristal for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act

of 1974.  See 29 U.S.C. § 1001, et seq.  Plaintiffs amended their Complaint to name John L. Crary as a party defendant to this action on June 26, 2002. (First Amended Complaint  FAC ; R. 22.)  Plaintiffs claim Defendant Kristal acted as a fiduciary to the Lassen Companies, Inc. health plans by exercising discretion and control over plan assets and that Kristal breached his fiduciary duties to the plan and its participants by diverting the amounts employees contributed to the health plan through payroll deductions to support the general business purposes of Lassen.  Plaintiffs also assert that by diverting the plan assets to corporate use, Kristal engaged in prohibited transactions under ERISA.

In the FAC, Plaintiffs allege that John Crary, who served as Chairman of the Board for Lassen, was the majority shareholder of the corporation, and one of three total Board members, was himself a fiduciary to the health plan by virtue of his power to appoint and/or remove Kristal as fiduciary to the Group Benefits Plan, or to effect his removal.  Plaintiffs allege Crary breached his fiduciary duties of loyalty and prudence by his repeated failures and refusals to monitor and oversee the performance of Kristal as a fiduciary.

Plaintiffs also assert that Kristal, who served as the named plan administrator for the Lassen Companies, Inc. Section 401K plan failed to file - at all - the required Forms 5500 and 990 with the Department of Labor and the Internal Revenue Service.

**B.    Wright-Bernet, The Lassen Companies Inc. and the Lassen Group Benefits Plan.**

Prior to filing bankruptcy in January 2003, Lassen, a closely-held corporation, was a holding company that owned and operated Wright-Bernet, Inc.

( Wright-Bernet ) in Hamilton, Ohio.[1] The employees at Wright-Bernet were represented by the Glass, Molders, Pottery, Plastic and allied Industrial Workers International Union, AFL-CIO. ( GMP )  During the relevant time period, Kristal was the president and CEO of Lassen.  (DX 96 - Kristal s employment agreement.)  Lassen s Board of Directors consisted of only three members: John Crary, Leonard Kristal and Robert Morris.

Prior to the purchase of Wright-Bernet by Lassen in late 1998, the union contract between the GMP and Kellogg Brush (prior owner of Wright Bernet) required the employer to pay 83% of the cost of the health pan, and the employees to pay 17%. That contract was extended and renewed by agreement between Lassen and the GMP effective February 5, 1999.  The 1999 agreement modified the health plan by obligating Wright -Bernet/Lassen to pay 79% of the cost, and the employees to pay 21%.  The amounts employees were required to contribute to the health plan were deducted on a weekly basis from their paychecks.  (Monroe, pp. 41-42).

Though Pickering Insurance Services, an insurance broker, Lassen selected Great-West Life & Annuity Insurance Company ( Great West ) to administer the Lassen Health Benefits Plans ( Health Plans ), which included an HMO and PPO plan.  The Health Plans were partially self-insured plans.  Under this arrangement, Lassen paid Great West both a monthly premium to pay for the fixed costs of administering the plan and a monthly payment to cover health benefit claims made by Lassen s employees. If

---

[1] Since Lassen s filing for bankruptcy, Plaintiffs are pursuing this action against solely Kristal and Crary in their individual capacities as fiduciaries to the subject health plan, and not in any corporate capacity.  A fiduciary is personally liable to a plan for any losses the plan suffered as a result of the fiduciary s breach. See Section 409(a) of ERISA, 29 U.S.C. § 1109(a).

3

the value of the monthly claims exceeded a certain amount, Great West s stop-loss coverage was triggered. (Jones s dep. at 13, 23-25; Depo. Exh. 30 - Services Contract between Great West and Lassen; Pickering dep. at 23-25.)

Under Lassen s arrangement with Great West, Lassen was supposed to deposit the employee contributions and the company contributions in a claim account that Great West could access to pay claims. (Pickering dep. at 26-27). With respect to the monthly premium, Lassen was expected to pay this amount directly to Great West. (*Id.*)

### C. Lassen s Deduction of Employee Contributions, Conversion of them to Corporate Use, Failure to Fund the Group Benefits Plan, and Ultimate Termination of the Plan.

