UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DENNIS ALLEN, et al.** | : | Case No. C-1-01-159 |
| **Plaintiffs** | : | |
| | | Judge Herman S. Weber |
| **v.** | : | |
| | | Magistrate Judge Timothy S. Hogan |
| **JOHN CRARY, et al.** | : | |
| **Defendant/** | : | |
| **Third-Party Plaintiff** | | **THIRD-PARTY DEFENDANT POLLY** |
| | : | **JONES S MEMORANDUM IN** |
| **v.** | | **SUPPORT OF HER MOTION FOR** |
| | : | **SUMMARY JUDGMENT ON THE** |
| **POLLY JONES, et al.** | | **THIRD-PARTY CLAIM BY** |
| | : | **DEFENDANT JOHN L. CRARY** |
| **Third-Party Defendants** | : | |

\*  \*  \*  \*  \*

## I. INTRODUCTION

Third-Party Defendant, Polly Jones ( Jones ) submits this memorandum in
support of her motion for summary judgment on the third-party claim for indemnity
asserted against her by Defendant John L. Crary ( Crary ).   Crary asserted this third-
party claim against Jones (and Shirley Monroe and James Thelan), shortly after
Magistrate Judge Hogan denied Crary s motion to dismiss the claims asserted against
him by Plaintiffs, Dennis Allen et al. ( Plaintiffs ) under the Employee Retirement
Income Security Act of 1974 ( ERISA ).  See 29 U.S.C. §1001, et seq.  Crary has no
basis to bring such a claim against Jones.  As explained more fully below, Jones is
entitled to summary judgment on this third-party claim because (1) no such daim for
indemnity is permitted in an ERISA action and (2) even if Crary could bring such a

claim, he cannot recover against Jones because she did not breach any fiduciary duty

that resulted in the losses sought by Plaintiff in this action.

## II.  STATEMENT OF FACTS

**A.      Jones is an Administrative Assistant at Pickering Insurance, Which was
         Lassen s Insurance Broker for Its Health Plans.**

At all times relevant to this action, Jones has been employed as an

administrative assistant at her husband Randy Pickering s company, Pickering

Insurance Services ( Pickering Insurance ).  (Deposition of Polly Jones, page 8).

Pickering Insurance serves as a broker between insurance companies and employers,

among other clients.  Jones s duties at Pickering Insurance include acting as a

 customer service rep[resentative]  to these employers.  (Jones s dep. at 8; Deposition

of Randy Pickering, pages 9-10).  Jones handles their questions about premiums, non-

payment of medical bills, and other such day-to-day concerns.  (Jones s dep. at 8).

In 1998, Pickering Insurance helped the Lassen Companies, Inc. ( Lassen ) in its

search for an insurance company to administer the health plan for its employees.

(Jones s dep. at 12).  Lassen ultimately selected Great-West Life & Annuity Insurance

Company ( Great West ) to administer the Lassen Health Benefits Plans ( Health

Plans ), which included an HMO and PPO plan.  In connection with her role as a

customer service representative to Lassen, Jones was designated as the

 Administrator/Broker   for the Health Plans.  (Depo. Exh. s 27, 29).

The Health Plans were partially self-insured plans.  Under this arrangement,

Lassen paid Great West both a monthly premium to pay for the fixed costs of

administering the plan and a monthly payment to cover health benefit claims made by

Lassen s employees. If the value of the monthly claims exceeded a certain amount, Great West s stop-loss coverage was triggered. (Jones s dep. at 13, 23-25; Depo. Exh. 30 (Services Contract between Great West and Lassen); Pickering dep. at 23-25). Lassen employees made contributions to the Health Plans, the amounts of which were deducted from their paychecks. Under Lassen s arrangement with Great West, Lassen was supposed to deposit the employee contributions and the company contributions in a claim account that Great West could access to pay claims. (Pickering dep. at 26-27). With respect to the monthly premium, Lassen was expected to pay this amount directly to Great West. (*Id.*)

Pickering Insurance, in turn, was paid its commission by Great West only when Lassen paid Great West its monthly premium. (Jones s dep. at. 26-27). Pickering Insurance did not have any access to or control over the claim account or any other assets of the Health Plans. Pickering Insurance was merely Lassen s broker; it could not control anything that Lassen management decided to do with assets of the Health Plans. (Declaration of Polly Jones, ¶ 5 , attached here as Exhibit A ).

