**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS ALLEN, et al.** | : | |
| | | Case No. C-1-01-159 |
| **Plaintiffs** | : | |
| | | Judge Herman S. Weber |
| **v.** | : | |
| | | Magistrate Judge Timothy S. Hogan |
| **JOHN CRARY, et al.** | : | |
| | | |
| **Defendant/** | : | |
| **Third-Party Plaintiff** | | **THIRD-PARTY DEFENDANT POLLY** |
| | : | **JONES S PROPOSED FINDINGS OF** |
| **v.** | | **FACT AND CONCLUSIONS OF LAW** |
| | : | |
| **POLLY JONES, et al.** | : | |
| | | |
| **Third-Party Defendants** | : | |
| | : | |

\*    \*    \*    \*    \*

Third-Party Defendant, Polly Jones ( Jones ), in connection her filing of a Motion
for Summary Judgment on Defendant John L. Crary s Third-Party Complaint, submits
her proposed Findings of Fact and Conclusions of Law, as follows:

**I.    FINDINGS OF FACT**

**A.    Responsibilities of Jones at Pickering Insurance.**

1.    Pickering Insurance Services ( Pickering Insurance ) is in the
business of serving as a broker between its clients, which includes
employers. and insurance companies.  Randy Pickering, Jones s
husband, is the owner of the business.

a.    (Deposition of Polly Jones, page 8).

2.    Since 1987 to the present, Jones has been employed at Pickering

Insurance as her husband s administrative assistant.

a.    (Jones s dep. at 8).

3.    Jones s duties at Pickering Insurance include acting as a  customer

service rep[resentative]  to the employers.  Jones handles their

questions about premiums, non-payment of medical bills, and other

such day-to-day concerns.

a.    (Jones s dep. at 8).

b.    (Deposition of Randy Pickering, pages 9-10).

**B.    Lassen s Relationship with Great West.**

4.    In 1998, Pickering Insurance helped the Lassen Companies, Inc.

( Lassen ) in its search for an insurance company to administer the

health plan for its employees.  Lassen ultimately selected

Great-West Life & Annuity Insurance Company ( Great West ) to

administer the Lassen Health Benefits Plans ( Health Plans ),

which included a preferred provider organization (PPO) plan and a

health maintenance organization (HMO) plan.

a.    (Jones s dep. at 12, 22-23).

b.    (Deposition of Shirley Monroe, April 24, 2002, pages 52-53).

c.    (Depo. Exh. s 27, 29).

5.    In connection with her role as a customer service representative to

Lassen, Jones was designated as the  Administrator/Broker  for

the Health Plans.

2

a.    (Depo. Exh. s 27, 29).

6.    The Health Plans were partially self-insured plans.  Under this arrangement, Lassen paid Great West both a monthly premium to pay for the fixed costs of administering the plan and a monthly payment to cover health benefit claims made by Lassen s employees. If the value of the monthly claims exceeded a certain amount, Great West s stop-loss coverage was triggered.

a.    (Jones s dep. at 13, 23-25).

b.    (Pickering dep. at 23-25).

c.    (Depo. Exh. 30).

7.    Lassen employees made contributions to the Health Plans, the amounts of which were deducted from their paychecks.  Under Lassen s arrangement with Great West, Lassen was supposed to deposit the employee contributions and the company contributions in a  claim account  that Great West could access to pay claims. With respect to the monthly premium, Lassen was expected to pay this    amount directly to Great West.

a.    (Monroe s dep. at 41-42).

b.    (Pickering s dep. at 26-27).

8.    Pickering Insurance did not have any access to or control over the  claim account  or any other assets of the Health Plans.  Pickering Insurance was merely Lassen s broker; it could not control anything that Lassen management decided to do with assets of the Health

3

Plans.

    a.    (Declaration of Polly Jones, ¶ 5).

**C.    Demise of the Health Plans Due to Lassen s Failure to Pay Great West.**

    9.    Soon after Lassen in 1998 purchased Wright-Bemet, Inc. ( Wright-Bernet ), a manufacturing company based in Hamilton, Ohio, Lassen stopped timely paying its monthly premium and payment of claims to Great West.  Great West put the Health      Plans on  administrative hold  twice for several months in 1999 and 2000, and then ultimately advised Lassen in July, 2000 that it was terminating the Plans.

    a.    (Jones s dep. at 14).

    b.    (Monroe s dep. at 71-72, 103).

    c.    (Depo. Exh. 69).

