UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DENNIS ALLEN, et al.** | : | Case No. C-1-01-159 |
| Plaintiffs | : | |
| | | Judge Herman S. Weber |
| v. | : | |
| | | Magistrate Judge Timothy S. Hogan |
| **JOHN CRARY, et al.** | : | |
| Defendant/ | : | |
| Third-Party Plaintiff | | **DECLARATION OF SHIRLEY MONROE** |
| | : | |
| v. | | |
| | : | |
| **POLLY JONES, et al.** | | |
| | : | |
| Third-Party Defendants | | |
| | : | |

\* \* \* \* \*

I, Shirley Monroe, certify and declare as follows:

1. From approximately January 1, 1999, to September 24, 2001, I was employed by The Lassen Companies, Inc. ("Lassen"), whose headquarters was located in Irvine, California. During that entire period of time I worked in Hamilton, Ohio, at Wright-Bernet, Inc. ("Wright-Bernet"), which was a manufacturer of industrial brooms and brushes that Lassen had purchased in the end of 1998. Prior to this sale, I had worked for Wright-Bernet for two years.

2. When Lassen purchased Wright-Bernet, my job title was "human resources coordinator." In October, 1999, I was given the title of "director of human resources." However, there was no human resources department to speak of during my tenure at Lassen. Although I had one employee who assisted me for approximately

EXHIBIT A

five months in 1999 with payroll duties, I was the only employee in human resources at Lassen. I did not have any employees who directly reported to me.

3.  Despite my "director" title, I had limited responsibilities, including serving as the Wright-Bernet payroll clerk (except for the 5-month period in 1999 as referenced in the preceding paragraph). The company used ADP, a payroll service company, to prepare the paychecks for Wright-Bernet employees. Because our hourly employees at Wright-Bernet were paid weekly, every week I sent ADP information reflecting the number of hours these employees worked, so that ADP could prepare their payroll checks. Subsequent to an employee's hire, information concerning the amount of an employee's payroll deduction, such as his or her health plan contribution, typically did not change. I therefore did not send information to ADP about employee health plan contributions on a weekly basis. I only had to forward that kind of information once, and ADP then retained that information about the amount of the deduction to calculate the employee's net pay every week.

4.  I had no responsibilities regarding the funding of the company's payroll bank account. After receiving the payroll information from Wright-Bernet, ADP staff would then sign and issue the payroll checks. Beginning in approximately July of 1999, due to Lassen's management's failure to properly fund the payroll account in the first six months of 1999, ADP's practice was to issue the payroll checks drawn on Lassen's local bank account in Hamilton. Lassen's management in California was responsible for wiring sufficient funds from company bank accounts in California to the local bank account.

2

5. In connection with forwarding the payroll information to ADP, I also prepared payroll reports to Lassen's management in California on a weekly basis. I typically forwarded the payroll reports to Lassen's controller, specifically. The payroll reports reflected the amount of gross and net pay for each employee, including the amounts of each payroll deduction. It was management's responsibility in California to ensure that these payroll deductions were remitted to the health benefit plan claims account, tax authorities, or wherever appropriate for each particular deduction. I did not have access to or control over these monies in any way.

6. I did not have the authority at Lassen to unilaterally advise ADP to stop deducting the employee plan contributions. No one in Lassen management ever instructed me to advise ADP that it should stop deducting employee plan contributions from Wright-Bernet employees' paychecks.

7. I forwarded the payroll reports to Lassen management in California without fail during my employment at Lassen, including during the two periods of time that the health benefits plans were put on administrative hold, in 1999 and 2000. Also, for the approximate five-month period in 1999 that Lassen employed an additional employee to prepare the payroll at Wright-Bernet, I ensured that this payroll clerk forwarded the payroll information to Lassen headquarters on a weekly basis without fail.

8.  In September, 1999, James Thelan, Lassen's controller, who worked at Lassen's headquarters in California, told me that the health benefits plans for Lassen's employees had been placed on "administrative hold" by the insurance carrier, Great West Insurance Company ("Great West"). Thelan explained that Great West had put the plans on hold because of Lassen's ongoing failure to pay Great West under the terms of the service agreement between Great West and Lassen.

9.  The payroll reports I forwarded to Lassen clearly reflected that employee contributions to the health benefits plans were being deducted from employees' paychecks at Wright-Bernet. For this reason, I never verbally discussed this continuing practice with Lassen management during the administrative hold in 1999. I also had no reason to doubt that, during this time, employee contributions continued to be deducted from the paychecks of employees that worked at Lassen's headquarters, whose payroll I did not prepare. Immediately after learning that the health plans had again been put on administrative hold in February, 2000, I had numerous conversations during that time about this problem with Lassen's management, including James Thelan and Lenn Kristal.

10. During my employment at Lassen, I did not have the authority to sign company checks, including payroll checks. I did not have access to or exercise any control over any bank accounts held by Lassen, including the local payroll account and the claims account into which the Wright-Bernet employee plan contributions were supposed to be deposited.

4

11.    During my employment at Lassen, I had numerous paychecks bounce because of insufficient funds in Lassen's payroll account. This happened with increasing frequency in the months preceding my last day of employment at Lassen on September 24, 2001. I ultimately worked approximately the last thirteen weeks at Lassen without any compensation.

I declare subject to the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed at Cincinnati, Ohio, this 7th day of November, 2003.

*Shirley Monroe*
SHIRLEY MONROE