UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS ALLEN, MARY JANE CRACRAFT, LELAN LITTRELL and GLASS, MOLDERS, POTTERY, PLASTIC AND ALLIED INDUSTRIAL WORKERS, LOCAL NO. 41, AFL-CIO,

        Plaintiffs,

vs.

LEONARD D. KRISTAL, and JOHN L. CRARY,

        Defendants.

_____

JOHN L. CRARY,

        Cross-Claimant,

vs.

LEONARD D. KRISTAL,

        Cross-Defendant.

_____

JOHN L. CRARY,

        Third-Party Plaintiff,

vs.

POLLY JONES, SHIRLEY MONROE, JAMES THELAN,

        Third-Party Defendants

_____

Case No:  C-1-01-159

Judge Herman J. Weber
Magistrate Judge Timothy S. Hogan

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

Comes now, Defendant John Crary and respectfully presents his Memorandum in Reply to Plaintiffs' Opposition to his Motion for Summary Judgment.

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

# I.

## INTRODUCTION

Realizing that their case is without factual support and devoid of merit, Plaintiffs have filed a raft of confusing pleadings, including their 34-page opposition brief to John Crary's ("Crary") motion for summary judgment. These documents 1) were filed almost a full week after the 20 day time period required by this Court's scheduling order, 2) exceeded the number of pages allowed for by the local rules, 3) purportedly combined a cross-motion for summary judgment against Crary (which is also untimely since the dispositive motions cutoff date per the amended scheduling order was October 15, 2003 - some 26 days earlier), and 4) contained references to hearsay, innuendo, unsupported argument and other faulty evidence, all in a desperate attempt at obfuscation in the hope that they can manufacture a triable issue of fact.

What Plaintiffs did not do was 1) present any counter-statement of findings of fact and conclusions of law, 2) attempt to, in any comprehensible manner, identify actual, admissible, factual support for any of their conclusory arguments and statements, 3) file their opposition timely, or 4) proffer any admissible factual opposition to any of Crary's several statements of fact, which Plaintiffs merely identified as being false.

## A.    PLAINTIFFS ARE A DAY LATE.

Crary notes that responding to this milieu of pleadings is daunting at best, unfair at worst. Crary filed his motion for summary judgment on October 15, 2003 in accordance with this Court's amended scheduling order. Plaintiffs and Third-Party Defendants filed a raft of pleadings on November 10, 2003, all untimely under this Court's amended scheduling order.[1]

The brief filed by Plaintiffs in opposition to Crary's summary judgment motion purports to also be in support of Plaintiffs' cross motion for summary judgment against Crary. While Plaintiffs did not bother filing a counter-statement of fact, as noted above, they and Third Party

---

[1] Unbelievably, Crary's counsel received electronic notice from the Court that Plaintiffs were attempting to file additional documents, including supplemental memoranda in connection with the summary judgment motions, as late as November 18, 2003.

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

1    Defendants did file statements of fact in support of their own summary judgment motions.  Crary is

2    at a loss whether to treat this proposed statement of fact in support of Plaintiffs' summary

3    judgment motion also as a counter-statement.  Because Plaintiffs did not so designate it, Crary will

4    respond to this statement in his opposition to Plaintiffs motion, and not here.

5        Plaintiffs' intentional or ignorant refusal to file pleadings in accordance with this Court's

6    amended scheduling order has also placed the timing of Crary's reply and opposition in question.

7    Crary hereby files his reply to Plaintiffs' opposition on November 20, 2003, 10 days following

8    Plaintiffs' tardy filing, and will oppose Plaintiffs' and third parties' motions, no later than

9    November 30, 2003, 20 days after their filings, in an attempt to stay within the scheduling this

10    Court intended.

11    **B.    <u>PLAINTIFFS ARE A DOLLAR SHORT.</u>**

12        To ice the cake, Plaintiffs even have the temerity to state in their opposition that Judge

13    Hogan's Report and Recommendation on Crary's motion to dismiss, which outlines Plaintiffs'

14    burden, was wrongly decided because Judge Hogan "misread or misapplied" the law.  Plaintiffs

15    then wax lyrical about their interpretation of the appropriate legal standard (of course stating

16    conclusively that they met the straw-man standard they created).  Plaintiffs then go on to refer to

17    inapplicable case law as the alleged standard for this case, but which this Court never adopted.

18        Actually, this last point is critical.  For what is glaringly clear from Plaintiffs' brief, even

19    before getting to Crary's purported breach of fiduciary duty, is that their theory of liability for

20    Crary is fundamentally flawed.  Either Plaintiffs or their counsel do not understand basic corporate

21    law, or they choose to ignore it.  Throughout heir brief, Plaintiffs state that the "crux" of their case

22    against Crary is that he became a fiduciary under ERISA by virtue of his "power" to appoint and

23    remove Leonard Kristal ("Kristal").  This "power" is never defined or described by Plaintiffs,

24    despite repeatedly being alluded to.  Plaintiffs do not bother taking the Court or Crary through the

25    method by which this power might have been wielded by Crary; nor do they identify 1) whether

26    this power, by necessity, included assistance by any third parties not present before this court, or 2)

27    exactly where in Delaware corporate law this "power" is given to Crary.

