UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS ALLEN, MARY JANE
CRACRAFT, LELAN LITTRELL and
GLASS, MOLDERS, POTTERY, PLASTIC
AND ALLIED INDUSTRIAL WORKERS,
LOCAL NO. 41, AFL-CIO,

      Plaintiffs,

vs.

LEONARD D. KRISTAL, and JOHN L.
CRARY,

      Defendants.

_____

JOHN L. CRARY,

      Cross-Claimant,

vs.

LEONARD D. KRISTAL,

      Cross-Defendant.

_____

JOHN L. CRARY,

      Third-Party Plaintiff,

vs.

POLLY MONROE, SHIRLEY MONROE,
JAMES THELAN,

      Third-Party Defendants

_____

Case No:  C-1-01-159

Judge Herman J. Weber
Magistrate Judge Timothy S. Hogan

MEMORANDUM IN OPPOSITION TO
THIRD-PARTY DEFENDANT SHIRLEY
MONROE'S MOTION FOR SUMMARY
JUDGMENT

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR
SUMMARY JUDGMENT

Defendant John Crary respectfully presents his Memorandum in Opposition to Third-Party Defendant Shirley Monroe's Motion for Summary Judgment.

## I.

## INTRODUCTION

Defendant John L. Crary ("Crary") filed a Third-Party compliant for indemnification against Shirley Monroe ("Monroe"), the human resources director of The Lassen Companies, Inc. ("Lassen"). Thereafter, Monroe filed her motion to dismiss Crary's Third-Party Complaint arguing that indemnification claims are not cognizable under the Employee Retirement Income Security Act ("ERISA"). On November 12, 2003, Judge Hogan denied Monroe's motion to dismiss in his Report and Recommendation (the "Report") concluding that 1) indemnification is a form of equitable relief that is not precluded by ERISA, and 2) Congress did not have the intent to exclude such relief from ERISA. [See Report at 3-4].

October 15, 2003 was the last day to file dispositive motions in this matter in accordance with this Court's amended scheduling order. On November 10, 2003, almost a full month after the deadline for filing dispositive motions set forth in the Court's amended scheduling order, Monroe filed her very late motion for summary judgment.[1]

Monroe's refusal to file pleadings in accordance with this Court's amended scheduling order has also placed the timing of Crary's opposition in question, particularly with the advent of Thanksgiving Holiday. Crary files his opposition to Monroe' motion for summary judgment within 20 days following Monroe' tardy filings, in an attempt to stay within the scheduling this Court ordered.

Monroe' motion should be denied because 1) her motion was filed almost a full month after the deadline for filing dispositive motions, 2) Crary's claim for indemnification is proper and permitted under ERISA, 3) it is undisputed that Monroe (i) was the human resources director at Lassen, (ii) was responsible for calculating health plan deductions from employees paychecks and

---

[1] On September 26, 2003, Jones filed a motion to continue the dispositive motion deadline (doc. 60). On November 12, 2003, Judge Hogan denied Jones' motion (doc. 89, Order Denying Motion).

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR SUMMARY JUDGMENT

communicating these deductions to Lassen's payroll service, and (iii) continued doing so even when she knew that such deductions were not being properly remitted to Lassen's health insurer, and 4) there are genuine issues of material fact that Monroe was an ERISA fiduciary, breached her fiduciary duties, and she is more culpable than Crary due to her active malfeasance.

## II.

## STATEMENT OF FACTS

Co-Defendant Leonard D. Kristal ("Kristal") was the CEO, President and one of three directors of Lassen, the plan sponsor of the health plan and 401(k) plan (collectively, the "Plans") at issue.  Monroe was the Director of Human Resources having internal responsibilities at Lassen for administrating the health benefit and 401(k) plans and for calculating payroll deductions, and preparing and communicating to Lassen's payroll service payroll information during all relevant times.  Crary filed his Third-Party Complaint against Monroe for indemnity, claiming the Third-Party Defendant knew far more than he did far earlier than he did, and functioned as a fiduciary to the health plan.

As the evidence presented by Crary in this memorandum of points and authorities in opposition to Monroe's summary judgment motion and in the counter-statement of undisputed facts makes clear, Monroe, as the human resource director was a functional fiduciary to Lassen health plan and 401(k) plan.  She had, and exercised, control and discretionary authority to manage the Plans and assets of the Plans, in her work calculating and communicating deduction information, and in her work as human resources director for all of Lassen.  She breached her fiduciary duties by continuing to make deductions from Lassen's employees' paychecks while knowing that the group health plan was put on administrative hold due to nonpayment of insurance premiums by Lassen.  She also breached her co-fiduciary duties when she knew of Kristal's co-fiduciary breach but failed to take any reasonable remedial action.

