UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS ALLEN, MARY JANE          )    Case No:  C-1-01-159
CRACRAFT, LELAN LITTRELL and     )
GLASS, MOLDERS, POTTERY, PLASTIC )    Judge Herman J. Weber
AND ALLIED INDUSTRIAL WORKERS,   )    Magistrate Judge Timothy S. Hogan
LOCAL NO. 41, AFL-CIO,           )
                                 )
          Plaintiffs,            )    DEFENDANT JOHN L. CRARY'S
                                 )    MEMORANDUM IN OPPOSITION TO
vs.                              )    PLAINTFFS' MOTION FOR SUMMARY
                                 )    JUDGMENT
LEONARD D. KRISTAL, and JOHN L.  )
CRARY,                           )
                                 )
          Defendants.            )
                                 )
_____  )
                                 )
JOHN L. CRARY,                   )
                                 )
          Cross-Claimant,        )
                                 )
vs.                              )
                                 )
LEONARD D. KRISTAL,              )
                                 )
          Cross-Defendant.       )
                                 )
_____  )
                                 )
JOHN L. CRARY,                   )
                                 )
          Third-Party Plaintiff, )
                                 )
vs.                              )
                                 )
POLLY JONES, SHIRLEY MONROE,     )
JAMES THELAN,                    )
                                 )
          Third-Party Defendants )
                                 )
_____  )

        Defendant John Crary and respectfully submits his Memorandum in opposition to

Plaintiffs' Motion for Summary Judgment.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# I.

## SPECIAL INTRODUCTION

Crary's counsel learned only on December 9, 2003 that this Memorandum of Points and Authorities in Opposition to plaintiffs' motion for summary judgment had mistakenly not been filed along with the other eleven documents filed by Crary the day before Thanksgiving.

Plaintiffs and both Third-Party Defendants had filed motions for summary judgment on November 10, 2003, 26 days after the Court's October 15, 2003 scheduling order deadline. Crary (in an abundance of caution) had calculated that his twenty-day time period (per the same scheduling order) to oppose these three motions for summary judgment ran November 30, 2003. Because November 30, 2003 was the Sunday following the Thursday Thanksgiving holiday, Crary had filed his oppositions to all three of these motions the day before Thanksgiving. In the other eleven documents filed that day, Crary highlighted the fact that all of Plaintiffs' and Third-Party Defendants' documents were untimely filed. Nothing about the tardiness of this documents makes any of Plaintiffs' and Third-Party Defendants' 26-day-late motions any more timely or lessens Crary's assertion that they were late when filed.

Unfortunately, because Crary was trying to file twelve documents the day before Thanksgiving, one of them (this one) somehow slipped through the cracks. The memorandum was completed and ready for filing on November 26, 2003, but was missed by local counsel. Crary is now in the unenviable position of being the pot calling the kettle black. Nonetheless, he still argues that all of Plaintiffs' and Third-Party Defendants' summary judgment motions are untimely, even while admitting that this memorandum of points and authorities can also be found untimely. Even though Crary doesn't argue that this late filing is somehow Plaintiffs' fault, he cannot help but wonder whether; had Plaintiffs and Third-Party Defendants complied with this Court's scheduling order, he would not have been trying to file twelve documents the day before Thanksgiving.

## II.

## INTRODUCTION

Looking through Plaintiffs' documents in support of their motion for summary judgment it is clear that they amended their complaint to bring John L. Crary ("Crary") into this lawsuit not because of any liability he might have to Plaintiffs, but because they believe he is a deep pocket who can pay their alleged damages.

Plaintiffs recently filed a host of confusing pleadings, including their 34-page "cross-brief" which purported to oppose Crary's motion for summary judgment and support their motion for summary judgment. However, their motion for summary documents 1) was filed almost a full month after the deadline imposed by this Court's scheduling order, 2) exceeded the number of pages allowed for by the local rules, 3) purportedly combined with an opposition to Crary's motion for summary judgment (which is also untimely) and 4) contained reference to hearsay, innuendo, unsupported argument and other faulty evidence, all in a desperate attempt to find Crary liable for fiduciary duties he did not have.

What Plaintiffs did not do was 1) attempt to identify actual, admissible, factual support for any of their conclusory arguments and statements, 2) file their motion timely, or 3) proffer any admissible factual support to any of their statements of fact.

## A.    PLAINTIFFS ARE A MONTH LATE.

October 15, 2003 was the last day to file dispositive motions in this matter in accordance with this Court's amended scheduling order. Plaintiffs and Third-Party Defendants filed a raft of pleadings on November 10, 2003, all untimely under this Court's amended scheduling order.[1]

Plaintiffs' intentional or ignorant refusal to file pleadings in accordance with this Court's amended scheduling order has also placed the timing of Crary's opposition in question, particularly with the advent of the Thanksgiving Holiday. Crary completed and tried to file his opposition to

---

[1]  Unbelievably, Crary's counsel received electronic notice from the Court that Plaintiffs were attempting to file additional documents, including supplemental memoranda in connection with the summary judgment motions, as late as November 18, 2003 and November 20, 2003. Crary assumes that the amended brief filed on November 20, 2003 in support of Plaintiffs' refiled cross-motion for summary judgment contains no substantive changes from the brief filed on November 10, 2003.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   Plaintiffs' motion for summary judgment on November 26, 2003, within 20 days following

2   Plaintiffs' tardy filings, in an attempt to stay within the scheduling this Court ordered.

3   Unfortunately, as explained above, one of an even dozen documents (this one) was mistakenly not

4   filed on that date.

