**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION, CINCINNATI**

| | | |
|---|---|---|
| **Dennis Allen, et al.** | : | |
| **Plaintiffs** | : | **Case No. C-1-01-159** |
| **v.** | : | **Judge Herman S. Weber**<br>**Magistrate Judge Timothy S. Hogan** |
| **Leonard Kristal** | : | |
| **and** | : | **PLAINTIFFS COMBINED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF SUMMARY JUDGMENT AGAINST DEFENDANTS JOHN L. CRARY AND LEONARD D. KRISTAL** |
| **John Crary** | : | |
| **Defendants** | : | |

**I. FINDINGS OF FACT**[1]

**A. Background information regarding Plaintiffs, Defendant John L. Crary, The Lassen Companies, Inc. and Wright-Bernet, Inc.**

1. Plaintiff Dennis Allen was an employee at Wright-Bernet, Inc.

   a. Amended Complaint ¶ 5; Kristal s Answer ¶ 5.

2. Plaintiff Mary Jane Cracraft was an employee at Wright-Bernet, Inc.

   a. Amended Complaint ¶ 6; Kristal s Answer ¶ 6.

3. Plaintiff Glass, Molders, Pottery, Plastic and Allied Industrial Workers International Union, AFL-CIO, Local No. 41 ( Union ) was the sole and exclusive labor organization which represented the former employees of Wright-Bernet,

[1] Plaintiffs have moved for summary judgment against defendant Kristal, and have separately cross-moved for summary judgement against defendant Crary. In the interests of judicial efficiency we submit one, combined Proposed Findings of Fact and Conclusions of Law for both motions.

Inc.

a. Amended Complaint ¶ 4; Kristal s Answer ¶ 4; Declaration of David M. Cook, Exhibit B - Collective Bargaining Agreement.

4. The Lassen Companies, Inc. ( Lassen ) was the holding company that owned Wright-Bernet, Inc. in Hamilton, Ohio.

a. Amended Complaint ¶ 8; Kristal s Answer ¶ 8.

5. Lassen selected Great-West Life & Annuity Insurance Company ( Great West ) to administer the Lassen Health Benefits Plans ( Health Plans ), which included an HMO and PPO plan.

a. Jones, p. 13.

6. Lassen offered participation in a 401K Retirement Savings Plan ( 401K Plan ) to employees of Wright-Bernet

a. Kristal (I), p. 56

b. Monroe (I), p. 34.

7. Leonard D. Kristal was the president and CEO of Lassen.

a. Depo. Ex. 96.; Kristal s Answer, ¶ 9.

9. John L Crary - Crary was the majority owner of Lassen, and was the chairman of Lassen s Board of Directors.

a. Crary, p. 15; DX 97 - Crary Consulting Agreement; DX 98 - Crary letter of resignation; Dedaration of David M. Cook, Exhibit A - Consent to Action Taken Without Meeting and in Lieu of Organizational Meeting of Board of Directors of The Lassen Companies, Inc., December 31, 1998.

10. Crary helped negotiate the collective bargaining agreement between Lassen and the Union. As a result of those negotiations, Wright Bernet continued to deduct employees contributions to the health plan from employees paychecks. Deductions occurred from all employees wages, including non-union and management employees.

    a. Lindemuth, p. 51;

    b. Kristal, p. 18.

11. Crary maintained his position as director and Chairman of the Board from January 1, 1999 to August 7, 2000.

    a. Crary, p. 22; DX 97 - Crary Consulting Agreement; DX 98 - Crary letter of resignation.

12. Lassen s Board of Directors consisted of three members: John Crary, Leonard Kristal and Robert Morris.

    a. Crary, p. 15; Declaration of David M. Cook, Exhibit A - Consent to Action Taken Without Meeting and in Lieu of Organizational Meeting of Board of Directors of The Lassen Companies, Inc., December 31, 1998.