Almost immediately upon Lassen s acquisition of Wright-Bernet, Lassen CEO Kristal began engaging in a host of financial misconduct, specifically in connection with the Health Plans and 401K Retirement Savings Plan ( 401K Plan ) (collectively, Plans ). Kristal immediately began mismanaging Lassen, virtually destroying a $30 million dollar per year company within a matter of months. (Bernet depo at p. 78). Kristal verbally abused vendors of Wright-Bernet and, in one instance, directed a profanity-laden tantrum at Polly Jones that was the most humiliating situation [she d] ever been in. (Jones depo. at pp. 44-45; Monroe depo at. p. 32; Bernet depo. at p. 23.) Lassen began to repeatedly fail to pay its vendors, and also began failing to remit deducted child support payments to the proper agencies, as well as failing to pay contributions to employees 401(k) plan accounts. (Monroe depo. at p. 30; DX 107 - Bernet letter to Lassen Board of Directors.)

Management personnel at Wright-Bernet began reporting to Lassen's board of directors as early as March 1999 that Kristal was failing to remit monies received from employees from payroll deductions, and was mishandling finances at Lassen. In March and May, 1999, Robert Bernet, Jr. contacted Crary to discuss removing Kristal. (Bernet, Jr., pp. 20-22). Crary visited Wright-Bernet on June 16, 1999 in response to a letter and message from Bernet regarding the unexplained poor financial condition of Wright-Bernet. (Bernet depo at p. 36; Depo Ex. 107 - Bernet letter to Lassen Board of Directors.)

Michael Lindemuth verified that in June 1999 Bernet, Jr. contacted John Crary regarding Lenn Kristal's handling of the finances. (Lindemuth, p. 18). Lindemuth met with Crary during his visit to Wright-Bernet on June 16, 1999 and both Lindemuth and Gina LoFredo, a representative of Cleaning Specialty Company (another subsidiary of Lassen) brought to Crary's attention at the meeting that child support payments withheld from employee paychecks were not being remitted to the proper agencies. (Lindemuth, pp. 21-22).

Lassen, under the direction of Kristal, also stopped timely paying its monthly premium and payment of claims to Great West. (Jones's dep. at 14). Indeed, as of May 1999, no premiums had been paid <u>at all</u> by Lassen to Great West, even though the health plan went into effect on January 1, 1999. (Jones depo. at p. 42.) Great West put the Health Plans on "administrative hold" twice for several months in 1999 and 2000, and then ultimately advised Lassen in July, 2000 that it was terminating the Plans. (Deposition of Shirley Monroe, April 24, 2002, pages 71-72, 103; Depo. Exh. 69 (July 19, 2000 letter from Great West to Lassen)).

5

Pickering Insurance Services acted as a messenger between Great West and Lassen. On a regular basis, Great West would contact Polly Jones at Pickering Insurance and ask why it had not received its monthly payment from Lassen, and Ms. Jones would then communicate with Lassen that it was in arrears, stressing the importance of Lassen's immediately catching up on its payments. (Jones's dep. at 14, 41-42; Depo. Exh. 40 (5/17/99 facsimile from Jones to Kristal); Depo Ex. 43 (facsimile from Jones to Kristal)). Of course, due to Lassen's failure to pay Great West, Lassen employees' medical bills went unpaid. (Pickering dep. at 22-23.)

While Lassen continued to deduct health care premiums from employee paychecks without remitting the deductions to Great West, Kristal utilized company assets for his own personal use. Kristal routinely made large cash withdrawals from Lassen bank accounts, keeping anywhere from $200 to $15,000 for himself. (Leath depo. at 43-44.) One particularly egregious example of Kristal's malfeasance was his use of company assets to obtain a Porsche and BMW during the same time Wright-Bernet employees were incurring unwarranted medical bills due to Lassen's failure to remit health care premiums to Great West. (Leath depo. at 52-53.)

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court has explained that these principles require that a "party may move for summary

judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. *Southwest Ohio Reg'l Council of Carpenters & Joiners of Am. v. Schaefer*, 267 F. Supp. 2d 813 (S.D. Ohio 2003) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)). Once the moving party has carried its initial burden of demonstrating the absence of material fact, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment; rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

## III.    ARGUMENT

### A.    Kristal Was an ERISA Fiduciary to the Plans.

Kristal's status as a fiduciary here is not in dispute. In response to the original Complaint in this matter, Kristal's Answer admitted his status as a fiduciary to the plans at issue. (R. 3; Answer, ¶ 9, 10.) Regardless of his Answer, the undisputed facts in this case demonstrate conclusively that Kristal acted as a functional fiduciary to the health plan, and served as the named plan administrator for the 401K plan.