**B.     Great West Put the Health Plans on Administrative Hold in 1999 and 2000 and then Ultimately Terminated the Health Plans as a Result of Lassen s Failure to Pay Great West.**

Unfortunately, soon after Lassen in 1998 purchased Wright-Bernet, Inc. ( Wright-Bernet ), a manufacturing company based in Hamilton, Ohio, Lassen stopped timely paying its monthly premium and payment of claims to Great West. (Jones s dep. at 14). Great West put the Health Plans on administrative hold twice for several months in 1999 and 2000, and then ultimately advised Lassen in July, 2000 that it was terminating

the Plans.  (Deposition of Shirley Monroe, April 24, 2002, pages 71-72, 103; Depo. Exh. 69 (July 19, 2000 letter from Great West to Lassen)).  During this tumultuous period, Pickering Insurance, and particularly Jones herself, acted as a messenger between Great West and  Lassen.  On a regular basis, Great West would contact Jones and ask why it had not received its monthly payment from Lassen, and Jones would then communicate with Lassen that it was in arrears, stressing the importance of Lassen s immediately catching up on its payments.  (Jones s dep. at 14, 41-42; Depo. Exh. 40 (5/17/99 facsimile from Jones to Kristal)).  As Jones testified at her deposition,  it was a vicious circle of constantly chasing money.   (Jones s dep. at 14).

     Of course, due to Lassen s failure to pay Great West, Lassen employees medical bills went unpaid.  (Pickering dep. at 22-23).  During this time, Jones diligently handled countless telephone calls from health care providers and Lassen employees about their unpaid medical bills.  Pickering Insurance received as many as ten to fifteen calls a day.  (Jones s dep. at 116-117). Upon receiving a call from an employee, Jones would investigate the facts underlying the inquiry and then call the employee back with an answer.  Almost all of the unpaid medical bills were due to the administrative hold that resulted from Lassen s failure to pay Great West.  Jones advised those employees who called about unpaid medical bills that the Health Plans had been put on administrative hold.  (Jones s dep. at 116-117; Polly Jones Dec., ¶ 6).

     The implosion of the Health Plans was unquestionably a miserable experience for both Jones and Pickering Insurance.  In addition to handling urgent telephone calls from employees and health care providers, Jones was subjected, on at least one occasion, to a profanity-laced harangue by Lassen s CEO, Leonard Kristal ( Kristal ),

4

who apparently blamed Great West on Lassen s failure to timely pay premiums.
(Jones s dep. at 44-45). Moreover, when Great West did not receive its monthly
payment from Lassen, Pickering Insurance did not receive its monthly commission.
(Jones s dep. at 26-27). Thus, despite all of Jones s hard work in the face of a disaster
not of her doing, Pickering Insurance, for the most part, provided its services for free.
(Jones s dep. at 27, 117).

### III.  ARGUMENT

**A.    There is No Genuine Issue of Material Fact, and Jones Therefore is Entitled to Summary Judgment Under Rule 56.**

Summary judgment may be granted only when there is no genuine issue of
material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of material fact
is genuine if the evidence is such that a reasonable jury could return a verdict for the
non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once
the moving party has carried its initial burden of demonstrating the absence of material
fact,  its opponent must do more than simply show that there is some metaphysical
doubt as to the material facts.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
U.S. 574, 586 (1986).  Credibility judgments and weighing of the evidence are
prohibited during the consideration of a motion for summary judgment; rather, the
evidence should be viewed in the light most favorable to the non-moving party.
*Anderson*, 477 U.S. at 255.  Under this settled standard, Jones is entitled to summary
judgment, as explained below.