    10.    During this period of time, Pickering Insurance, and particularly Jones herself, acted as a messenger between Great West and Lassen.  On a regular basis, Great West would contact Jones and ask why it had not received its monthly payment from Lassen. Jones would then communicate with Lassen that it was in arrears, stressing the importance of Lassen s immediately catching up on its payments.

    a.    (Jones s dep. at 14, 41-42).

    b.    (Depo. Exh. 40).

11. Due to Lassen s failure to pay Great West, Lassen employees medical bills went unpaid. During this time, Jones diligently handled countless telephone calls from health care providers and Lassen employees about their unpaid medical bills. Pickering Insurance received as many as ten to fifteen calls a day.

    a. (Jones s dep. at 116-117).

    b. (Pickering s dep. at 22-23).

12. When Jones received a call from an employee concerning an unpaid bill, Jones would investigate the facts underlying the inquiry and then call the employee back with an answer. Almost all of the unpaid medical bills were due to the administrative hold that resulted from Lassen s failure to pay Great West. In these instances, Jones advised the employees who called that the Health Plans had been put on administrative hold.

    a. (Jones s dep. at 116-117).

    b. (Polly Jones Dec., ¶ 6).

    c. (Pickering dep. at 22-23).

13. When Great West did not receive its monthly payment from Lassen, Pickering Insurance did not receive its monthly commission. (Jones s dep. at 26-27). For most of the time that Pickering Insurance served as Lassen s broker, Pickering Insurance did not get paid.

    a. (Jones s dep. at 26-27, 117).

5

## II.    CONCLUSIONS OF LAW

1.    Crary cannot assert this third-party claim against Jones because, as a
matter of law, a plan fiduciary cannot assert a third-party claim for
indemnity against an alleged fiduciary under ERISA.

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002);
*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985); *Williams v.
Provident Investment Counsel, Inc.,* 2003 U.S. Dist. LEXIS 15348 (N.D. Ohio 2003);
*Roberts v. Taussig*, 39 F. Supp.2d 1010, 1011-12 (N.D. Ohio 1999); *Daniels v. National
Employee Ben. Services, Inc.*, 877 F. Supp. 1067, 1073-74 (N.D. Ohio 1995); *Kim v.
Fujikawa*, 871 F.2d 1427 (9th Cir. 1989); *Call v. Sumitomo Bank of California*, 689
F.Supp. 1014 (N.D. Cal. 1988), *aff d in part and rev d in part,* 881 F.2d 626 (9th Cir.
1989); *Narda, Inc. v. Rhode Island Hosp. Trust Nat l Bank*, 744 F.Supp. 685 (D. Md.
1990); *Mutual Life Ins. Co. v. Yampol*, 706 F.Supp. 596 (N.D. Ill. 1989); *Franklin v.
Aetna Life Ins. Co.*, 10 EBC 1022 (D. S.C. 1988); *McClendon v. Continental Group,
Inc.*, 7 EBC 2403 (D. N.J. 1986); *Whitfield v. Lindemann*, 853 F.2d 1298, 1303 (5th Cir
1988); *Donovan v. Robbins*, 752 F.2d 1170 (7th Cir. 1985); *McLaughlin v. Biasucci*, 688
F.Supp. 965 (S.D. N.Y. 1988); *Brock v. Gillikin*, 677 F.Supp. 398 (E.D. N.C. 1987).

2.    Crary s claim for indemnity against Jones must fail, as a matter of law,
because there is no evidence that Jones committed a breach of fiduciary
duty that resulted in Plaintiff s losses which they seek to recover against
Crary in this case.

29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A); 29 U.S.C. § 1104(A), ERISA §

6

404(A); *Restatement (Second) of Trusts*, § 258, pp. 650-654 (1959); *Sunderlin v.*

*First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 237 (W.D. N.Y.

2002).

3.      Crary s third-party claim of indemnity against Jones is subject to summary

judgment because there is no genuine issue of material fact regarding this

claim and such claim must fail as a matter of law.

Fed. R. Civ. Pro. 56(c); see citations in prior sections.

Respectfully submitted,

s/ David M. Cook

_____

David M. Cook (0023469)
Stephen A. Simon (0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:     (513) 721-1178

Trial Attorneys for Polly Jones

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served this 10th day of November, 2003, via U.S. regular mail, postage prepaid, upon the following:

Leonard Kristal
107 Diablo Drive
Kentfield, California 94904

Stephen R. Felson
617 Vine Street
Suite 1401
Cincinnati, Ohio 45202
Trial Attorney For Defendant Crary

Paul D. Marotta
Christopher D. Denny
Jennifer Chen
The Corporate Law Group
500 Airport Blvd., Suite 120
Burlingame, CA 94010
Of Counsel for Defendant Crary__

s/ David M. Cook

_____

ATTORNEY FOR POLLY JONES