28

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
SUMMARY JUDGMENT

However, as made abundantly clear by the evidence Crary painstakingly presented, Crary was only one of three directors of Lassen during the relevant time period.  He could never unilaterally appoint or remove Kristal as the CEO of Lassen.  Only the Board could do that.  Hence, Crary individually lacks the requisite ability to act and is not a fiduciary under ERISA.  Plaintiffs' case fails for this reason alone.

And even assuming Plaintiffs can get past this initial hurdle on summary judgment (which they cannot), there is no evidence that Crary breached any purported fiduciary duty under ERISA, or violated any other section of ERISA.  Accordingly, Crary should be awarded summary judgment because there is no triable issue of any material fact in this case.

## II.

## ARGUMENT

### A.    PLAINTIFFS' OPPOSITION BRIEF WAS FILED LATE AND SHOULD BE DISREGARDED BY THE COURT.

The Court entered the Amending Scheduling Order for this matter on May 29, 2003.  The Order states at paragraph 3 that all dispositive pretrial motions are to be filed by October 15, 2003.  The Order then goes on to state at paragraph 3 that opposing counsel shall serve his response to the dispositive motion twenty (20) days thereafter.

Crary filed and served his motion on October 15, 2003 in accordance with the Amended Scheduling Order.  Plaintiffs had 20 days, until November 4, 2003, to file their opposition.  However, Plaintiffs filed their opposition brief on November 10, 2003 – six days past the deadline.  Further, the opposition exceeds the page limit per local rule, and contains a cross-motion by Plaintiffs for summary judgment filed 26 days after the deadline for such motion.

Crary does not like making procedural arguments of this sort, but he has actually been disadvantaged by Plaintiffs' scofflaw attitude.  Crary has had to decide to which of Plaintiffs' filings he would reply to now, he gave Plaintiffs a 26-day look at his motion for summary judgment before they filed anything, and he has had to interpret when his reply and opposition would be due since Plaintiffs' filings bore no resemblance to the Amended Scheduling Order.

4

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

In short, Plaintiffs' opposition and motion are tardy all to Crary's prejudice.  Plaintiffs should not be allowed to ignore, with impunity, the orders of this Court.  Accordingly, Crary requests that this Court disregard Plaintiffs' untimely opposition to his motion and grant him summary judgment.

**B.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF CRARY BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT CRARY WAS A FIDUCIARY.**

Despite their protestations otherwise, Plaintiffs attempt to attach an ERISA fiduciary label to Crary solely because he was one of the three directors and held the title of Chairman of the Board of Lassen.  Plaintiffs admit that the "crux" of their case against Crary is that ERISA fiduciary label attaches to Crary because he alone allegedly had the "power" to appoint, retain and remove Kristal as the plan fiduciary.  (Plaintiffs' brief at page 13).  Hence, the first step in their case is to establish that Crary is a fiduciary before looking to any alleged breach of that duty.  As a matter of law Plaintiffs cannot do so.

Plaintiffs take the inconsistent position that Crary was one of three directors, but that he could have somehow unilaterally taken some action to appoint or remove Kristal as CEO or plan fiduciary.  Of course they never actually point to any law that would allow this, nor do they illustrate how this alchemy could actually occur.  The following short discussion of Delaware corporation law illustrates that this hurdle is insurmountable for Plaintiffs.

Lassen is a Delaware corporation.  Delaware Corporation Code §141(a) provides that, "The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors."  There is no provision in Delaware corporate law for any director to take any action unilaterally.  The board's powers and authority may be exercised only collectively.  Subsection (b) provides that, "a majority of the total number of directors shall constitute a quorum for the transaction of business," and that, "the vote of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

directors." Delaware Corporations Code §141(b). Thus, unlike officers, an individual director has no authority to take action on behalf of a corporation.[2]

Further, there are no special powers or rights held by a "Chairman of the Board." Nowhere in Delaware corporate law is there any provision for a "super" vote by the chairman, the ability of the chairman to make special decisions or dictate to the board as a whole or any other conceivable "extra' power. The chairman is simply a director who may preside over meetings, but does not even have the power to cut short discussion or invoke "Roberts Rules of Order" in an attempt to limit discussion or steer that discussion in any particular direction.

The underlying and overriding policy of Delaware law with respect to exercising the functions of the board of directors is collegiality. *Delaware Corporation Law and Practice*, Section 13.01[6], page 13-8 (Matthew Bender (2003), Drexler, Black, Sparks, editors). To be valid, actions of a board must be taken at a meeting where all members are afforded the opportunity to be present. *Liberis v. Europa Cruises Corporation*, 1996 WL 73567 (Del. Ch. 1996).

The employment agreement referenced by Plaintiffs on page 19 of their brief is *unsigned*. However, it does say at paragraph 2, and Plaintiffs admit on page 19, that Kristal had a duty to report to and take directions from the Company's (e.g., Lassen's) Board of Directors. There is absolutely no allegation here, nor is there any evidentiary support for the proposition, that Kristal had any duty, obligation or requirement whatsoever to take any direction from Crary alone.