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR SUMMARY JUDGMENT

### III.

### <u>ARGUMENT</u>

**A.    MONROE'S OPPOSITION BRIEF WAS FILED LATE AND SHOULD BE DISREGARDED BY THE COURT.**

The Court entered the Amending Scheduling Order for this matter on May 29, 2003.  The Order states at paragraph 3 that all dispositive pretrial motions are to be filed by October 15, 2003.  The Order then goes on to state at paragraph 3 that opposing counsel shall serve his response to the dispositive motion twenty (20) days thereafter.

Monroe intentionally refused to file pleadings in accordance with this Court's amended scheduling order and filed her summary judgment motion almost a full month after the deadline for such filing.  Crary has filed this opposition to Monroe' summary judgment motion within 20 days of the date Monroe filed in an attempt to stay in compliance with the Court's amended scheduling order.

Because Monroe's motion for summary judgment was very tardy and her motion to continue the cut-off date was denied, Crary requests that this Court deny Monroe's motion for summary judgment.

**B.    THE COURT SHOULD DENY MONROE'S SUMMARY JUDGMENT MOTION BECAUSE THE COURT HAS RULED THAT CRARY MAY SEEK INDEMNITY FROM MONROE.**

Monroe argues that equitable indemnity is not a cognizable ERISA claim. Monroe made the same argument in her motion to dismiss, claiming that Crary may not seek indemnity from her as a matter of law.   However, Judge Hogan's Report denied Monroe's motion to dismiss concluding that 1) common law indemnity is a type of relief typically available in equity and a remedy which does not conflict with ERISA's enforcement scheme, and 2) Congress did not have the intent to exclude such relief from ERISA.  See, the Report at pages 3-4.

Therefore, this Court has already ruled on Monroe's argument, and her summary judgment motion should be denied.

4

C.    **MONROE FUNCTIONED AS AN ERISA FIDUCIARY TO THE HEALTH PLAN AND 401(K) PLAN.**

Section 3(21)(A) of ERISA provides that except in the case of an investment company described in § 3(21)(B), a person is a plan fiduciary *to the extent* he (i) exercises any discretionary authority or discretionary control over *plan management* or any authority or control over *management or disposition of plan assets*, (ii) renders investment advice *regarding plan assets* for a fee or other compensation, or has authority or responsibility to do so, or (iii) has any discretionary authority or responsibility *in plan administration* (Emphasis added).

A person can be held as a fiduciary by the fact that he actually functions as a fiduciary to the health plan. See, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). To determine whether a person is a functional fiduciary, the Court would determine whether he has or exercises any of the functions described in § 3(21)(A). See, *Brock v. Hendershott,* 840 F.2d 339, 342 (6th Cir. 1988).

Monroe functioned as a fiduciary to the Plans because she had control and exercised discretionary authority over Lassen's Plans' management and disposition of the Plans assets. Fist, Monroe admits that she had the responsibilities of payroll, human resources, and administrating the 401(k) and health benefit plan. [See Exhibit A to Declaration of Jennifer Chen]. There was no one else at Lassen who performed these functions. Monroe was the only person handling the internal administration of the Plans. It is undisputed that Monroe met with newly hired employees at Lassen and helped them decide how much to have deducted from their paychecks for health insurance contributions. She was the only one at Lassen who communicated regularly with Lassen's payroll service, ADP, to let them know how much to deduct from employee's paychecks. Without her weekly reports, ADP could not have continued preparing paychecks with health insurance contributions deducted. And it is completely undisputed that she continued giving these weekly instructions to ADP even when she knew that the deducted amounts were not being properly remitted to Lassen's health plan insurer.

The Great-West online health plan order form identifies Polly Jones ("Jones") and Shirley

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR SUMMARY JUDGMENT

Monroe as the plan administrators, and Monroe admits that she talked regularly with Jones, sometimes two and three times a day concerning the health plan. [See Exhibit B to Declaration of Jennifer Chen].

Second, Monroe made all payroll deductions, including deductions for the health benefit plan and 401(k) plan, from employees' paychecks. [See Exhibits A and C to Declaration of Jennifer Chen]. The payroll service company ADP relied on the deduction information provided to them by Monroe each week to prepare actual paychecks. [See Exhibit D to Declaration of Jennifer Chen].