5   **B.    PLAINTIFFS ARE MORE THAN A DOLLAR SHORT.**

6       Plaintiffs have the gall to state in their cross-brief that Judge Hogan's Report and

7   Recommendation on Crary's previous motion to dismiss, which outlines Plaintiffs' burden, was

8   wrongly decided because Judge Hogan "misread or misapplied" the law. Plaintiffs then pontificate

9   about their interpretation of the appropriate legal standard (of course stating conclusively that they

10  met the standard they created). Plaintiffs then go on to refer to inapplicable case law as the alleged

11  standard for this case, but which this Court never adopted.

12      This last point is critical. For what is obvious from Plaintiffs' cross-brief, even before

13  getting to Crary's purported breach of fiduciary duty, is that their theory of liability for Crary is

14  fundamentally flawed. Either Plaintiffs or their counsel do not understand basic corporate law, or

15  they choose to ignore it. As mentioned throughout their cross-brief, Plaintiffs state that the "crux"

16  of their case against Crary is that he became a fiduciary under ERISA by virtue of his "power" to

17  appoint and remove Leonard Kristal ("Kristal"). This "power" is never defined or described by

18  Plaintiffs, despite repeatedly being alluded to. The Plaintiffs do not bother taking the Court or

19  Crary through the method by which this power might have been wielded by Crary; nor do they

20  identify 1) whether this power, by necessity, included assistance by any third parties not present

21  before this court, or 2) exactly where in Delaware corporate law this "power" was given to Crary.

22      However, as made abundantly clear by the evidence Crary painstakingly presented, Crary

23  was only one of three directors of Lassen during the relevant time period. He could never

24  unilaterally appoint or remove Kristal as the CEO of Lassen. Only the Board could do that.

25  Hence, Crary individually lacks the requisite ability to act and is not a fiduciary under ERISA.

26  Plaintiffs' case fails for this reason alone.

27

28

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

And even assuming that Plaintiffs can get past this initial hurdle on their summary judgment (they cannot), there is no evidence that Crary breached any purported fiduciary duty under ERISA, or violated any other section of ERISA. Accordingly, Plaintiffs' motion for summary judgment should be denied.

## II.

## ARGUMENT

**A.    PLAINTIFFS' BRIEF WAS FILED LATE AND SHOULD BE DISREGARDED BY THE COURT.**

The Court entered the Amending Scheduling Order for this matter on May 29, 2003. The Order states at paragraph 3 that all dispositive pretrial motions are to be filed by October 15, 2003.

Plaintiffs had until such time to file their motion for summary judgment. However, Plaintiffs filed their motion on November 10, 2003 – 26 days past the deadline. Their cross-brief exceeds the page limit per local rule and contains an opposition by Plaintiffs to Crary's motion for summary judgment filed 6 days after the deadline for such opposition.

Crary dislikes making procedural arguments of this sort, but he has actually been disadvantaged by Plaintiffs' careless attitude. Among other things, Crary has had to decide to which of Plaintiffs' filings he would reply to now; Plaintiffs got an additional 26 days to prepare their summary judgment motion; and Crary has had to guess when his opposition would be due since Plaintiffs' filings bore no resemblance to the amended scheduling order.

In short, Plaintiffs' motion is tardy all to Crary's great prejudice. Plaintiffs should not be allowed to ignore, with impunity, the orders of this Court. Accordingly, Crary requests that this Court disregard Plaintiffs' untimely motion.

**B.    THE COURT SHOULD DENY PLAINTIFFS' SUMMARY JUDGMENT BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT CRARY WAS A FIDUCIARY.**

Despite their protestations otherwise, Plaintiffs attempt to attach an ERISA fiduciary label to Crary solely because he was one of the three directors and held the title of Chairman of the Board of Lassen. Plaintiffs admit that the "crux" of their case against Crary is that the ERISA fiduciary label attaches to Crary because he alone allegedly had the "power" to appoint, retain and

5

remove Kristal as the plan fiduciary. (Plaintiffs' Memo. at 13). Hence, the first step in their case is to establish that Crary is a fiduciary before looking to any alleged breach of that duty. As a matter of law, Plaintiffs cannot do so.

Plaintiffs take the inconsistent position of noting that Crary was one of three directors, and then assert that he could have somehow unilaterally taken some action to appoint or remove Kristal as CEO or plan fiduciary. Of course they never actually point to any law that would allow this, nor do they illustrate how this alchemy could actually occur. The following short discussion of Delaware corporation law illustrates that this hurdle is insurmountable for Plaintiffs.

Lassen is a Delaware corporation. Delaware Corporation Code §141(a) provides that, "The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a Board of directors." There is no provision in Delaware corporate law for any director to take any action unilaterally. The Board's powers and authority may be exercised only collectively. Subsection (b) provides that, "a majority of the total number of directors shall constitute a quorum for the transaction of business," and that, "the vote of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of directors." Delaware Corporations Code §141(b). Thus, unlike officers, an individual director has no authority to take action on behalf of a corporation.[2]

Further, there are no special powers or rights held by a "Chairman of the Board." Nowhere in Delaware corporate law is there any provision for a "super" vote by the Chairman, the ability of the Chairman to make special decisions or dictate to the Board as a whole or any other conceivable