**B. Kristal s fiduciary status and breach of fiduciary duties**

13. Kristal was the named plan administrator for the 401(k) plan.

    a. Kristal (1), p. 10; Declaration of David M. Cook, Exhibit C - letter written by Leonard D. Kristal dated September 17, 2001.

14. Kristal exercised discretion and control over management of the health and 401K Plans and/or Plan assets.

a. Leath, pp. 20-21; DX 2;

b. Monroe (I), pp. 42-43; DX 16

15. Kristal admits he functioned as a fiduciary with respect to the Plans.

a. R. 3, Answer - Lassen Companies, Inc. and Kristal, ¶ 9, ¶10.

16. Lassen, under the direction of Kristal, stopped timely paying its monthly premium and payment of claims to Great West.

a. Jones s dep. at 14, 41-42; Depo. Exh. 40 (5/17/99 facsimile from Jones to Kristal;

b. Leath, pp. 25-26;

c. Pickering, pp. 26-27.

17. Due to Kristal s actions, Great West put the Health Plans on administrative hold twice for several months in 1999 and 2000, and then ultimately advised Lassen in July, 2000 that it was terminating the Plans.

a. Monroe II, pp. 71-72, 103; Depo. Ex. 69 - July 19, 2000 letter from Great West to Lassen.

18. Due to Lassen s failure to pay Great West, and to remit employee contributions to the plan, Lassen employees medical bills went unpaid, in the amount of $123,720.22.

a. Pickering dep. at 22-23;

b. Depo. Ex. 11, Ex. A.

19. Kristal diverted contributions to the health plans deducted from employees wages to general purposes of the corporation.

a. Leath, pp. 23-24.

20. Kristal, in his capacity as Lassen Companies, Inc. Section 401K Plan plan administrator completely failed to file either the Department of Labor Forms 5500, or the IRS Forms 990 for the plan years 2000 and 2001.

    a. Kristal (II), pp. 90, 94-95, 97.

21. Kristal in his capacity as 401K plan administrator failed to process the accounts of participants who terminated employment with Lassen.

    a. Amended Complaint, ¶ 30.

22. Polly Jones of Pickering Insurance Services forwarded Kristal specific information necessary to preparation fo the Form 5500, and notice of its due date on June 6, 2000.

    a. Jones, p. 82; Depo. Ex. 67.

**C. Crary s fiduciary status and breach of fiduciary duties.**

23. Crary, as Chairman of the Board of Lassen, and as majority shareholder of the corporation, possessed the power to appoint, retain and/or remove Leonard D. Kristal as fiduciary to the plans at issue in this action.

    a. Crary, p. 25; Depo. Ex. 96 - Kristal s Employment Agreement;

    b. Kristal II, pp. 82, 105, 142, 146-148, 174)

24. Crary was the main capital partner in Lassen.

    a. Crary, pp. 15, 52.

25. Crary knew Kristal acted as a fiduciary with respect to Wright-Bernet employees benefit plans.

    a. Crary, p. 81.

26. The Lassen Companies, Inc. paid Crary $130,000 per year to exercise all of the duties and responsibilities customarily associated with the position [of Chairman of the Board].

    a. Dep. Ex. 97 - Crarys Consulting Agreement.

27. Crary and Robert Morris, a member of the Board and Vice President of Lassen, expressly conveyed to the management personnel at Wright-Bernet that while Kristal was primarily responsible for operating the day-to day activities at Lassen, Crary was the top decision-maker in the company. In fact, upon purchasing Wright Bernet, between late 1998 and February 1999, Crary personally and directly negotiated with the GMP for the contract provisions concerning the percentage of employee contributions to the health plan.

    a. Bernet, Jr., pp. 26-27, 48;

    b. Lindemuth, p. 24; 26-2745-

    c. Nolan, p. 31,43-55 55-57

28. Robert Morris supported Kristal s ouster.

    a. Bernet, pp. 33-34.

29. Crary considered removing Kristal from involvement at Wright-Bernet.

    a. Bernet, pp. 33-34.