#### 1.    Kristal exercised discretion and control over Plan assets.

Under ERISA, a person is a plan fiduciary to the extent he or she (i) exercises any discretionary control or discretionary authority over plan management or any authority or control over management or disposition of plan assets, (ii) renders investment advice regarding plan assets for a fee or other compensation, or has authority or responsibility to do so, or (iii) has any discretionary authority or

responsibility in plan administration. 29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A). In determining whether a person is a fiduciary under ERISA, a court will use a functional analysis, examining whether a person actually exercises any of the functions described in the definition of fiduciary set forth in ERISA. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).

There is no question that Kristal exercised discretion and control over plan management and disposition of plan assets. Kristal discussed his role as to the benefit plans that were sponsored by Lassen with Leslie Leath, Lassen's controller from October 2000 through November 2001. Kristal explicitly told Leath that he was a fiduciary with respect to the Plans. (Leath, pp. 25-26). Kristal also prepared a memo in which he stated, I am the one who decides how funds of the Lassen Companies, Inc. and its subsidiaries are spent. (DX. 2 - Kristal memo). Kristal signed all the checks for Lassen, and the Human Resources Director for Lassen understood that it was Kristal's decision whether or not to pay medical bills. (Monroe depo. at p. 61.)

Kristal made the decisions, in conjunction with Lassen Chairman Crary, to utilize plan assets for general corporate purposes. Kristal believed the health plan negotiated by Crary was too rich, and costing the company too much. When premiums due to Great West went unpaid month after month, those premiums always included the amounts deducted from employee wages as their contribution to the health plan.

**2.    Kristal was the named Plan Administrator for the 401(k) plan.**

In addition to being a functional fiduciary, Kristal also was a fiduciary with respect to the 401(k) plan as the named plan administrator. Kristal testified that he was a fiduciary for the 401(k) plan. (Kristal (I), pp. 10, 56.) Additionally,

Kristal communicated in writing that he was the Plan Administrator for the 401(k) plan. (Declaration of David M. Cook, Exhibit C - letter written by Leonard D. Kristal dated September 17, 2001.)

### B. Kristal Breached his Fiduciary Duties.

#### 1. Kristal directly directly and personally determined not to remit employee contributions to the Plan.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, (1983). Consequently, ERISA fiduciaries "must act for the exclusive benefit of plan beneficiaries. "*Howard v. Shay,* 100 F.3d 1484, 1488 (9th Cir. 1996).

The fiduciary duties are set forth in ERISA § 404(a)(1), which states:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-

    (A) for the exclusive purpose of:

        (i) providing benefits to participants and their beneficiaries;

and

        (ii) defraying reasonable expenses of administering the plan;

    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

    (C) by diversifying the investments of the plan so as to minimize the

risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

>(D) in accordance with the documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a)(1).

Fiduciary duties enumerated under § 404(a)(1) has three components: The first is a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *Berlin v. Michigan Bell Tele. Co.,* 858 F.2d 1154, 1162 (6th Cir. 1988) (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir. 1982), *cert. denied*, 459 U.S. 1069 (1982)). The second obligation imposed under ERISA, the "prudent man" obligation, imposes "an unwavering duty" to act both "as a prudent person would act in a similar situation" and "with single-minded devotion" to those same plan participants and beneficiaries. *Id*. Finally, an ERISA fiduciary must "'act for the exclusive purpose'" of providing benefits to plan beneficiaries. *Id*. (quoting *Bierwirth,* 680 F.2d at 271*); see also, Kuper v. Iovenko,* 66 F.3d 1447. 1458 (6th Cir. 1995)*; Chao v, Hall Holding* Co., 285 F.3d 415, 424-425 (6th Cir. 2002); Best *v. Cyrus*, 310 F.3d 932, 935 (6th Cir. 2002).

The duties charged to an ERISA fiduciary are "the highest known to the law. *See Bierwirth,* 680 F.2d at 272, n.8*; Hall Holding*, 285 F.3d at 426. Failure to meet these high standards may result in personal liability for the fiduciary. ERISA Section 409(a), 29 U.S.C. § 1109(a).

As discussed in Section III(A)(1) above, Kristal violated all three components of his fiduciary duty. Kristal directly and personally determined not to remit employee health care deductions to Great West. Kristal openly communicated that he thought the health care plan for Wright-Bernet employees was too expensive, and he was ready to do anything to undermine the insurance he did not want to offer that benefit package to the union or to the employees . . . (Lindemuth depo. at p. 33-34.) He completely abrogated his duty of loyalty to Plan participants, failed to act prudently to timely remit employee health care deductions to Great West, and never did he act for the sole and exclusive purpose of providing benefits to Plan participants. Rather, Kristal had contempt for the Plan itself and showed an utter lack of regard for his fiduciary duties under ERISA.