**B.     The Third-Party Claim Against Jones Should Be Dismissed Because, as a Matter of Law, a Plan Fiduciary Cannot Seek Indemnity from an Alleged Co-Fiduciary in an ERISA Case.**

As set forth in the memorandum supporting Jones's and Shirley Monroe's motion to dismiss, Crary cannot, as a matter of law, assert a third-party claim for indemnity against an alleged co-fiduciary in response to a claim for relief asserted against him. (*See* Memorandum in Support of Motion to Dismiss; R. 49).  ERISA does not provide for such a remedy, and the Supreme Court has recently reiterated its position that remedies sought in an ERISA action are generally limited to those remedies specifically enumerated in the statute.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).  Moreover, this year, the Northern District of Ohio again - for the third time - has expressly held that the right of contribution or indemnity, as asserted here by Crary, is not available under ERISA.  *Williams v. Provident Investment Counsel, Inc.*, 2003 U.S. Dist. LEXIS 15348 (N.D. Ohio 2003) (following *Roberts v. Taussig*, 39 F. Supp.2d 1010, 1011-12 (N.D. Ohio 1999); *Daniels v. National Employee Ben. Services, Inc.*, 877 F. Supp. 1067, 1073-74 (N.D. Ohio 1995)).  (A copy of the *Williams* decision is attached here as Exhibit B.)  This Court should follow these well-reasoned decisions of the Northern District and thereby grant the instant motion, or alternatively the previously-filed motion to dismiss, on this basis.[1]

---

[1]  While Crary repeatedly has asserted that he is entitled to indemnification because he allegedly is a victim of collusion by the Plaintiffs, Crary and Jones, and their lawyers, the Northern District flatly rejected this same argument.  In *Williams*, the Court reasoned that in an ERISA action, plaintiffs should be permitted to do that which the trustees have done here -- namely, choose, if they believe they are able to do so, among various targets.  The Court further stated that [w]hile this opportunity may well give rise to collusiveness, as [the defendant fiduciary] suggests, it also enables greater efficiency and enhances the likelihood of more prompt recovery against the party that, in the plan's eyes, appears either most culpable or judgment-worthy, or both.  *Id.* at *20.

**C.    Crary s Claim for Indemnity against Jones Must Fail Because There is No
Evidence that Crary s Liability to Plaintiffs is the Result of any Alleged
Breach by Jones.**

Assuming, *arguendo*, that a defendant fiduciary can bring a third-party claim for

indemnity against an alleged co-fiduciary in an ERISA action, Crary s claim against

Jones still is subject to summary judgment based on the undisputed facts of this case.

Because Jones was the named plan administrator for the Health Benefit Plans, Crary

presumably is attempting to proceed against Jones on the basis that she exercised

authority with respect to the  administration  of the plan.  (Third-Party Complaint, ¶s 6-7,

R. 45); 29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A).  The other two categories of

fiduciary listed in ERISA s definition of fiduciary clearly do not apply to Jones.  She did

not render any investment advice to the Health Plan, nor did she exercise control over

the management of plan assets.  *See id.*  Specifically, Jones had no control whatsoever

over Lassen s remitting its assets, including employee contributions, to the Health

Plans.  (Pickering dep. at 26-27; Jones s Dec., ¶s 4-5).

However, even if Crary can establish that Jones, through her capacity as named

plan administrator, acted as a fiduciary to the Health Plans, he cannot recover against

Jones for indemnification.  Under settled trust law, an action for indemnity (or

contribution) is only appropriate where  two trustees are liable to the beneficiary for a

breach of trust.   *Restatement (Second) of Trusts*, § 258, pp. 650-654 (1959) (copy of

this section attached here as  Exhibit C ).  An action for indemnity is distinct from

contribution in that a trustee is only entitled to indemnity where the other trustee is

 substantially more at fault  than the trustee seeking indemnity.  *Id.*  Applying this

7

principle in the ERISA context, a defendant fiduciary cannot seek indemnity (or

contribution) from another fiduciary where the latter fiduciary was not at fault for the

breach of fiduciary duty asserted by the plaintiffs against the defendant fiduciary.

*Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 237 (W.D. N.Y.

2002) (relying on *Restatement 2nd of Trusts*, § 258).[2]  Thus, to recover against Jones,

Crary must prove that Jones is liable to the Plaintiffs for the losses they seek to recover

in this case and, moreover, that Jones was  substantially more at fault  than Crary for

Plaintiffs  losses.  Crary cannot do so because there is *no evidence* that Jones

committed a breach of fiduciary duty that resulted in Plaintiffs  losses.  *See* ERISA

§409; 29 U.S.C. §1109 (fiduciary liable to plan for losses resulting from his or her

breach of fiduciary duty).

Curiously, in his Third-Party Complaint Crary failed to identify *how* Jones

purportedly breached her fiduciary duties.  In fact, Crary failed to even *allege* that Jones

breached her fiduciary duties.  Under Section 404(a) of ERISA, a fiduciary must

 discharge his duties with respect to a plan solely in the interest of the participants and

beneficiaries  and:

> (A)     for the exclusive purpose of: (i) providing benefits to
> participants and their beneficiaries; and (ii) defraying
> reasonable expenses of administering the plan;
>
> (B)     with the [appropriate] care, skill, prudence and
> diligence under the circumstances . . . .;

---

[2]  In *Sunderlin*, the plaintiff alleged that defendant breached its fiduciary duty when it failed to
provide a summary plan description to plaintiff.  The court found that the defendant could not assert a
third-party claim against another fiduciary where the latter fiduciary had no responsibility to provide a plan
description to plaintiff.  *Id.* at 237.

       (C)     by diversifying the investments of the plan . . .; and

       (D)     in accordance with the documents and instruments governing the plan . . . .

See 29 U.S.C. § 1104(A).  Jones did not breach any of these enumerated duties.

Rather, the record is clear that Jones, unlike Crary, did everything she could to assist the Plans and its participants, in her limited role as the broker s administrative assistant.  When Great West complained that it was not receiving payment from Lassen, she promptly forwarded these concerns to Lassen.  When health care providers and Lassen employees contacted her about nonpayment of medical bills, she answered their questions.  (Jones s dep. at 14, 41-42, 116-117; Jones Dec., ¶ 6).  In sum, Crary cannot point to any action or omission by Jones that would even remotely support a claim for breach of fiduciary duty against Jones in connection with Crary s claim for indemnity. The Court should grant summary judgment against Crary on this claim.

## IV.  CONCLUSION

Crary s claim against Jones is subject to summary judgment because ERISA does not permit a fiduciary to seek indemnity from an alleged co-fiduciary, and even if such an action was permissible, there is no evidence in the record that Jones breached any of her alleged fiduciary duties to support a claim of indemnity by Crary.  This claim against Jones wholly lacks merit and never should have been brought.  It should proceed no further.  Based on the foregoing, Jones respectfully request that this Court grant summary judgment in its entirety on this third-party claim asserted by Crary.

9

Respectfully submitted,

s/ David M. Cook

_____

David M. Cook (0023469)
Stephen A. Simon (0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178

Trial Attorneys for Polly Jones

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served this 10th day of November, 2003, via U.S. regular mail, postage prepaid, upon the following:

Leonard Kristal
107 Diablo Drive
Kentfield, California 94904

Stephen R. Felson
617 Vine Street
Suite 1401
Cincinnati, Ohio 45202
Trial Attorney For Defendant Crary

Paul D. Marotta
Christopher D. Denny
Jennifer Chen
The Corporate Law Group
500 Airport Blvd., Suite 120
Burlingame, CA 94010
Of Counsel for Defendant Crary_

s/ David M. Cook

_____

ATTORNEY FOR POLLY JONES