---

[2] For that matter, once a person is a Director, it is quite hard, if not completely impossible, to remove him or her from office without a shareholder vote. For example, *Dillon v. Berg*, 326 F.Supp. 1214 (D.Del.), aff'd, 453 F.2d 876 (3rd Cir. 1971), stated in unequivocal terms that a by-law provision permitting directors to remove a fellow director without a clear showing of cause violates public policy. In *Dillon*, the court followed the Delaware Court of Chancery in *Bruch v. National Guarantee Credit Corp.*, 116 A. 738 (1922), in which the Court appeared to reject the existence of the power to remove a fellow director even for cause based upon the same policy. That power is vested only in the shareholders, and here a shareholder voting agreement made such removal impossible. The record is clear that Kristal carefully protected himself in connection with his formation of Lassen. It is undisputed that Kristal required a voting agreement protecting his Board seat and that he had a very high severance provision if he was ever fired by the Board as CEO. Kristal did his due diligence and set up his company, Lassen, to protect himself from interference, even by the entire board of directors, let alone unilateral action by the Chairman of the Board.

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

The following is undisputed.  Kristal was appointed CEO of Lassen by the Lassen board. He was to report to and take direction from the Board.  Only the Board could remove him as CEO of Lassen.  Crary could not unilaterally appoint or remove Kristal as CEO of Lassen.  Crary could not (and did not) unilaterally appoint or remove Kristal as the plan fiduciary.  It must follow then that Crary had no obligation to monitor and oversee Kristal.  Even if Crary actually knew of Kristal's malfeasance (and he did not), he did not have the power to take unilateral action.  Period.

Plaintiffs want to focus on some purported <u>authority</u> of Crary as Chairman of the Board. Yet, pursuant to Article IV, Section 6 of the bylaws, Crary's only authority as Chairman of the Board is to preside at Board meetings at which he is present.  Neither the Board, nor the bylaws, nor Delaware law assigned any other powers or duties to him.  There is no evidence supporting Plaintiffs' assertion that Crary held the authority or power to either remove Kristal as a director, to remove him as CEO, to remove the responsibility for the benefits plans from him, or unilaterally to cause the Board to do so.  On the contrary, the first section on page 7 of the Shareholders Agreement, as well as Section 2 of Kristal's Employment Agreement, specifically restrict Crary's ability to do so.  Pursuant to Kristal's Employment Agreement, Kristal would report to and take directions from the Board, not Crary.  Pursuant to the Shareholders Agreement, Kristal would be one of the three Board members and could not be removed so long he was a shareholder of the company.

In addition to being flat out wrong on Crary's unilateral ability to do anything to Kristal, Plaintiffs do not even try to honestly present admissible evidence supporting their assertions.  For example, on page 18 of their opposition brief Plaintiffs assert that "Crary . . . gave Kristal complete authority over all of Lassen's employees benefit plans."  Plaintiffs baldly cite to Crary's deposition at page 81, without the benefit of having prepared a counter-statement of undisputed facts.  The best interpretation of this is that this misconstrues Crary's testimony; the worst that it is intentionally misleading.  What Crary actually said was, "He [Kristal] would be in charge of the operations of the company."

---

7

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

The simple conclusion here is that Crary has no liability as an ERISA fiduciary as a matter of law because he did not have either the unilateral power or authority to appoint or remove Kristal as a director, CEO or a plan fiduciary.

## C.    CRARY HAD NO ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF KRISTAL'S BREACH OF FIDUCIARY DUTY.

Judge Hogan outlined in his Report and Recommendation precisely what Plaintiffs need to prove to establish liability against Crary in this lawsuit.

> "*Plaintiffs must demonstrate what [Crary] knew and when he knew it and apply either the actual or constructive knowledge of Mr. Crary to each transaction engaged in by the Plan Administrator.*"

(See Judge Hogan's Report and Recommendation page 5)

Plaintiffs cannot establish co-fiduciary liability against Crary. Plaintiffs have failed to establish that Crary had any actual or constructive knowledge of Kristal's breach of fiduciary duties. Plaintiffs' evidence is irrelevant, completely deficient or inadmissible as hearsay, or worse.

1) The little evidence proffered by Plaintiffs is irrelevant, deficient or inadmissible.

Plaintiffs cite Randy Pickering's deposition for the proposition that Pickering informed Crary, in the last of three purported telephone calls, that Kristal was committing fraud with the health insurance. However, Pickering's telephone records specifically contradict any testimony that he ever called Crary in the time period stated. While it is not the job of this court in this proceeding to weigh evidence, for the Court to deny Crary's motion for summary judgment it should find a dispute concerning a material fact, not just a wild allegation unsupported by any admissible evidence. The telephone records produced from Pickering do not support his story that he called Crary at any of Crary's numbers in 2000. Nowhere in Pickering's telephone records is there any record of any call to any number of John Crary. While Plaintiffs have marked as false Crary's undisputed fact number 54, they have produced absolutely no evidence that such a call was ever made. If the fact is untrue, identify the call to Crary. They do not because they cannot. Pickering never called Crary on any phone, nor is there any phone record showing that Pickering ever called Crary at any of Crary's numbers other than the three calls to his office in 1999. This

8

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

1    fact is completely undisputed despite Plaintiffs' wish that it not be so.