Although Monroe's tries to spin these facts to claim that, if not advised of any change in the amount of an employee's contribution, ADP simply would continue to deduct that amount from the employee's gross pay to determine net pay, the fact is that ADP relied on her report each and every week. Monroe was the only person who could change the deduction information from week to week, and she failed to do so, even while she was aware that deducted health plan contributions were not being remitted to the health insurer.

By Monroe's directing ADP how to make paycheck deductions each week, she had control and exercised discretionary authority over the employees' deductions and, consequently, over Lassen Plans' assets. Contrary to Monroe's claim that she was mere a conduit of information to both ADP and Lassen's management in California, it was Monroe, and Monroe alone, who made the decision what to deduct and how much deductions should be made for each and all employees. Such decision-making by Monroe is not "ministerial" in nature as Monroe claims. Furthermore, no one at Lassen, other than Monroe, was responsible for making payroll deductions for Wright-Bernet employees including all of the Plaintiffs in this action. [See Exhibit F to Declaration of Jennifer Chen]. No one at Lassen, other than Monroe, was responsible for communicating the payroll deductions information to ADP for Wright-Bernet employees including all of the Plaintiffs in this action. [See Exhibit G to Declaration of Jennifer Chen].

Finally, Monroe, on behalf of Lassen, worked with the NLRB connection Lassen's failure to properly remit deducted 401(k) plan contributions. [See Exhibit E to Declaration of Jennifer

6

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR SUMMARY JUDGMENT

Chen]. If Monroe was not a fiduciary to the 401(k) plan, Kristal as the named fiduciary to the 401(k) plan should have worked with the NLRB on the 401(k) plan. Obviously, Kristal delegated his responsibilities to Monroe concerning the 401(k) plan and Monroe undertook such responsibilities.

It is irrelevant that Monroe was the sole employee in human resources at Lassen, or that she had no subordinate employees, or that she had to report to several other "bosses." So long as she exercised discretionary control and authority over the Plans administration, management or assets, she is an ERISA fiduciary to the Plans. See, ERISA section 3(21)(A). Also, whether Monroe had access to the bank account or whether she had the responsibility of funding the bank account is not a determinative factor on Monroe's fiduciary status. Consequently, the fact that Monroe forwarded payroll deduction information to California management cannot alter the conclusion that she exercised discretionary control and authority over payroll deduction and Plans' assets.

Because the above evidence contradicts Monroe's claims and establishes the material fact that she was an ERISA fiduciary to the health plan and 401(k) plan, Monroe' summary judgment motion should be denied.

**D.    MONROE BREACHED HER FIDUCIARY DUTIES AND CO-FIDUCIARY DUTIES.**

As an ERISA fiduciary to the Plans, Monroe breached her duty by failing to discharge her duty with the care, skill and diligence that would be exercised by a reasonably prudent person who is familiar with such matters in violation of ERISA § 404(a)(1)(B). While fully aware that Lassen was not remitting employees' deductions and contributions to the Plans, Monroe was still making deductions on the employees' paychecks. [See Exhibit I to Declaration of Jennifer Chen]. Monroe remained employed at Lassen during the entire time period that the health plan was on and off administrative hold and it was clear that deducted health plan contributions were not being properly remitted to the health insurance provider. [See Exhibit H to Declaration of Jennifer Chen].

Furthermore, Monroe did not ever express any concern to anyone at Lassen, ADP or insurer Great-West about the failure to remit deducted health plan contributions until July 2000. [See

7

Exhibit I to Declaration of Jennifer Chen]. Monroe had ample opportunities to inform and express her concern to the Lassen management because she talked with the Lassen headquarters in Irvine at least once a day. [See Exhibit J to Declaration of Jennifer Chen].

Monroe admits in her moving papers that the Lassen health care premium payment and remittance of 401(k) contributions had been an ongoing problem. If Monroe truly believed that Crary had all the power and authority to control and administer the Plans, she should have informed Crary about the problems and Kristal's ERISA breaches. However, during all the relevant time period, Monroe did not once inform Crary that Lassen was not paying the premium or remitting the 401(k) contributions. In fact, Monroe has never spoken with Crary about anything, including the health benefit plan and 401(k) plan and the contributions thereto. [See Exhibit K to Declaration of Jennifer Chen]. A reasonable person under the circumstances would make Crary, the alleged fiduciary having the responsibility to supervise and monitor Kristal, aware of the problems and Kristal's breaches. As a fiduciary to the Plans, Monroe also failed to file forms 5500 and 990 for the years 1999 through 2001 or even advise Lassen to file such forms. A competent fiduciary would at least reminded Kristal of such filings.