---

[2] For that matter, once a person is a director it is quite hard, if not completely impossible, to remove that person from office without a shareholder vote. For example, *Dillon v. Berg*, 326 F.Supp. 1214 (D.Del.), aff'd, 453 F.2d 876 (3d Cir. 1971) stated in unequivocal terms that a by-law provision permitting directors to remove a fellow director without a clear showing of cause violates public policy. In *Dillon*, the court followed the Delaware Court of Chancery in *Bruch v. National Guarantee Credit Corp.*, 116 A. 738 (1922), in which the Court appeared to reject the existence of the power to remove a fellow director even for cause based upon the same policy. That power is vested only in the shareholders, and here a shareholders voting agreement made such removal impossible. The record is clear that Kristal carefully protected himself in connection with his formation of Lassen. It is undisputed that Kristal required a voting agreement protecting his Board seat and that he had a very high severance provision if he was ever fired by the Board as CEO. Kristal did his due diligence and set up his company, Lassen, to protect himself from interference, even by the entire Board of directors, let alone attempted unilateral action by the Chairman of the Board.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

"extra power.  The Chairman is simply a director who may preside over meetings, but does not even have the power to cut short discussion or invoke *Robert's Rules of Order* in an attempt to limit discussion or steer that discussion in any particular direction.

The underlying and overriding policy of Delaware law with respect to exercising the functions of the Board of directors is collegiality.  *Delaware Corporation Law and Practice*, § 13.01[6], page 13-8 (Matthew Bender (2003), Drexler, Black, Sparks, editors).  To be valid, actions of a Board must be taken at a meeting where all members are afforded the opportunity to be present.  *Liberis v. Europa Cruises Corporation*, 1996 WL 73567 (Del. Ch. 1996).

The employment agreement referenced by Plaintiffs on page 19 of their memorandum is *unsigned*.  However, it does say at paragraph 2, and Plaintiffs admit on page 19 of their cross-memorandum, that Kristal had a duty to report to and take directions from the Company's (*e.g.*, Lassen's) Board of Directors.  There is absolutely no allegation here, nor is there any evidentiary support for the proposition, that Kristal had any duty, obligation or requirement whatsoever to take any direction from Crary alone.

The following is undisputed.  Kristal was appointed CEO of Lassen by the Lassen Board.  He was to report to and take direction from the Board.  Only the Board could remove him as CEO of Lassen.  Crary could not unilaterally appoint or remove Kristal as CEO of Lassen.  Crary could not (and did not) unilaterally appoint or remove Kristal as the plan fiduciary.  It must follow then that Crary had no obligation to monitor and oversee Kristal.  Even if Crary actually knew of Kristal's malfeasance (which he did not), he did not have the power to take unilateral action.

Plaintiffs want to focus on some purported authority of Crary as Chairman of the Board.  Yet, pursuant to Article IV, Section 6 of the bylaws, Crary's only authority as Chairman of the Board is to preside at Board meetings at which he is present.  Neither the Board, nor the bylaws, nor Delaware law assigned any other powers or duties to him.  There is no evidence supporting Plaintiffs' assertion that Crary held the authority or power either to remove Kristal as a director, to remove him as CEO, to remove the responsibility for the benefits plans from him, or unilaterally to cause the Board to do so.  On the contrary, the first section on page 7 of the Shareholders

Agreement, and Section 2 of Kristal's Employment Agreement specifically restrict Crary's ability to do so.  Pursuant to Kristal's Employment Agreement, Kristal would report to and take directions from the Board, not Crary.  Pursuant to the Shareholders Agreement, Kristal would be one of the three Board members and could not be removed so long he was a shareholder of the company.

In addition to being flat out wrong on Crary's unilateral ability to do anything to Kristal, Plaintiffs do not even try to honestly present admissible evidence supporting their assertions.  For example on page 18 of their cross-brief Plaintiffs assert that "Crary . . . gave Kristal complete authority over all of Lassen's employees benefit plans."  Plaintiffs baldly cite to Crary's deposition at page 81, without the benefit of having prepared a counter-statement of undisputed facts.  The best interpretation of this is that it misconstrues Crary's testimony; the worst that it is intentionally misleading.  What Crary said was as CEO, "He [Kristal] would be in charge of the operations of the company."

The simple conclusion here is that Crary has no liability as an ERISA fiduciary as a matter of law because he did not have either the unilateral power or authority to appoint or remove Kristal as a director, CEO or a plan fiduciary.

## C.    CRARY HAD NO ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF KRISTAL'S BREACH OF FIDUCIARY DUTY.

Judge Hogan outlined in his Report and Recommendation precisely what Plaintiffs need to prove to establish liability against Crary in this lawsuit.

"*Plaintiffs must demonstrate what [Crary] knew and when he knew it and apply either the actual or constructive knowledge of Mr. Crary to each transaction engaged in by the Plan Administrator.*" [Judge Hogan's Report and Recommendation, at 5].

Plaintiffs cannot establish co-fiduciary liability against Crary.  Plaintiffs have failed to establish that Crary had any actual or constructive knowledge of Kristal's breach of fiduciary duties.  Plaintiffs' evidence is irrelevant, completely deficient or inadmissible as hearsay, or worse.

1    1) <u>The little evidence proffered by Plaintiffs is irrelevant, deficient or inadmissible</u>.