30. Crary made no attempt or effort to monitor the actions of Kristal with respect to Kristal s performance of fiduciary functions with respect to the plans at issue here.

    a. Crary, p. 81-82.

31. Crary had actual knowledge of Kristal s failure to remit deducted health care

premiums to Great West

a. Jones, p. 16-17; Depo Ex. 90 - Crary medical bills;

b. Pickering, pp. 56;

c. Lindemuth, pp. 36, 66;

d. Pekar, pp. 11-12, 18, 51-52.

32. Crary had constructive knowledge of Kristal s failure to remit deducted health care premiums to Great West.

a. Bernet, Jr., pp. 20-22, 30, 36, 65; Depo Ex. 107;

b. Nolan, pp. 24-26, 29-30.

33. Crary had constructive knowledge that Kristal diverted deducted health plan contributions to general corporate purposes.

a. Kristal II, pp. xx, yy.

34. Bernet informed Crary, Kristal and Morris of his displeasure of the operation of Wright-Bernet by a letter dated June 15, 1999 and specifically addressed Lassen s failure to remit child support payments withheld from employee checks.

a. Bernet, Jr., p. 48; Depo Ex. 107 - Bernet, Jr. Letter to Lassen Business Partners;

b. Lindemuth, p. 18.

35. Upon receipt of the letter, Crary immediately traveled to Wright-Bernet on June 16, 1999 to address Bernet s concerns.

a. Bernet, Jr., p. 48; Depo Ex. 107 - Bernet, Jr. Letter to Lassen Business Partners;

b. Lindemuth, p. 21.

36. Crary met at the Wright Bernet facility with plant management on June 16, 1999, including with Director of Operations, Michael Lindemuth. The manager of Lassen s Tennessee operation, Gina LoFredo, also attended the meeting. During that meeting, Lindemuth brought to Crary s attention meeting that child support payments withheld from employee paychecks were not being remitted to the proper agencies. As a result one employee was arrested on the shop floor for non-payment of child support.

    a. Lindemuth, pp. 21-22.

37. Robert Morris was fully aware of Kristal s failure to remit deducted health care premiums to Great West.

    a. Lindemuth, p. 70;

    b. Pekar, p. 49.

38. Morris advised Lindemuth to obtain his own health insurance coverage separate from the coverage offered by Lassen.

    a. Lindemuth, p.70.

39. Morris advised Pekar of his contact with Crary.

    a. Pekar, p. 49.

40. Crary regularly received reports, updates and data as to the finances and operation of the Lassen Companies, Inc. from CEO Kristal.

    a. Kristal II, p. 133.

    b. Depo. Ex. 99 -Kristal - Crary e-mail with financial attachments.

41. Crary exercised discretionary control over the management and/or disposition of

assets of the Plans.

a. Kristal II, pp. 81-87, 102-103, 132-133, 151-152, 155, 157, 177-179, 192, 206, 210, 233-234.

## II. CONCLUSIONS OF LAW

42. In determining whether a person is a fiduciary under ERISA, a court will use a functional analysis, examining whether a person actually exercises any of the functions described in the definition of fiduciary set forth in ERISA. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999). A person is a plan fiduciary to the extent he or she exercises any discretionary control or discretionary authority over plan management or any authority or control over management or disposition of plan assets. ERISA Section 3(21)(A); 29 U.S.C. §1002(21)(A). Leonard Kristal by his conversion of plan assets (the health plan contributions deducted from employee paychecks) to the general purposes of the corporation, acted as a fiduciary under ERISA through his exercise of discretion and control over plan assets.