### 2. Kristal failed to file Forms 5500 and 990 for the 401(k) plan.

The administrator of an employee pension and welfare benefits plan is required to file an annual report, IRS Form 5500, pursuant to ERISA Section 104(a), 29 U.S.C. § 1024(a), as required under ERISA Section 103(a)(1)(A), 29 U.S.C. § 1023(a)(1)(A). The Form 5500 is due for filing 210 days after the close of the plan year. Section 104(a)(1) of ERISA, 29 U.S.C. § 1024(a)(1). Failure to file the required Form 5500 subjects the plan administrator to fines of up to $1100 per day for each day beyond the 210 days (or any extension) such form is not filed. Section

In addition, the employer or the plan administrator of a pension or deferred compensation plan is required to file an annual return with the Internal Revenue Service, IRS Form 990. IRC Section 6058(a).

As the designated plan administrator, Kristal had direct responsibility for

filing the required Forms 5500 and Forms 990. Kristal made no efforts to file these required forms, nor did he inquire into his official duties as plan administrator. (Kristal (II), pp. 90, 94-95, 97.) Kristal therefore failed to administer the plan in accordance with ERISA.

### 3.  Kristal engaged in transactions prohibited by ERISA.

Under ERISA § 406(a), certain types of transactions between a plan and a party in interest are prohibited. A party in interest is broadly defined to include any fiduciary, a person providing services to the plan, an employer whose employees are covered by the plan, and certain shareholders and relatives. *See* Section 3(14)(A)-(F) of ERISA, 29 U.S.C. § 1002(14)(A)-(F). The prohibited transactions between a plan and a party in interest, as set forth in § 406(a), are as follows:

Except as provided in section 1108 of this title:

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect-
>
> > (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> >
> > (B) lending of money or other extension of credit between the plan and a party in interest;
> >
> > (C) furnishing of goods, services, or facilities between the plan and a party in interest;
> >
> > (D) transfer to, or use by or for the benefit of, a party in interest, of

    any assets of the plan; or

        (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a).

    The purpose of § 406(a) is "to prohibit transactions that would clearly injure the plan." *Lockheed Corp. v. Spink,* 517 U.S. 882, 888, (1996). "Congress adopted § 406 to prevent employee benefit plans from engaging in transactions that would benefit parties in interest at the expense of plan participants and their beneficiaries." *Id; see also, Jordan v. Michigan Conf. of Teamsters Welfare Fund,* 207 F.3d 854, 858 (6th Cir.); *Chao v, Hall Holding* Co., 285 F.3d at 424-425.

    Kristal clearly participated in prohibited transactions. Kristal utilized employee health care deductions for purposes other than the sole and exclusive purpose of providing benefits to the employees. Contributions to the health plan deducted from employee paychecks became assets of the Plan as soon as they could reasonably be segregated form general assets of the corporation, but in no event later than 90 days after deduction. *See* 29 C.F.R. § 2510.3-102. At Lassen, employee health care deductions were <u>not</u> segregated from Lassen s general accounts. Instead, Kristal used those funds as he saw fit, to the detriment of the Plan participants. Thus, Kristal participated in prohibited transactions under ERISA.

### III.    CONCLUSION

    Plaintiffs motion for summary judgment against Kristal should be granted. There are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter

of law against Kristal because he was an ERISA fiduciary, and he breached his fiduciary duties by 1) directly and personally determining not to remit employee contributions to the employees health plan, 2) failing to file Forms 5500 and 990, and 3) participating in prohibited transactions. Accordingly, Plaintiffs motion for summary judgment against Defendant Leonard D. Kristal should be GRANTED.

Respectfully submitted,

/s/ David M. Cook

_____
David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178

Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

II hereby certify that a copy of the foregoing hI hereby certify that a copy of the foregoing November, 2003, via U.S. regular mail, postage prepaid, upon the following:

Leonard Kristal
107 Diablo Drive
Kentfield, California 94904

Stephen R. Felson
617 Vine Street
Suite 1401
Cincinnati, Ohio 45202
Trial Attorney For Defendant Crary

Paul D. Marotta
Christopher D. Denny
Jennifer Chen
The Corporate Law Group
500 Airport Blvd., Suite 120
Burlingame, CA 94010
Of Counsel for Defendant Crary

                                             s/ David M. Cook
                                        _____
                                        ATTORNEY FOR PLAINTIFFS