2        Plaintiffs then cynically attempt to use Crary's wife's horrific automobile accident in their

3    favor with respect to Crary's knowledge of health premiums not being paid.   Again, Randy

4    Pickering and Polly Jones' general deposition testimony does not reflect what Plaintiffs allege in

5    their brief.   Pickering testified that Crary called to see if there was coverage after the accident and

6    that the only problem was a subrogation issue that arose between carriers.   Jones, the health plan

7    administrator, further testified that the accident happened in 1999 when there were no problems

8    with the health insurance.   Therefore, there was nothing to report to Crary since there was no

9    problem(s).

10        Plaintiffs quote at length the deposition testimony of Michael Lindemuth on pages 24 and

11    25 of their brief (again without submitting any counter-statement of undisputed facts).   However,

12    as is obvious from the deposition testimony on which Plaintiffs rely, Mr. Lindemuth has no first-

13    hand knowledge whatsoever of what Crary knew or did not know.   He states that "I believe" that

14    Crary, in "his opinion," was aware that their was a problem with the health insurance because of

15    Crary's wife's car accident.   Lindemuth is clearly speculating and this testimony is inadmissible as

16    hearsay and as speculation lacking any foundation whatsoever at any trial on this matter.   At the

17    top of page 25 of Plaintiffs' opposition brief it is asserted that "Lindemuth verified that in June

18    1999 Bob Bernet, Jr. contacted John Crary regarding Lenn Kristal's handling of the finances," but

19    this entire statement is inadmissible hearsay.   Crary objects to all of this supposed evidence on

20    these bases.

21        Similarly, testimony proffered relating to the general financial problems of Lassen is

22    irrelevant and cannot be bootstrapped to show that Crary had knowledge of specific conduct of

23    Kristal relating to the health or 401k plans.   If knowledge that things are not great with a company

24    financially is sufficient to impose ERISA liability on all senior management, then thousands of

25    directors and officers face massive liability in this long-lasting economic slump.   Specifically,

26    Plaintiffs' references to a child support payment issue and general financial problems of Lassen on

27    pages 11 and 25 of their brief are totally irrelevant to this proceeding.   This kind of "back door"

28

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
SUMMARY JUDGMENT

evidence does not support any specific knowledge of Crary about health insurance premium deductions. In fact, it is exactly this kind of unsupported innuendo that Crary submits Plaintiffs hope will cloud the issue enough for them to escape summary judgment here. Crary submits that Plaintiffs present such evidentiary hyperbole in a vain hope that this court will not look too closely at exactly what evidence they have accumulated, or more accurately, failed to accumulate.

No one from Lassen ever reported to Crary about non-payment of employees' contributions to the health benefit plan or 401(k) plan. Neither Polly Jones nor Shirley Monroe informed Crary about the problems with the plans, even when both of them were on the front line in managing the plans. Plaintiffs mark as false Crary's undisputed fact number 32, that Polly Jones did not inform Crary that Kristal had failed to pay health insurance premiums, yet Plaintiffs offer no evidence as to why this fact is false, and the fact is supported by Jones' own deposition testimony. Without Plaintiffs providing evidence to the contrary, the fact is completely uncontroverted and no triable issue of material fact remains as to this matter. Plaintiffs offer no evidence whatsoever, let alone credible evidence, that Jones so informed Crary.

Bob Bernet's testimony is taken out of context and contains hearsay as well. When asked if the chain of command for Lassen on paper was "John, Len, Bob," Bernet specifically stated that he never saw anything official to that effect on paper. (Bernet deposition at pages 26, 27). This makes any evidence Bernet has to offer on this subject speculative and inadmissible; certainly not a subject on which he can competently testify. More examples of hearsay are contained at pages 33 and 34 where Burnet explains that his understanding of Kristal leaving Lassen was based on "conversations with Bob Morris." Once again, inadmissible hearsay. On page 25 of their opposition, Plaintiffs reference page 65 of Bernet's deposition where Bernet recites certain inadmissible hearsay attributed to Bob Morris. Again, there is nothing admissible here; there is no credible evidence to refute the undisputed facts identified, itemized, and carefully referenced to admissible testimony, by Crary.

Michael Pekar's deposition testimony at page 25 is, similarly, inadmissible hearsay.

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs further try to rely on the relatively vague deposition testimony of Defendant Leonard Kristal to try to impugn Crary. First, Kristal is dishonest and his testimony suspect to begin with as illustrated by the deposition testimony and declarations submitted by Crary. The remarkably consistent testimony against Kristal's truth and veracity must be considered in assigning credibility to anything originating with Kristal in determining whether there remains a triable issue of material fact. Crary submitted testimony from a full seven witnesses, all of whom said that Kristal is untruthful. This evidence must be considered in determining if there remains any triable issue of material fact in this case. Plaintiffs have marked this fact as "false" yet have offered no testimony from even one witness who believes Kristal to be truthful. Moreover, Kristal's testimony cited by Plaintiffs in this matter is taken out of context, is inaccurate and contains hearsay.