Finally, Monroe breached her co-fiduciary duties too. A plan fiduciary may be liable for the acts or omissions of a co-fiduciary if the fiduciary (1) *knowingly* participates in or attempts to conceal a co-fiduciary breach, (2) enables a co-fiduciary to commit a breach, or (3) *knows* of a co-fiduciary breach and fails to take reasonable remedial action (emphasis added). See, ERISA § 405(a), 29 U.S.C. § 1105(a). Monroe by her deduction of employees' paychecks with full knowledge that Kristal was not remitting the deductions or contributions to the health plan or 401(k) plan, knowingly participated in Kristal's breaches. Her action also enabled Kristal to commit the ERISA breaches. Kristal had no knowledge that Monroe was continuing to make deductions on employees' paychecks after the heath plan was terminated. Once Kristal found out, he immediately asked Monroe to stop the deductions. See page 89 of Kristal's deposition transcript.

Monroe knew that Kristal was breaching his ERISA fiduciary duties because the health

8

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR SUMMARY JUDGMENT

care premium payment and 401(k) plan contribution payment had been an on-going problem; she knew it but she did nothing about it, let alone taking reasonable remedial action. At the minimum, she should have expressed her concern to the Lassen Management and stopped the deductions right away. Monroe was the only person who had the control and authority over the paycheck deductions for Wright-Bernet employees including all of the Plaintiffs in this action. [See Exhibit F to Declaration of Jennifer Chen].

**E.    MONROE IS MORE CULPABLE THAN CRARY.**

Crary is entitled to indemnity from Monroe because Monroe is more at fault than Crary. Plaintiffs alleged that Crary breached his purported fiduciary duties by passive conduct. However, Monroe breached her fiduciary duties with active malfeasance. Her breaches discussed above directly caused Plaintiffs' alleged damages; specifically, the deducted contributions were not remitted to the health insurance and 401(k) plan. Plaintiffs alleged that Crary did not supervise or remove Kristal but have failed to establish Crary's actual or constructive knowledge of Kristal's breach. However, Monroe had full knowledge of Kristal's breach but she did nothing as the administrator of the Plans who had authority and control of the health plan and 401(k) plan and who exercised such authority and control. Every time Monroe input the payroll deduction information in the ADP program, it should have reminded Monroe of Kristal's breach, and she should have done something about that, either express her concern to the Lassen management or stop the deduction. However, she did nothing. Instead, Monroe continued to make the payroll deduction with the full knowledge that the deducted money was not used for the Plans. Her action directly caused Lassen employees' medical bills to go unpaid and 401(k) plan to not be fully funded.

## IV.

## CONCLUSION

Monroe's motion should be denied because 1) her motion was filed almost a full month after the deadline for filing dispositive motions and her motion to continue the cut-off date was denied; 2) Crary's claim for indemnification is permitted under ERISA per the Report, and 3) there

9

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR SUMMARY JUDGMENT

are genuine issues of material facts as to whether Monroe was an ERISA fiduciary, breached her fiduciary duties, and is more culpable than Crary.

Dated:  November 26, 2003                Respectfully Submitted,

                                         /s/ *Stephen R. Felson*
                                         _____
                                         Stephen R. Felson (0038432)
                                         617 Vine St.  Suite 1401
                                         Cincinnati, Ohio 45202
                                         Phone: (513) 721-4900
                                         Fax: (513) 639-7011

                                         Paul David Marotta, California State Bar No. 111812
                                         Jennifer Chen, California State Bar No. 205264
                                         Christopher D. Denny, California State Bar No. 175338
                                         THE CORPORATE LAW GROUP
                                         500 Airport Boulevard, Suite 120
                                         Burlingame, CA 94010
                                         Telephone:     (650) 227-8000
                                         Facsimile:     (650) 227-8001

## CERTIFICATION OF SERVICE

I hereby certify that on November 26, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following.

David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax: (513) 721-1178

I further certify that on November 26, 2003, I served by  following by ordinary U.S. Mail:

Leonard Kristal (pro se)
107 Diablo Drive
Kentfield, CA 94904

/s/ *Stephen R. Felson*

MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANT SHIRLEY MONROE'S MOTION FOR SUMMARY JUDGMENT