2    Plaintiffs cite Randy Pickering's deposition for the proposition that Pickering informed

3    Crary, in the last of three purported telephone calls, that Kristal was committing fraud with the

4    health insurance.  However, Pickering's telephone records specifically contradict any testimony

5    that he ever called Crary in the time period stated.  While it is not the job of this Court in this

6    proceeding to weigh evidence, all it needs to deny Plaintiffs' motion for summary judgment is a

7    dispute concerning a material fact.  The telephone records produced from Pickering do not support

8    his story that he called Crary at any of Crary's numbers in the year 2000.  Nowhere in Pickering's

9    telephone records is there <u>any</u> record of <u>any</u> call to <u>any</u> number of John Crary.  While Plaintiffs

10   have marked as false Crary's undisputed fact number 54, they have produced absolutely no

11   evidence that such a call was ever made.  If the fact is untrue, identify the call to Crary.  They do

12   not because they cannot.  Pickering never called Crary on any phone, nor is there any phone record

13   showing that Pickering ever called Crary at any of Crary's numbers other than the three calls to his

14   office in 1999.  This fact is completely undisputed and goes in Crary's favor, not Plaintiffs'.

15   Plaintiffs then disdainfully attempt to use Crary's wife's horrific automobile accident in

16   their favor with respect to Crary's knowledge of health premiums not being paid.  Again, Randy

17   Pickering and Polly Jones' general deposition testimony does not reflect what Plaintiffs allege in

18   their cross-brief.  Pickering testified that Crary called to see if there was coverage after the accident

19   and that the only problem that arose was a subrogation issue between the accident victims'

20   insurance carriers.  Jones, the health plan administrator, further testified that the accident happened

21   in 1999 before there were any problems with the health insurance.  Therefore, there was nothing to

22   report to Crary.

23   Plaintiffs quote at length the deposition testimony of Michael Lindemuth on pages 24 and

24   25 of their memorandum.  However, as is obvious from the deposition testimony on which

25   Plaintiffs rely, Mr. Lindemuth has no first-hand knowledge whatsoever of what Crary knew or did

26   not know.  He "believes" that Crary, in "his opinion," was aware there was a problem with the

27   health insurance because of Crary's wife's car accident.  Lindemuth is clearly speculating and this

28

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

testimony would be inadmissible as hearsay and as speculation lacking any foundation whatsoever at any trial on this matter. At the top of page 25 of Plaintiffs' cross-brief it says that "Lindemuth verified that in June 1999 Bob Bernet, Jr. contacted John Crary regarding Lenn Kristal's handling of the finances," but this entire statement is inadmissible hearsay. Crary objects to all of this supposed evidence on these bases.

Moreover, the testimony of Lindeman at page 24 does not convey that Crary was the top decision maker for Lassen, but, rather, that Kristal (the CEO) was the top decision maker. The same is true with respect to Crary's involvement with the Union negotiations. Lindemuth never states at pages 45 and 46 that Crary directly and personally handled the negotiations. Quite the opposite in fact. Lindemuth testifies that Crary merely sat in the meetings but that Kristal did most of the talking and that Crary did not speak much but "basically observed and listened."

Lloyd Nolan's deposition adds nothing to Plaintiffs' case. Other than testifying that Crary was present at two meetings dealing with the Union and Wright-Bernet, Nolan remembers little if anything about the meetings or Crary's involvement or lack thereof. His other testimony is relating what others may have told him and is hearsay. (Nolan transcript at pages 25, 29-30). As such, Plaintiffs cannot support their proposed finding of fact Nos. 27 or 32.

Similarly, testimony proffered relating to the general financial problems of Lassen is irrelevant and cannot be bootstrapped to show that Crary had knowledge of specific conduct of Kristal relating to the health or 401k plans. If knowledge that things are not great with a company financially is sufficient to impose ERISA liability on all senior management, then thousands of directors and officers face massive liability in this long-lasting economic slump. Plaintiffs' references to a child support payment issue and general financial problems of Lassen on pages 11 and 25 of their memorandum are totally irrelevant to this proceeding. This kind of "back door" evidence shows no specific knowledge by Crary about health insurance premium deductions. Crary submits that Plaintiffs present such evidentiary hyperbole in a vain hope that this Court will not look too closely at exactly what evidence they have accumulated, or, more accurately, failed to accumulate.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

No one from Lassen ever reported to Crary about non-payment of employees' contributions to the health benefit plan or 401(k) plan. Neither Polly Jones nor Shirley Monroe informed Crary about the problems with the plans, even when both of them were on the front line in managing the plans. Plaintiffs mark as false Crary's undisputed fact number 32, that Polly Jones did not inform Crary that Kristal had failed to pay health insurance premiums, yet Plaintiffs offer no evidence as to why this fact is false, and the fact is supported by Jones' own deposition testimony. Plaintiffs offer no evidence whatsoever, let alone credible evidence, that Jones so informed Crary.

Bob Bernet's testimony is taken out of context and contains hearsay as well. He testifies at pages 20-22 that he mentioned to Crary in 1999 that Wright-Bernet was having some financial tribulations and customers were complaining about Kristal. He does not mention the health plan specifically because there were no troubles with the plan in 1999. He is simply discussing general financial issues that cannot be equated with constructive knowledge to Crary about the plans. His testimony on pages 21-22, 30, and 60 is irrelevant to any issue in this lawsuit, speculative opinion in many instances, and contains hearsay. When asked if the chain of command for Lassen on paper was "John, Len, Bob," Bernet specifically stated that he never saw anything official to that effect on paper. (*Id.* at 26, 27). This makes any evidence Bernet has to offer on this subject speculative and inadmissible; it was certainly not a subject on which he could competently testify. More examples of hearsay are contained at pages 33 and 34 where Burnet explains that his understanding of Kristal leaving Lassen was based on a "conversations with Bob Morris." Once again, inadmissible hearsay. On page 25 of their opposition, Plaintiffs reference page 65 of Bernet's deposition where Bernet recites certain inadmissible hearsay attributed to Bob Morris. Again, there is nothing admissible here; there is no credible evidence to support their purported facts.