42. Kristal breached his fiduciary duties of loyalty and prudence under ERISA by failing to remit deducted employee health premiums to the insurance carrier. ERISA Section 404(a)(1); 29 U.S.C. § 1104(a)(1). *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2nd Cir. 1997)

43. Courts, including the Sixth Circuit, have ruled that where an employer establishes and maintains an employee benefit plan, members of the employer s board of directors are plan fiduciaries to the extent they control selection or

termination of [plan] fiduciaries. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999); *Authier v. Ginsberg*, 757 F.2d 796, 801 (6th Cir. 1985) (summarizing holding of *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984), cert. denied, 489 U.S. 1078 (1989)); *accord*: *American Federation of Unions v. Equitable Life Assurance Society of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996)*; Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988); *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc. Of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988); *Mehling v. New York Life Ins. Co.*, 163 F. Supp.2d 502, 509-10 (E.D. Pa. 2001); *Liss v. Smith*, 991 F. Supp. 278, 310, 311 (S.D.N.Y. 1998); *Tittle v. Enron Corp. (In re Enron Corp. Sec. Derivative & ERISA Litig.)*, 2003 U.S. Dist. LEXIS 17492 at *60 (S.D. Tex. September 30, 2003); *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132 (N.D. Ind. 1991); *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992), *cert. denied*, 506 U.S. 1054 (1993); *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 640 (W.D. Wis. 1979); *Shaw v. International Ass n of Machinists and Aerospace Workers Pension Plan*, 563 F.Supp. 653, 657 (C.D. Cal. 1983); 29 C.F.R. § 2500.75-8 (1983); *Martin v. Harline*, 1992 U.S. Dist. LEXIS 8778 at *26 (D. Utah 1992); *Arakelian v. National Western Life Ins. Co.*, 755 F. Supp. 1080, 1084 (D.D.C. 1990); 29 C.F.R. § 2509.75-8, D-4. D-17.

44. Crary served as one of three members of the Board of Directors of Lassen, and as its Chairman. Crary exercised his authority as a member of the Board and as

Chairman to engage Kristal as President and CEO of Lassen. Crary knew in engaging Kristal as CEO of Lassen that Kristal would have full responsibility with respect to the operation of all Lassen employee benefit plans. Crary had the power as Chairman (and majority owner) of Lassen to remove Kristal from his functions with respect to the employee benefit plans. Crary s authority to appoint and remove Kristal from these functions conferred discretionary authority in Crary with respect to the management and administration of Lassen s employee benefit plans. "[T]he power . . . to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of §§ 1002(21)(A) *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996); ERISA Interpretative Bulletin 75-8, 29 C.F.R. § 2500.75-8 (1983). Crary was a fiduciary to the Lassen employee benefits plans.

45. Crary, holding the power and authority to appoint and remove Kristal as a fiduciary to the Lassen plans, had a fiduciary duty to monitor and oversee Kristal in the exercise of Kristal s fiduciary duties. As a result of a director s fiduciary status, he or she has a duty to monitor the actions of appointed [plan fiduciaries], which may impose a duty to prevent wrongful conduct by such other fiduciaries. *Feilen*, 965 F.2d at 670. *See also*, *Martin v. Harline*, 1992 U.S. Dist. LEXIS 8778 at *26 (D. Utah 1992) (holding that a fiduciary responsible for the appointment and removal of the plan trustee breached the duty of prudence by failing to conduct any independent investigation into the trustee s qualifications to serve as fiduciary and periodically reviewing and generally

overseeing the trustee s performance after appointment); 29 C.F.R. § 2509.75-8, D-4. D-17.

46. Crary concedes he did nothing to monitor or oversee Kristal with respect to the management and administration of the Lassen employee benefit plans. In failing to act in the sole interest of the participants and beneficiaries of the plans by this failure, Crary breached his fiduciary duties of loyalty and prudence under ERISA. ERISA Section 404(a)(1); 29 U.S.C. §1104(a)(1).

48. Crary also functioned as a fiduciary here by his participation in corporate decisions to divert deducted employee health contributions to corporate purposes. In doing so, Crary exercised discretion and control over plan assets. ERISA Section 3(21)(A); 29 U.S.C. §1002(21)(A).