For example, nowhere on page 82 of the transcript does Kristal say that Crary had the authority to remove him as CEO or as a director of Lassen. Kristal admits on page 105 of his transcript that his response to the question is hearsay. He also answers that the decision that he be CEO and President was by mutual consensus between himself, Crary, and Morris (e.g., the Lassen Board of Directors). When asked if Crary had the authority and ability to remove him as CEO, Kristal responds by stating that he was not a corporate lawyer and that in his "personal opinion" it is right there in the shareholders agreement.

However, the shareholders agreement Kristal refers to does not give Crary the authority to appoint or remove Kristal as CEO of Lassen. To the contrary, it concerns three shareholders, Crary, Morris and Kristal, and their vote of shares in electing the *directors* of Lassen. Paragraph 10 of the agreement says that each shareholder will vote his shares for one nominee of each such shareholder to the *Board*. This agreement does not deal with the appointment or retention of officers of Lassen. Crary did not have the authority to remove Kristal and Kristal's testimony referenced by Plaintiffs to prove otherwise does no such thing.

On page 142 of Kristal's deposition transcript, he is asked about his understanding of the job responsibilities of the Chairman of the Board. Kristal did not directly answer the question and

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

instead responded by stating things that are simply inaccurate.  Kristal reported to the Board, not Crary.  Kristal's statement on page 148 that Crary purportedly told people like Bob Morris that Crary would not allow Kristal to be removed is inadmissible hearsay.  The same is true with Kristal's responses on page 174.  Kristal prefaces his answers at the bottom of page 173 by stating that "I was told by John Crary. . . ."  Consequently, all of page 174 is inadmissible hearsay.

Lastly, Kristal states that he <u>never</u> relayed to Crary anything concerning the 401k documents at page 103 of his deposition.  Any assertions by Plaintiffs to the contrary are completely without support.  For example, Plaintiffs have marked Crary's proposed undisputed fact number 35 as false, but again offer no testimony whatsoever that Kristal ever informed Crary of the 401(K) violations.

2)    <u>Plaintiffs reargue their Motion for Review of the Report and Recommendation on Crary's Motion to Dismiss.</u>

Realizing that Crary had no power to unilaterally remove Kristal, and that he was never informed of Kristal's malfeasance, Plaintiffs attempt to argue for another legal standard to be applied in this case.  Plaintiffs repeat the erroneous arguments in their Motion to Review Magistrate Hogan's Report and Recommendation on Crary's motion to dismiss.  However, all the cases Plaintiffs have cited are based on the premise that the fiduciaries at issue must have the power or have exercised the power to appoint or remove the other fiduciary to the plan.  Here, Crary by himself did not have the power to appoint or remove Kristal, nor did he exercise such power.  Even if the Board collectively could appoint and remove Kristal as a plan fiduciary, there is no evidence that the Board actually appointed Kristal as a fiduciary to the plans.  Plaintiffs alleged Kristal as a functional fiduciary to the plans.  In fact, Plaintiffs admit Crary's undisputed fact number 31 that Polly Jones was the named plan administrator for the health plans.

Plaintiffs hope to create an impression of knowledge since no real evidence of actual knowledge exists.  Lassen's or Wright-Bernet's poor financial condition cannot be construed as specific knowledge by Crary of Kristal's ERISA breaches.  No one, not Kristal, Morris, Plaintiffs, Bernet, Lindemuth, Monroe, Jones or any other witness ever informed Crary about the health plan

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

1  payment or 401k problems.  It may well be that everyone knew about the problems.  It may also

2  well be that everyone thought someone else had informed Crary.  However, since no one actually

3  did inform Crary about the problem, Crary did not know about it.

4       Crary lives hundreds of miles from Lassen and several thousand miles from Wright-Bernet.

5  Despite Plaintiffs' unsupported assertions that Crary was paid thousands of dollars in consulting

6  fees, Crary did not work at Lassen or Wright-Bernet.  This is just another example of Plaintiffs'

7  completely unsupported statements for which there is no credible evidence.  For example, on page

8  27 of their opposition brief Plaintiffs say that, "Crary was paid a substantial fee," which is

9  completely untrue and for which there is absolutely no credible evidence.  As "evidence" Plaintiffs

10  refer to an agreement by the terms of which Crary was supposed to receive a consulting fee.

11  However 1) Crary never received the required fee, 2) there is no evidence that Crary ever received

12  any fee, and 3) the existence of an unsigned agreement by itself is no evidence whatsoever that any

13  fee was ever actually paid.  This is just another unsubstantiated statement carelessly made by

14  Plaintiffs in hopes of manufacturing a triable issue of material fact.  The only credible evidence is

15  that Crary tried to get more information about Lassen and Wright-Bernet but Kristal both lied to

16  him and prevented others from communicating with him.  (See Crary's declaration).