A perfect example of Plaintiffs' complete lack of evidence is their citation of page 30 of Bernet's transcript to try to show that Crary had constructive knowledge of Kristal's failure to remit deducted health insurance premiums. Bernet is asked if health insurance premiums came up in a conversation. Bernet respond by saying "No, they didn't." Thus, his testimony actually

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

contradicts what Plaintiffs assert.   Accordingly, Plaintiffs have no evidence to support their proposed findings of fact No. 32.

Michael Lindemuth's deposition transcript at page 51 is cited by Plaintiffs in support of their proposed findings of fact No. 10.  However, nowhere does the testimony on page 51 address this proposed finding of fact.  Instead, when asked specifically if John Crary had an opinion on that matter, he states,  "He didn't express one to me." And, when asked the follow-up question if Kristal told him afterward anything about Crary's opinion regarding health insurance, Lindemuth replied "No."

Michael Pekar's deposition testimony at pages 11 and 12 mentions a telephone call he purportedly had with Crary in the summer of 2001, one year after Crary resigned from Lassen's Board.  On page 18 he states that the call was about "backpay."   His deposition testimony at page 25 is inadmissible hearsay.  Actually, all the testimony from Pekar listed by Plaintiffs is describing what other people said to him and is, similarly, inadmissible hearsay or speculation (Pekar would "try to get to Crary through Morris."  Pekar deposition at page 49).  But more importantly, Plaintiffs cannot rely on a conversation that a former employee had with Crary, who was by then a former director of the Company, to show that Crary had knowledge of the health plan problems. Such conversation took place outside the relevant time period.

Accordingly, Plaintiffs have no evidence to support their proposed finding of fact No. 31 based on the deposition testimony of Jones, Pickering, Lindemuth, Nolan, Bernet and Pekar.  Nor, do Plaintiffs have any evidence to support their proposed findings of fact No. 33 where they cite "Kristal II, pp. xx, yy" below this proposed fact.    Crary has no idea what this cite is referring too. There is no evidence, therefore, that Crary had any knowledge that Kristal was diverting health care funds to general corporate purposes.

Plaintiffs further try to rely on the relatively vague deposition testimony of Defendant Leonard Kristal to try to impugn Crary.  First, Kristal is dishonest and his testimony suspect to begin with as illustrated by the deposition testimony and declarations submitted by Crary.  The remarkably consistent testimony impugning Kristal's truth and veracity must be considered in

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

assigning credibility to any testimony originating with Kristal. Crary submitted testimony from a full seven witnesses, all of whom said that Kristal is untruthful. Plaintiffs have marked this fact as "false" yet have offered no testimony from even one witness who believes Kristal to be truthful. Moreover, Kristal's testimony cited by Plaintiffs in this matter is taken out of context, is inaccurate and contains hearsay.

For example, nowhere on page 81 of his transcript does Kristal say he told Crary that Kristal was a plan fiduciary. Accordingly, Plaintiffs have no evidence to support their proposed finding of fact No. 25. Nowhere on page 82 of the transcript does Kristal say that Crary had the authority to remove him as CEO or as a director of Lassen. On page 87 of his transcript, Kristal states that he did not recall if he had any documents reflecting whether Crary was aware of Lassen's inability to pay health insurance premiums. Kristal refers to a meeting in the late third quarter of 2000 where the financial problems were purportedly made aware to Crary. (Kristal deposition at page 87). However, Crary had resigned from the Lassen Board in August 2000.

Kristal admits on page 105 of his transcript that his response to the question is hearsay. He also answers that the decision that he be CEO and President was by mutual consensus between himself, Crary, and Morris (*e.g.*, the Lassen Board of directors). When asked if Crary had the authority and ability to remove him as CEO, Kristal responded by stating that he was not a corporate lawyer and that in his "personal opinion" it is right there in the shareholders agreement.

However, the shareholders agreement Kristal refers to does not give Crary the authority to appoint or remove Kristal as CEO of Lassen. To the contrary, it concerns three shareholders, Crary, Morris and Kristal, and their vote of shares in electing the *directors* of Lassen. Paragraph 10 of the agreement says that each shareholder will vote his shares for one nominee of each such shareholder to the *Board*. This agreement does not deal with the appointment or retention of officers of Lassen. Crary did not have the authority to remove Kristal and Kristal's testimony referenced by Plaintiffs to prove otherwise does no such thing. Hence, Plaintiffs have no evidence to support their proposed finding of fact No. 23.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On page 142 of Kristal's deposition transcript he is asked about his understanding of the job responsibilities of the Chairman of the *Board*. Kristal did not directly answer the question and instead responded by stating things that are simply inaccurate. Kristal reported to the *Board*, not Crary. Kristal's statement on page 148 that Crary purportedly told people like Bob Morris that Crary would not allow Kristal to be removed is inadmissible hearsay. The same is true with Kristal's responses on page 174. Kristal references his answers at the bottom of page 173 where he states that "I was told by John Crary …" Consequently, all of page 174 is inadmissible hearsay.

Lastly, Kristal states that he <u>never</u> relayed to Crary anything concerning the 401k documents at page 103 of his deposition. Any assertions by Plaintiffs to the contrary are completely without support. For example, Plaintiffs have marked Crary's proposed undisputed fact number 35 as false, but again offered no testimony whatsoever that Kristal ever informed Crary of the 401(K) violations.