47. Crary may also be held liable here on the basis of co-fiduciary liability. ERISA Section 405(a); 29 U.S.C. §1105(a). Crary may be found liable under each of the three sub-sections of that provision. He knowingly participated in decisions to use plan assets for general corporate purposes. Section 405(a)(1). In his failure to monitor and oversee Kristal in the administration of the Lassen plans, he enabled Kristal to commit his fiduciary breaches. Section 405(a)(2). And, he had both actual and constructive knowledge of Kristal s breaches in the failure to remit the deducted health contributions to the insurance company. Section 405(a)(3). *Mazur v. Gaudet*, 826 F. Supp. 188, 190 (E.D. La. 1992).

48. Crary, either as a fiduciary or as a non-fiduciary party-in-interest, may be held liable for prohibited transactions under ERISA. ERISA Section 406(a)(1); 29 U.S.C §1106(a)(1). The Supreme Court has confirmed that liability for prohibited transactions may be imposed against non-fiduciary parties-in-interest. *Harris Trust and Savings Back v. Salomon Smith-Barney, Inc.*, 530 U.S. 238 (2000). (holding ERISA Section 502(a)(3) extends its authorization to suits against a non-fiduciary party-in-interest engaging in prohibited transactions). The Sixth Circuit has followed and applied that holding in *McDannold v. Star Bank*, 261 F.3d 478, 486 (6th Cir. 2001).

49. ERISA Section 406 prohibits a fiduciary to a plan from any transfer to or use by a party in interest of plan assets. 29 U.S.C. §1106(b)(1)(D). Kristal s conversion of plan assets (employee contributions) to corporate use constituted just such a transfer prohibited by Section 406. Crary knowingly participated in the decisions to divert these plan assets. Kristal breached his fiduciary duties by engaging in these prohibited transactions. By participating in these decisions Crary, as a fiduciary, also engaged in prohibited transactions under Section 406.

50. Regardless of whether Crary functioned as a fiduciary here, he was a party-in-interest under ERISA. Under ERISA Section 3(14)(E)(i), an owner of 50 percent or more of the combined voting power of all classes of stock or the total value of shares of all classes of stock of a corporation is a party-in-interest. 29 U.S.C. §1002(14)(E)(i). Crary, as a greater than 50% owner of Lassen, meets this definition. Accordingly, Crary is a party-in-interest and is liable for his

participation in the prohibited transactions as occurred here.

51. Crary s assertion that the GMP, the labor organization which represented the hourly employees at Wright Bernet, has no standing to sue lacks merit. The real parties-in-interest here are the employee/participants. The GMP asserts no claims purely on its own behalf, and has standing to bring claims on behalf of those represented employees. *Air Line Pilots Association v. Northwest Airlines*, 627 F.2d 272 (D.C. Cir. 1982); *Walker v. Jaffee*, 5 E.B.C. 2736 (W.D. Tex. 1983); *Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois*, 326 F.3d 919, 922 (7th Cir. 2003).

52. The remedies Plaintiffs seek in this case constitute appropriate relief under ERISA. Plaintiffs assert claims here under both ERISA Section 502(a)(2) and 502(a)(3). Section 502(a)(3) of ERISA provides a cause of action to enjoin an act or practice which violates a provision of Title I of ERISA or the terms of the plan, or to obtain any other appropriate equitable relief to redress such violation. 29 U.S.C. § 1132(a)(3). In addition, *Harris Trust v. Salomon Smith-Barney,* 530 U.S. 238 (2000), established that participants may recover losses to the plan caused by prohibited transactions under Section 502(a)(3).

53. Section 502(a)(3) authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations for injuries caused by violations that Section 502 does not elsewhere adequately remedy. *Varity v. Howe*, 516 U.S. 489, at 512 (1996). The Eighth Circuit in the decision below in *Varity* held that plaintiffs, though not entitled to compensatory damages under ERISA for breach of fiduciary duty,

were entitled to restitution for benefits of which they were deprived, and were awarded the amount of their past-due benefits. *Varity v. Howe*, 36 F.3d 746 (8th Cir. 1994), *aff'd on other grounds*, 516 U.S. 489 (1996).