17  **D.    PLAINTIFFS CANNOT ALLEGE AT THE ELEVENTH HOUR THAT CRARY IS
18       LIABLE BASED ON HIS DISCRETION OVER THE MANAGEMENT AND
       DISPOSITION OF PLAN ASSETS.**

19       In their opposition to Crary's summary judgment motion, Plaintiffs allege for the first time

20  that Crary is liable for breach of fiduciary duty under ERISA because of <u>his own exercise</u> of

21  discretion over management an/or disposition of plan assets.  This new theory has never been

22  raised before and is not alleged in the First Amended Complaint.  The only piece of evidence put

23  forward to support this novel new claim is that Crary sat at one negotiation session on a collective

24  bargaining agreement.  The fact that Crary sat at one union contract negotiation meeting does not

25  automatically render him as an ERISA fiduciary.  Such action does not constitute management or

26  administration of the benefit plan. *Hamilton v. Carell*, 224 F.3d 992, 998 (6th Cir. 2001).

27       To the contrary, in *Akers v. Palmer* 71 F.3d 226 (6th Cir. 1995), the Sixth Circuit held that

28
---
13

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
SUMMARY JUDGMENT

1  "only discretionary acts of plan management or administration, or those acts designed to carry out

2  the very purpose of the plan, are subject to ERISA's fiduciary duties." *Akers* at 231.  The

3  purported breach of fiduciary duty must be connected to the management or administration of the

4  plans or the assets thereof. *Akers* at 231.  The mere fact that Crary sat at one negotiation session

5  for a collective bargaining agreement does not in any way put him within the definition of an

6  ERISA fiduciary.  ERISA does not require that day-to-day corporate business transactions, which

7  may have a collateral effect on prospective, contingent employee benefits, be performed solely in

8  the interest of plan participants. *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert.*

9  *denied,* 498 U.S. 984 (1990).

10  Courts have frequently held that directors are not performing fiduciary roles under ERISA

11  even when their actions arguably affect a plan.  These opinions flow directly from the limiting "to

12  the extent" language in the statute.  The fact that an action taken by an employer to implement a

13  business decision may ultimately affect the security of employees' welfare benefits does not

14  automatically render the action subject to ERISA's fiduciary duties.  *Sengpiel v. B.F. Goodrich*

15  *Co.*, 156 F.3d 660, 665 (6th Cir. 1998).  Pursuant to *Sengpiel*, the appointment of an officer for the

16  corporation by the Board itself is a business decision and is in no way automatically subject to

17  ERISA's fiduciary duties.

18  Plaintiffs have not alleged a single fact showing that Crary actually exercised any authority

19  or control with respect to the management or administration of the health plan and 401k plan, or

20  management or administration of the assets thereof, or that he rendered investment advice to any of

21  the plans for a fee or other compensation.  Despite Plaintiffs' completely unsupported marking as

22  false Crary's undisputed facts numbers 43, 44, 45 and 46, Plaintiffs offer not one fact in opposition

23  to the otherwise completely uncontroverted testimony concerning these matters.  Plaintiffs cannot

24  present and have not presented any contradictory evidence on any of these matters.

25  **E.  CRARY IS NOT LIABLE AS A CO-FIDUCIARY.**

26  Liability for breach of fiduciary duty is extended to co-fiduciaries only if the co-fiduciary

27  has actual knowledge of the breach.  "Under this [participation] rule, the fiduciary must *know* the

28  

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
SUMMARY JUDGMENT

other person is a fiduciary . . . , must *know* that he participated in the act that constituted a breach, and must *know* that it was a breach . . . . For the first fiduciary to be liable [for concealing a breach], he must *know* that the other is a fiduciary with regard to the plan, must know of the act, and must know that it is a breach . . . ." Conference Report at 299, 3 ERISA Leg. Hist. At 4566. See also *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan*, 650 F.Supp. 359, 369-370 (N.D. Ga. 1986); *Monson v. Century Manufacturing Co.*, 739 F.2d 1293 (8th Cir. 1984); *Davidson v. Cook*, 567 F.Supp. 225 (E.D. Va. 1983), *aff'd*, 734 F.2d 10 (4th Cir.), *cert. den.*, 469 U.S. 899 (1984); *Fink v. National Savings & Trust Co.*, 772 F.2d 951, 958 (D.C. Cir. 1985).

Because Plaintiffs have failed to establish Crary's knowledge regarding Kristal's fiduciary status or his own ERISA breach, Plaintiffs' claims that Crary should face liability as a co-fiduciary must fail.

**F.      THE UNION HAS NO STANDING TO SUE UNDER ERISA.**

Plaintiff Union admits in the opposition that it does not have standing in this action as a union but acts as a "representative" for plan participants. However, a plaintiff must be the "real party in interest" with respect to the claim sued upon. See FRCP 17(a). The "real party in interest" is the person who has the right to sue under the substantive law. In general, it is the person holding title to the claim or property involved, as opposed to others who may be interested in or benefit by the litigation. *United Healthcare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563 (8th Cir. 1996); *Farrell Const. Co. v. Jefferson Parish*, 896 F.2d 136 (5th Cir. 1990).