The most telling part of Kristal's deposition is on page 192. When asked how much knowledge he had with respect to the 401k plan, Kristal replied none. When asked the same question with respect to the health plan, Kristal states <u>after the fact</u>, I was told that the Lassen Companies had withdrawn some monies . . . prior to the health insurance being stopped. If he did not know or found out after the fact, why would Crary have this information?

2)   <u>Plaintiffs reargue their Motion for Review of the Report and Recommendation on Crary's Motion to dismiss.</u>

Realizing that Crary had no power to unilaterally remove Kristal, and that he was never informed of Kristal's malfeasance, Plaintiffs attempt to argue for another legal standard to be applied in this case. Plaintiffs repeat their erroneous arguments in their motion to review Magistrate Hogan's Report and Recommendation on Crary's motion to dismiss. However, all the cases Plaintiffs cited are based on the premise that the fiduciaries at issue must have the power or have exercised the power to appoint or remove the other fiduciary to the plan. Here, Crary by himself did not have the power to appoint or remove Kristal, nor did he exercise such power. Even if the Board collectively could appoint and remove Kristal as a plan fiduciary, there is no evidence that the Board actually appointed Kristal as a fiduciary to the plans. Plaintiffs alleged Kristal as a

14

functional fiduciary to the plans.  In fact, Plaintiffs admit Crary's undisputed fact number 31 that Polly Jones was the named plan administrator for the health plans.  The foregoing analysis makes Plaintiffs' proposed finding of fact No. 30 completely irrelevant.

Plaintiffs hope to create an impression of knowledge since no real evidence of actual knowledge exists.  Lassen's or Wright-Bernet's poor financial condition cannot be construed as specific knowledge by Crary of Kristal's ERISA breaches.  No one, not Kristal, Morris, Plaintiffs, Bernet, Lindemuth, Monroe, Jones or any other witness ever informed Crary about the health plan payment or 401k problems.  It may well be that everyone knew about the problems.  It may also be that everyone thought the other person had informed Crary.  However, since no one actually did inform Crary about the problem, Crary did not know about it.

Crary lives hundreds of miles from Lassen and several thousand miles from Wright-Bernet. Despite Plaintiffs' unsupported assertions that Crary was paid thousands of dollars in consulting fees, Crary did not work at Lassen or Wright-Bernet.  This is just another example of completely unsupported statements of Plaintiffs for which there is no credible evidence.  For example, on page 27 of their opposition brief Plaintiffs say, "Crary was paid a substantial fee," which is completely untrue and for which there is absolutely no credible evidence.  As "evidence" Plaintiffs refer to an agreement by the terms of which Crary was supposed to receive a consulting fee.  However 1) Crary never received the required fee, 2) there is no evidence that Crary ever received any fee, and 3) the existence of an unsigned agreement by itself is no evidence whatsoever that any fee was ever actually paid.  Crary was never paid $130,000 by Lassen.  [See, Supplemental Declaration of John L. Crary filed in support of this opposition].   Consequently, Plaintiffs' proposed finding of fact No. 26 is not only irrelevant but incorrect.

The only credible evidence is that Crary tried to get more information about Lassen and Wright-Bernet but Kristal both lied to him and prevented others from communicating with him. Or, Kristal supplied Crary with financial "projections" about Lassen instead of real numbers as is shown in Exhibit 99 to the Crary deposition.  (Consequently, Plaintiffs do not have any evidence to support their proposed finding of fact No. 40).

**D.    CRARY NEVER EXERCISED DISCRETION OVER THE MANAGEMENT OR DISPOSITION OF PLAN ASSETS.**

For the first time in this lawsuit, Plaintiffs allege that Crary is liable for breach of fiduciary duty under ERISA because of <u>his own exercise</u> of discretion over management and/or disposition of plan assets.   This new theory has never been raised before and is not alleged in the First Amended Complaint.  The only piece of evidence put forward to support this novel new claim is that Crary sat at one negotiation session on a collective bargaining agreement.  The fact that Crary sat in at one union contract negotiation meeting does not automatically render him an ERISA fiduciary.  Such action does not constitute management or administration of the benefit plan. *Hamilton v. Carell*, 224 F.3d 992, 998 (6th Cir. 2001).

However, the Court in *Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995), held that "only discretionary acts of plan management or administration, or those acts designed to carry out the very purpose of the plan, are subject to ERISA's fiduciary duties." *Id.* at 231.  The purported breach of fiduciary duty must be connected to the management or administration of the plans or the assets thereof.  *Id.*.  The mere fact that Crary sat in at one negotiation session for a collective bargaining agreement does not in any way put him within the definition of an ERISA fiduciary. ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants.  *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert. denied,* 498 U.S. 984 (1990).

Courts have frequently held that directors are not performing fiduciary roles under ERISA even when their actions arguably affect a plan.  These opinions flow directly from the limiting "to the extent" language in the statute.  The fact that an action taken by an employer to implement a business decision may ultimately affect the security of employees' welfare benefits does not automatically render the action subject to ERISA's fiduciary duties.  *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998).  Pursuant to *Sengpiel*, the appointment of an officer for the corporation by the Board itself is a business decision and is in no way automatically subject to ERISA's fiduciary duties.

Plaintiffs have not alleged a single fact showing that Crary actually exercised any authority or control with respect to the management or administration of the health plan and 401k plan, or management or administration of the assets thereof, or that he rendered investment advice to any of the plans for a fee or other compensation. Plaintiffs cannot present and have not presented any contradictory evidence on any of these matters.  Accordingly, they cannot support their proposed finding of fact No. 41.