54. Plaintiffs here seek restitution of what they would have received had Kristal not breached his fiduciary duties, and had Crary adequately performed his. Where as here, the plan at issue no longer exists (indeed, the employer itself no longer exists), in the exercise of its equitable powers, the court may either a) restore the plan to existence and order sufficient funds into the plan to award all benefits due (and to pay the cost of administration); or b) order equitable restitution directly to the participants in lieu of restoration of the plan (as permitted by the court in *Varity*). That equitable restitution would be in the amount of benefits due them under the terms of the plan.

55. Equitable restitution may be made to plan participants even if it takes the form of money payments. *Strom v. Goldman Sachs & Co.*, 202 F.3d 138 (2nd Cir. 1999). [N]ot all monetary relief is damages. Equity sometimes awards monetary relief, or the equivalent, and restitution is both a legal and an equitable remedy that is monetary yet distinct from damages. *Clair v. Harris Trust & Savings Bank*, 190 F.3d 495, at 498 (7th Cir. 1999) *cert. denied* 120 S.Ct. 1166 (2000).

56. The court awards Plaintiffs equitable restitution in the amount $123,720.22, the value of benefit payments due and not paid as a result of defendants breaches

of fiduciary duties and prohibited transactions.

57. The administrator of an employee pension and welfare benefits plan is required to file an annual report, IRS Form 5500, pursuant to ERISA Section 104(a), 29 U.S.C. § 1024(a), as required under ERISA Section 103(a)(1)(A), 29 U.S.C. § 1023(a)(1)(A). In addition, the employer or the plan administrator of a pension or deferred compensation plan is required to file an annual return with the Internal Revenue Service, IRS Form 990. IRC Section 6058(a). As the designated plan administrator, Kristal had direct responsibility for filing the required Forms 5500 and Forms 990. ERISA Sections 101(b) and 103, 29 U.S.C. Sections 1021(b) and 1023; IRC Section 6058(a). Defendant Crary, as a fiduciary to the plan, held direct responsibility to monitor and oversee Kristal in the performance of his functions as 401K plan administrator, including oversight of required functions such as filing of Forms 5500 and Forms 990.

58. The court finds defendants failed to properly file the required Forms 5500 and 990. No fines or penalties as may be assessed as a result of those failures shall affect in the value of any account balances in the Section 401K Plan. Any such penalties will be solely the personal responsibility of defendants.

59. Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). This Court has explained that these principles require that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. *Southwest Ohio Reg'l Council of Carpenters & Joiners of Am. v. Schaefer*, 267 F. Supp. 2d 813 (S.D. Ohio 2003) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)). Once the moving party has carried its initial burden of demonstrating the absence of material fact, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

60. Crary asserts that this court should judge the credibility of former Lassen CEO Kristal in determining the existence of disputed issues of material fact in this matter. Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment; rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

61. No genuine issues of material fact exist in this matter. Plaintiffs are entitled to summary judgment on all claims as a matter of law, as set forth above. Judgment accordingly.

Respectfully submitted,
/s/ David M. Cook

David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax: (513) 721-1178
Trial Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

II hel hereby certifl hereby certify that a copy of the foregoing has been served this 10th o November, 2003, via U.S. regular mail, postage prepaid, upon the following:

Leonard Kristal
107 Diablo Drive
Kentfield, California 94904

Stephen R. Felson
617 Vine Street
Suite 1401
Cincinnati, Ohio 45202
Trial Attorney For Defendant Crary

Paul D. Marotta
Christopher D. Denny
Jennifer Chen
The Corporate Law Group
500 Airport Blvd., Suite 120
Burlingame, CA 94010
Of Counsel for Defendant Crary__

s/ David M. Cook
______________________________
ATTORNEY FOR PLAINTIFFS