Thus, a plaintiff "must allege facts sufficient to reveal that he suffered an injury, that the injury was caused by the defendant's illegal conduct, and that his injury could be redressed by a favorable outcome to the lawsuit." *Seckler v. Star Enterprise*, 124 F.3d 1399 (11th Cir. 1997). Here, the Union specifically admits that the real parties in interest are plan participants and that the Union does not attempt to seek any recovery that would flow solely to the Union.

Federal statutes may authorize one person to sue on behalf of another, without joining the party or parties for whose benefit the action is brought. In such a case, the person authorized to sue is the real party in interest. See FRCP 17(a). In such circumstances, plaintiffs need specific

15

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT

1   federal statutes authorizing its right to sue. However, ERISA §502(a), 29 U.S.C. Section 1132(a),

2   provides that an action may be brought only by a "participant, beneficiary, fiduciary or the

3   Secretary of Labor." *See Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir.1989) (plaintiff must be

4   either a participant or a beneficiary to bring an ERISA action). *Cf. Utility Workers Union v.*

5   *Consumers Power Co.*, 453 F.Supp. 447 (E.D.Mich.1978) (employee organization has no standing

6   under ERISA § 502), *aff'd*, 637 F.2d 1082 (6th Cir.), *vacated on other grounds*, 451 U.S. 1014

7   (1981).

8        ERISA's statutory framework lists those persons empowered to bring a civil action with

9   particularity. Despite the fact that an ERISA claim may derive from a collective bargaining

10  agreement negotiated by a union, Congress has obviously chosen not to include a labor union as an

11  appropriate party to vindicate employees' rights under ERISA." *Intern. Union v. Auto Glass*

12  *Employees Fed. Credit*, 858 F.Supp. 711, 722 (M.D.Tenn. 1994). The Union, "simply by virtue of

13  its status as a labor union, does not fall within those who are designated by the statue as capable of

14  bringing an ERISA action." *Id.* at 721. *See also New Jersey State AFL-CIO v. New Jersey*, 747

15  F.2d 891, 893 (3d Cir.1984) ("It is clear from the statute that labor unions are neither participants

16  nor beneficiaries").

17       The Court should also keep in mind that the cases cited by Plaintiffs are not from the Sixth

18  Circuit. The case on point is *Waxman v. Luna*, supra. If the Sixth Circuit wanted to overrule that

19  case, it had an opportunity to do so in *Local 6-0682 International Union of Paper, Allied-*

20  *Industrial, Chemical & Energy Workers v. National Industrial Group Pension Plan*, 342 F.3d 606

21  (6th Cir. 2003), the case cited by Plaintiffs in note 7 of their opposition brief. However, the Sixth

22  Circuit specifically refused to create common law standing for the union in that case. In fact, it

23  reiterated that a union is not one of the enumerated parties listed in Section 502(a) of ERISA. *Id.* at

24  609, n.1.

25       Because ERISA section 502(a) does not authorize the union's standing to sue, Crary's

26  summary judgment motion against the Union must be granted.

27  **G.    CRARY IS NOT LIABLE AS A PARTY-IN-INTEREST.**

28                                             16

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
SUMMARY JUDGMENT

1         Also at the eleventh hour in this litigation, Plaintiffs have alleged that Crary is now liable as

2    a party-in-interest under ERISA section 3(14)(A).  The new allegation is set forth in Plaintiffs'

3    opposition, therein alleging that Crary was a non-fiduciary but a party-in-interest, under ERISA

4    section 3(14)(E)(i), and that he engaged in prohibited transactions.  Because Plaintiffs did not

5    allege this cause of action in the first amended complaint the Court should disregard it.

6         In any event, to hold a non-fiduciary party-in-interest liable, the defendant's knowledge of

7    wrongdoing must be established.  The Supreme Court held that a cause of action lies under ERISA

8    section 502(a)(3) against a nonfiduciary party-in-interest who *knowingly* participates in a

9    prohibited transaction (emphasis added).  *Harris Trust and Sav. Bank v. Salomon Smith Barney,*

10   *Inc.*, 530 U.S. 238 (2000).  A nonfiduciary is liable only for its "knowing participation" in a

11   fiduciary's breach. *Id.* at 248.  *Brock v. Hendershott*, 840 F.2d 339 (6th Cir. 1988), a case cited by

12   Plaintiffs, also required the nonfiduciaries actual or constructive knowledge of wrongdoing in

13   order to hold him liable under ERISA.

14        Plaintiffs not only have failed to establish Crary's actual or constructive knowledge of

15   wrongdoing, but have also failed to present any evidence that Crary engaged in ANY prohibited

16   transactions.

17   **H.    PLAINTIFFS DO NOT SEEK APPROPRIATE REMDIES IN THIS MATTER.**

18        The question of whether a participant can bring suit for breach of fiduciary duty under

19   section 1132(a)(3) is separate and distinct from the questions of the form of relief available under

20   that section.  See, *Hoeberling v. Nolan*, 49 F.Supp.2d 575 (E.D.Mich. 1999).  Plaintiffs confuse

21   these two separate issues.