## E.  CRARY IS NOT LIABLE AS A CO-FIDUCAIRY.

Liability for breach of fiduciary duty is extended to co-fiduciaries only if the co-fiduciary has actual knowledge of the breach.  "Under this [participation] rule, the fiduciary must *know* the other person is a fiduciary . . ., must *know* that he participated in the act that constituted a breach, and must *know* that it was a breach . . . .  For the first fiduciary to be liable [for concealing a breach], he must *know* that the other is a fiduciary with regard to the plan, must know of the act, and must know that it is a breach . . . ."  Conference Report at 299, 3 ERISA Leg. Hist. At 4566. See also *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan*, 650 F.Supp. 359, 369-370 (N.D. Ga. 1986); *Monson v. Century Manufacturing Co.*, 739 F.2d 1293 (8th Cir. 1984); *Davidson v. Cook*, 567 F.Supp. 225 (E.D. Va. 1983), *aff'd*, 734 F.2d 10 (4th Cir.), *cert. den.*, 469 U.S. 899 (1984); *Fink v. National Savings & Trust Co.*, 772 F.2d 951, 958 (D.C. Cir. 1985).

Because Plaintiffs have failed to establish Crary's knowledge regarding Kristal's fiduciary status or his own ERISA breach, Plaintiffs' claims that Crary should face liability as a co-fiduciary must fail and their motion for summary judgment therefore must be denied.

## F.     THE UNION HAS NO STANDING TO SUE UNDER ERISA.

Plaintiff Union admits in the cross-brief that it does not have standing in this action as a union but acts as a "representative" for plan participants.  However, a plaintiff must be the "real party in interest" with respect to the claim sued upon.  See FRCP 17(a).  The "real party in interest" is the person who has the right to sue under the applicable substantive law.  In general, it is the person holding title to the claim or property involved, as opposed to others who may only be interested in or who may benefit by the litigation.  *United Healthcare Corp. v. American Trade Ins.*

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1  *Co., Ltd.*, 88 F.3d 563 (8th Cir. 1996); *Farrell Const. Co. v. Jefferson Parish*, 896 F.2d 136 (5th Cir.

2  1990).

3      Thus, a plaintiff "must allege facts sufficient to reveal that he suffered an injury, that the

4  injury was caused by the defendant's illegal conduct, and that his injury could be redressed by a

5  favorable outcome to the lawsuit." *Seckler v. Star Enterprise*, 124 F.3d 1399, 1406 (11th Cir.

6  1997). Here, the Union specifically admits that the real parties in interest are plan participants and

7  that the Union did not attempt to seek any recovery that would flow solely to the Union.

8      Federal statutes may authorize one person to sue on behalf of another without joining the

9  party or parties for whose benefit the action is brought. In such case, the person authorized to sue

10  is the real party in interest. See FRCP 17(a). In such circumstances, Plaintiffs need specific

11  federal statutes authorizing its right to sue. However, ERISA § 502(a), 29 U.S.C. § 1132(a),

12  provides that an action may be brought only by a "participant, beneficiary, fiduciary or the

13  Secretary of Labor." *See Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir.1989) (plaintiff must be

14  either a participant or a beneficiary to bring an ERISA action); *cf. Utility Workers Union v.*

15  *Consumers Power Co.*, 453 F.Supp. 447 (E.D.Mich.1978) (employee organization has no standing

16  under ERISA § 502), *aff'd*, 637 F.2d 1082 (6th Cir.1981), *vacated on other grounds*, 451 U.S. 1014

17  (1980).

18      ERISA's statutory framework lists those persons empowered to bring a civil action with

19  particularity. Despite the fact that an ERISA claim may derive from a collective bargaining

20  agreement negotiated by a union, Congress has obviously chosen not to include a labor union as an

21  appropriate party to vindicate employees' rights under ERISA." *Intern. Union v. Auto Glass*

22  *Employees Fed. Credit*, 858 F.Supp. 711, 722 (M.D.Tenn. 1994). The Union, "simply by virtue of

23  its status as a labor union, does not fall within those who are designated by the statue as capable of

24  bringing an ERISA action." *Id.* at 721. *See also New Jersey State AFL-CIO v. New Jersey*, 747

25  F.2d 891, 893 (3d Cir.1984) ("It is clear from the statute that labor unions are neither participants

26  nor beneficiaries").

27      The Court should also keep in mind that the cases cited by Plaintiffs are not from the Sixth

28

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    Circuit.  The case on point is *Waxman v. Luna*, supra.  If the Sixth Circuit wanted to overrule that

2    case it had an opportunity to do so in *Local 6-0682 International Union of Paper, Allied-Industrial,*

3    *Chemical & Energy Workers v. National Industrial Group Pension Plan*, 342 F.3d 606 (6th Cir.

4    2003), the case cited by Plaintiffs in note 7 of their cross-brief.  However, the Sixth Circuit

5    specifically refused to create common law standing for the union.  In fact, it reiterated that a union

6    is not one of the enumerated parties listed in § 502(a) of ERISA. *Id.* at 609, n.1.

7         Because ERISA § 502(a) does not authorize the Union's standing to sue, it cannot be a

8    Plaintiff in this lawsuit let alone seek judgment against Crary.

9    **G.    CRARY IS NOT LIABLE AS A PARTY-IN-INTEREST.**

10         Also at the eleventh hour in this litigation, Plaintiffs allege Crary is now liable as a party-

11   in-interest under ERISA § (14)(A).  The new allegation is set forth in Plaintiffs' cross-brief, therein

12   alleging that Crary was a non-fiduciary but a party-in-interest, under ERISA § 3(14)(E)(i), and that

13   he engaged in prohibited transactions.  Because Plaintiffs did not allege this cause of action in the

14   first amended complaint, the Court should disregard Plaintiffs' argument now.