22        1)    <u>Remedies will only inure to the benefit of the plan as a whole.</u>

23        A plan participant may not sue in his individual capacity under section 1109, which

24   provides that a fiduciary "shall be personally liable to make good to such *plan* any losses to the

25   plan resulting from each such breach." (emphasis added).  See, *Massachusetts Mut. Life Ins. Co. v.*

26   *Russell*, 473 U.S. 134, 140-44 (1985) (holding that recovery for a violation of section 1109 inures

27   to the benefit of the plan as a whole, precluding suits by participants in their individual capacity).

28

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
SUMMARY JUDGMENT

1  Therefore, Crary should be granted a partial summary judgment against all claims for Plaintiffs'

2  personal loss.

3          2)      <u>Plaintiffs may only receive equitable relief for the benefit of the plan but not an</u>

4                  <u>award of monetary damages.</u>

5          The Supreme Court in *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993), held that money

6  damages are the classic form of legal relief and that "other equitable relief" as used in section

7  1132(a)(3) does not encompass monetary damages.  *Mertens* specifically held that §1132(a)(3)'s

8  reference to "equitable relief" was limited to the "remedy traditionally viewed as 'equitable,' such

9  as injunction or restitution." *Id.* at 255.  Because money damages are "the classic form of *legal*

10 relief," §1132(a)(3) does not authorize suits for compensatory, much less punitive damages. *Id.*

11 Consequently, in *Allinder v. Inter-City Products Corporation (USA)*, 152 F.3d 544 (6th Cir. 1998),

12 the Sixth Circuit granted a summary judgment motion to the defendants because Allinder sought

13 compensatory and punitive damages which were not available to her as a matter of law.

14         Plaintiffs' reliance on *Varity Corp. v. Howe*, 516 U.S. 489 (1996), for the proposition that

15 an individual plan participant may recover damages under section 1132(a)(3) is misplaced.  The

16 plaintiffs in *Varity* were actually seeking a classic equitable remedy, reinstatement to a plan.  See

17 *Hoeberling v. Nolan*, 49 F.Supp.2d 575 (E.D.Mich. 1999).  "Over the past decade, both the

18 Supreme Court and the Sixth Circuit have thoroughly examined the question of whether a plan

19 participant suing in an individual capacity may recover monetary damages as 'other equitable

20 relief' under section 1132(a)(3).  More recent cases preclude an award of monetary damages." *Id.*

21 at 578.

22         Because ERISA does not authorize breach of fiduciary duty claims for monetary damages

23 by participants suing in their individual capacity, Crary should be granted a partial summary

24 judgment against all monetary damages requested by Plaintiffs.

25                                           **III.**

26                                     **<u>CONCLUSION</u>**

27         Plaintiffs' opposition brief is late and responding to it and to the summary judgment

28                                            18

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
SUMMARY JUDGMENT

1   motions filed with it is confusing for Crary at best.   However, viewed with an eye toward

2   admissible evidence proffered by Plaintiffs to establish that there are triable issues of material fact,

3   there is much light and sound but little substance.  Plaintiffs use a pastiche of hearsay, unsupported

4   assertions, misquoted testimony and completely discredited opinions to try to refute Crary's well

5   supported undisputed facts; but they fall far short.  The weight of admissible testimony is clear that

6   Crary did not have the "power" claimed and did not actually have the knowledge that would have

7   been necessary for him to try to intervene in Lassen and either breach a shareholders agreement or

8   breach an employment contract.

9       Plaintiffs cannot establish liability against Crary because Crary never singlehandedly had

10  the authority or ability to appoint or remove Kristal.  Moreover, Plaintiffs do not have evidence to

11  support their claims for breach of fiduciary duty.  For all the foregoing reasons, as well as the

12  reasons stated in Crary's moving papers, Crary should be granted summary judgment against

13  Plaintiffs.

14
    Dated:  November 20, 2003           Respectfully Submitted,
15

16                                      /s/ Stephen R. Felson
                                        Stephen R. Felson (0038432)
17                                      617 Vine St.  Suite 1401
                                        Cincinnati, Ohio 45202
18                                      Phone: (513) 721-4900
                                        Fax: (513) 639-7011
19
                                        Paul David Marotta, California State Bar No. 111812
20                                      Jennifer Chen, California State Bar No. 205264
                                        Christopher D. Denny, California State Bar No. 175338
21                                      THE CORPORATE LAW GROUP
                                        500 Airport Boulevard, Suite 120
22                                      Burlingame, CA 94010
                                        Telephone:     (650) 227-8000
23                                      Facsimile:     (650) 227-8001

24

25

26

27

28
                                        19
    MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR
    SUMMARY JUDGMENT

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 20, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following.

Leonard Kristal (pro se)
107 Diablo Drive
Kentfield, CA 94904
(By Ordinary Mail Service)

Leonard Kristal
ldkristal@yahoo.com

David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax: (513) 721-1178


/s/ *Stephen R. Felson*

MEMORANDUM IN REPLY TO OPPOSITION TO DEFENDANT JOHN L. CRARY'S MOTION FOR SUMMARY JUDGMENT