15         To hold a non-fiduciary party-in-interest liable, the defendant's knowledge of wrongdoing

16   must be established.  The Supreme Court has held that a cause of action lies under ERISA

17   § 502(a)(3) against a nonfiduciary party-in-interest who *knowingly* participates in a prohibited

18   transaction (emphasis added).  *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S.

19   238 (2000).  A nonfiduciary is liable only for its "knowing participation" in a fiduciary's breach.

20   *Id.* at 248.  *Brock v. Hendershott*, 840 F.2d 339 (6th Cir. 1988), a case cited by Plaintiffs, also

21   required the non-fiduciaries to have actual or constructive knowledge of wrongdoing in order to

22   hold them liable under ERISA.

23        Plaintiffs not only have failed to establish Crary's actual or constructive knowledge of

24   wrongdoing, but have also failed to present any evidence that Crary engaged in ANY prohibited

25   transactions.

26   **H.    PLAINTIFFS DO NOT SEEK APPROPRIATE REMEDIES IN THIS MATTER.**

27         The question of whether a participant can bring suit for breach of fiduciary duty under

28

§ 1132(a)(3), however, is separate and distinct from the questions of the form of relief available under that section.  See, *Hoeberling v. Nolan*, 49 F.Supp.2d 575 (E.D.Mich. 1999).  Plaintiffs confuse these two different issues.

    1)    <u>Remedies will only inure to the benefit of the plan as a whole.</u>

A plan participant may not sue in his individual capacity under § 1109, which provides that a fiduciary "shall be personally liable to make good to such *plan* any losses to the plan resulting from each such breach." (emphasis added).  See, *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-44 (1985) (holding that recovery for a violation of § 1109 inures to the benefit of the plan as a whole, precluding suits by participants in their individual capacity).  Therefore, Plaintiffs' are not able to recoup their personal loss.

    2)    <u>Plaintiffs may only receive equitable relief for the benefit of the plan but not an award of monetary damages.</u>

The Supreme Court in *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993), held that money damages are the classic form of legal relief and that "other equitable relief" as used in § 1132(a)(3) does not encompass monetary damages.  *Mertens* specifically held that §1132(a)(3)'s reference to "equitable relief" was limited to the "remedy traditionally viewed as 'equitable,' such as injunction or restitution." *Id.* at 255.  Because money damages are "the classic form of *legal* relief," § 1132(a)(3) does not authorize suits for compensatory, much less punitive damages. *Id.* Consequently, in *Allinder v. Inter-City Products Corporation (USA)*, 152 F.3d 544 (6th Cir. 1998), the Sixth Circuit granted summary judgment to the defendants because Allinder sought compensatory and punitive damages which were not available to her as a matter of law.

Plaintiffs' reliance on *Varity Corp. v. Howe*, 516 U.S. 489 (1996), for the proposition that an individual plan participant may recover damages under § 1132(a)(3) is misplaced.  The plaintiffs in *Varity* were actually seeking a classic equitable remedy, reinstatement to a plan.  *See Hoeberling v. Nolan*, 49 F.Supp.2d 575 (E.D.Mich. 1999).  "Over the past decade, both the Supreme Court and the Sixth Circuit have thoroughly examined the question of whether a plan participant suing in an individual capacity may recover monetary damages as 'other equitable relief' under § 1132(a)(3).  More recent cases preclude an award of monetary damages." *Id.* at

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

578.

Because ERISA does not authorize breach of fiduciary duty claims for monetary damages by participants suing in their individual capacity, Plaintiffs are not entitled to summary judgment for monetary damages.

### III.

### CONCLUSION

Plaintiffs' motion is very late and responding to it and to the late third-party summary judgment motions filed with it is unfair to Crary.  However, viewed with an eye toward admissible evidence proffered by Plaintiffs to establish that they are permitted judgment against Crary, there is no substance.  Plaintiffs use a milieu of hearsay, unsupported assertions, misquoted testimony and completely discredited opinions to try to establish liability against Crary.  They fall far short.  The weight of admissible testimony is clear that Crary did not have the "power" claimed and did not actually have the knowledge that would have been necessary for him to try to intervene in Lassen and either breach a shareholders agreement or breach an employment contract.

Plaintiffs cannot establish liability against Crary because Crary never single-handedly had the authority or ability to appoint or remove Kristal.  Moreover, Plaintiffs do not have evidence to support their claims for breach of fiduciary duty.  For all the foregoing reasons, Plaintiffs' motion for summary judgment should be denied.

Dated:  December 10, 2003

Respectfully Submitted,

/s/ *Stephen R. Felson*
_____
Stephen R. Felson (0038432)
617 Vine St.  Suite 1401
Cincinnati, Ohio 45202
Phone: (513) 721-4900
Fax: (513) 639-7011

Paul David Marotta, California State Bar No. 111812
Jennifer Chen, California State Bar No. 205264
Christopher D. Denny, California State Bar No. 175338
THE CORPORATE LAW GROUP
500 Airport Boulevard, Suite 120
Burlingame, CA 94010

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Telephone:    (650) 227-8000
Facsimile:    (650) 227-8001

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on December 10, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following.

David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax: (513) 721-1178

I further certify that on December 8, 2003, I served the following by ordinary U.S. Mail:

Leonard Kristal (pro se)
107 Diablo Drive
Kentfield, CA 94904

And by email at ldkristal@yahoo.com

*/s/ Stephen R. Felson*

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT