UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS ALLEN, ET AL.,                                          CASE NO. C-1-01-159
    PLAINTIFFS                                                    (WEBER, J.)
                                                               (HOGAN, M.J.)
    VS.

LEONARD KRISTAL, ET AL.,
    DEFENDANTS

REPORT AND RECOMMENDATION

Before the Court is Defendant, John Crary's Motion for Summary Judgment (Doc. 68), Plaintiff's Memorandum in Opposition (Doc. 74) and Defendant Crary's Reply (Doc. 96). For the reasons which follow, Defendant Crary's Motion is denied, as is Plaintiff's Motion for Summary Judgment (Doc. 74).

BACKGROUND INFORMATION

This is an ERISA case, brought by three individual Plaintiffs, Allen, Cracraft and Littrell and the Glass, Molders, Pottery, Plastic and Allied Industrial Workers Local No. 41, AFL-CIO, hereafter referred to as the "Union." The individual Plaintiffs were all employees of Wright-Bernet, Inc., a subsidiary of the Lassen Companies, a holding company which included Lassen Manufacturing in Southern California, Wright Bernet in Hamilton, Ohio, Indiana Woodworks in Indiana and Cleaning Specialties Company in Tennessee. Named as Defendants are the Lassen Company and two of its three directors, Kristal, who also served as CEO and Crary, Lassen's Chairman. Both Lassen Company and Robert Morris, the third director, whose primary function was in sales, have sought bankruptcy protection. Crary is the only solvent Defendant. The allegation against Mr. Crary is that he was a fiduciary under Lassen's health and 401 (k) plan and that he breached his fiduciary duty by his "repeated failures and refusals to monitor and oversee the performance of Kristal as a fiduciary." (Doc 74, at 3). The allegation against Kristal

was that he breached his fiduciary duty by "diverting employee contributions to the health plan by payroll deductions to support the general business purposes of Lassen." Plaintiffs allege that Defendant became a fiduciary under ERISA because he had the power to appoint and remove Kristal and as a fiduciary, Crary had the obligation to oversee Kristal's performance as plan fiduciary. For various reasons discussed below, Defendant Crary denies any liability to any of the Plaintiffs. Mr. Crary's deposition testimony is that he first found out that Kristal was diverting employee contributions for health care premiums when he was served a copy of the Complaint in this case. (*See* Crary dep., at 42-43).

## STANDING OF THE UNION TO SUE

Defendant Crary asserts that the Plaintiff Union has no standing to make claims under ERISA because it is not a "participant, beneficiary, fiduciary or the Secretary of Labor" as set forth in Section 502(a) of ERISA. Plaintiff Union, though representing that it seeks no recovery, asserts that its standing is based on its representative capacity. In support of this assertion, Plaintiff Union cites us to *Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois*, 326 F.3d 919 (7th Cir. 2003). The apparent conflict with Rule 23.2, which authorizes an unincorporated association, such as a union, to sue on behalf of its members, was resolved in the *Southern Illinois Carpenters* case in favor of permitting the union to remain a party, since the real parties in interest are plan participants and the union did not seek any compensation for itself. *New Jersey State AFL-CIO vs. New Jersey*, 747 F.2d 891 (3rd Cir. 1984), also a class action, stands for the same proposition that the Defendant Union advances in the instant case, that since the Union is neither a plan participant nor a beneficiary, it lacks standing to sue. Since it is clear that in the instant case, the Union seeks no recovery, we are engaging in a exercise of interest to bar examiners and academia, but of no interest to the litigants. The Union's representative claims against Defendant Crary do not rise or fall on its standing to sue, but are linked to the other Plaintiffs' claims against Crary and all three of those Plaintiffs are named individuals.

Since standing is rather like pregnancy, where either alternative is mutually exclusive, we feel compelled to hold that the Union lacks standing in light of the Sixth Circuit decision in *Waxman v. Luna*, 881 F.2d 237 (6th Cir. 1989).

## STANDING OF ALLEN AND CRAYCRAFT TO SUE

Dennis Allen and Mary Craycraft are individual beneficiaries of Lassen's health care plan, but not participants, beneficiaries or fiduciaries of the 401 (k) plan. Defendant argues that neither has standing to sue because Section 1109(a) of ERISA provides relief for the plan and not for individual beneficiaries. It is further argued that neither has sustained any loss relative to the health care plan because all of their health insurance bills have been paid. The proposition advanced by Defendants is supported by two Sixth Circuit cases, *Bryant v. International Fruit Prod. Co.*, 886 F.2d 132 (6th Cir. 1989) and *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir. 1993). Plaintiffs argue, however, that these cases have been preempted by the decision of the Supreme Court in *Varity v. Howe*, 516 U.S. 489 (1996), which held that plan beneficiaries were entitled to restitution for benefits to which they were entitled, but didn't receive. We agree that the *Verity* case is controlling and therefore cannot dismiss the claims of Craycraft and Allen for lack of standing.

## STANDING OF LITTRELL TO SUE

Defendant Crary argues that Plaintiff Lelan Littrell lacks standing to sue under ERISA because he is seeking to recover his personal damages rather than seek recovery for the 401 (k) plan itself and supports that argument with a response Littrell made to a deposition question posed by Defendant. Plaintiff denies that Littrell claims any personal or individual loss, but seeks recovery only for the plan. The deposition colloquy only demonstrates a lack of communication or understanding between lawyer and client. We are guided not by what the client believes, but what the relevant pleading states and the meaning placed upon same by the lawyer who drafted the document. Plaintiff Littrell has standing to seek recovery on behalf of the plan.

## LIABILITY OF DEFENDANT CRARY

In support of his Motion for Summary Judgment, Defendant Crary makes several argument. First, Crary asserts that he is not a fiduciary under ERISA. Second, Crary asserts that

even if he was, he had no actual or constructive knowledge of Kristal's breach of fiduciary duty. Lastly, Crary argues that he did not engage in any prohibited transactions under ERISA. We shall discuss each of these arguments.

Defendant Crary argues that he is not an ERISA fiduciary because did not exercise discretionary authority or control over either plan management or the disposition of plan assets, did not exercise discretionary authority over plan administration and rendered no investment advice regarding plan assets in return for any type of compensation. *See* Section 3(21)(A) of ERISA. Both parties agree that CEO Kristal was a fiduciary of both the Lassen 401(k) Plan and the Lassen Group Benefit Plan. Plaintiffs claim that because of Crary's status as a director and Chairman of the Board, that he is a fiduciary with respect to the Plans because he had the authority to both appoint and remove Kristal. Defendant Crary denies that he alone, acting without Board approval, had the power to either appoint or remove Kristal and Plaintiffs fail to demonstrate that he did. The Declarations of Crary, Morris, Robert Howard and Paul Marotta establish that Crary lacked such power to act alone. Plaintiffs cite *Authier v. Ginsberg*, 757 F.2d 113 (6th Cir. 1985), *Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984), *American Federation of Unions v. Equitable Life Assurance Society of the U.S.*, 841 F.2d 658 (5th Cir. 1988), *Tittle v. Enron, Corp.*, 2003 U.S. Dist LEXIS 17492 (S.D. Tex. Sept. 30, 2003) and *Martin v. Fellen*, 965 F.2d 660 (8th Cir. 1992) as authority for their point, that one who has the power to appoint and remove a plan fiduciary is a fiduciary because that person or entity retains the power to exercise discretionary authority over the management and administration of the plan.

First, the *Authier* case was brought by a an ERISA fiduciary for common law wrongful discharge. The Sixth Circuit held that the action was preempted by ERISA. The subject for which the case was cited arose in a footnote citing to *Leigh*. In the *Leigh* case, the Seventh Circuit held that an individual, Engle, and a corporation, Libco, were fiduciaries with respect to the Reliable Trust because both had the ability to control the appointments of the Trust's administrators. Engle had control over Libco Corp., an entity that owned 100% of the stock of Reliable Manufacturing. The Reliable Trust was created by Reliable Manufacturing as an employee's profit sharing trust. Although not dealing with the liability of a board of directors, the *Leigh* court did comment that "members of the board of directors may be responsible for the selection and retention of plan fiduciaries" and "in such a case, exercise discretionary control respecting management of such plan and are, therefore, fiduciaries with respect to the plan."

As fiduciaries, the directors were obligated to act with "appropriate prudence and reasonableness in overseeing" the plan administrators. If this standard applies only to the Board collectively and not to individual directors, the requirement is meaningless.

In *Amer. Fed of Unions v. Equitable Life Assur. Soc.*, 841 F.2d 658 (5th Cir. 1988), an individual named Holden was appointed plan administrator of Equitable's health benefits plan. Holden's mistakes caused a loss to the plan. Suit was filed against both Holden and Equitable under the theory that both were ERISA fiduciaries. The Circuit held that Holden was a fiduciary, but Equitable was not**.** The Court held that "fiduciary, for purposes of ERISA, is liberally construed in keeping with the remedial purposes of the Act" and that "a person is a fiduciary for purposes of ERISA only with respect to those portions of the plan over which he exercises discretionary authority or control." With respect to Equitable, the Circuit held that "liability for the failure to adequately train and supervise an ERISA fiduciary arises where the person exercising supervisory authority was in a position to appoint or remove plan administrators and monitor their activities." The plan's trustees, not Equitable, appointed and supervised Holden.

Defendant Crary asserts that Lassen is a Delaware corporation, governed by Delaware Corporation Code Section 141, which requires that the Board act though majority vote at a meeting in which a quorum is present. Defendant Crary says that Kristal, the alleged wrongdoer, was appointed CEO by the Lassen Board. Defendant Crary further says that Article IV, Section 6 of Lassen's bylaws grants no power to the Board Chairman other than the power to preside at Board meetings. Defendant Crary further says that a provision of the Shareholders Agreement as well as Kristal's Employment Agreement preclude Crary's ability to unilaterally control the actions of Kristal.

Plaintiffs' response, although not expressed in so many words, seems to be that while Crary lacked the power to individually control Kristal's actions, the Board, of which he was a member, did possess such control and Crary, as a Board member, was jointly and severally liable for the actions, or in this case, the failure to act, of the Lassen Board. Plaintiff also seems to say that there is at least a factual issue about who was in charge at Lassen, the CEO or the Board Chairman, who was also the majority stockholder. In any event, we do not find that corporate documents and contractual agreements, while certainly evidence of the manner in which corporate power was to be exercised, necessarily demonstrate that things were done in

conformity with those documents and agreements at Lassen.  How one actually functions means more than one's title.  See *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995).  If the Board appointed Kristal and possessed the power to remove him, then each member of the Board had a duty to exercise prudent supervision of him relative to each transaction subject to ERISA.

The same argument advanced by Defendant Crary was made in *Martin v. Schwab*, 192 WL 296531 (W.D. Mo.).  In the *Martin* case, Plaintiff sought to confer "fiduciary" status upon Board members, who defended in part because they couldn't act alone.  The trial court rejected the argument and held that the directors, as individuals, were fiduciaries and personally liable under 29 U.S.C.A., Section 1109(a).

Defendant Crary goes to great lengths explaining that Kristal, a director of Lassen, cannot be removed without shareholder approval.  What Plaintiffs sought, however, is not removal of Kristal as a director, but removal of him as plan administrator, an action that could have been taken by a majority vote of the Board.  Again, Crary argues that he could not have acted unilaterally.  Plaintiffs seem to argue that it was Crary's fiduciary duty to try.  That Defendant Crary did not try is apparent, but what is not so clear is whether or not he had an obligation to try and this, in turn, depends of what he knew and when he knew it.  Whether or not Defendant Crary had actual or constructive knowledge of Kristal's malfeasance is a factual question, not able to be resolved via the summary judgment procedure.

Plaintiffs assert that Randy Pickering informed Crary by telephone that Kristal was committing fraud with respect to employee contributions to the health care plan.  Crary produces telephone records which tend to show that such calls were never made.  Plaintiffs show that Crary called Pickering to inquire about the extent of his coverage after Crary's wife was involved in an automobile accident.  The "problem," according to Crary, involved a subrogation issue and not failure to pay premiums, about which he claimed to have no knowledge.  Plaintiffs cite to the deposition testimony of Michael Lindermuth that he had informed director Morris about the problem with employee deductions health insurance.  Crary argues that obtaining this testimony through Lindermuth is objectionable hearsay as is Lindermuth's statement that Bob Bernet had so informed Crary.  Crary's point is well-taken.

Once over the first hurdle, Plaintiff's task is to demonstrate what Crary knew and when he knew it.  Plaintiffs take this Court to task for saying in a previous Order that the obligation to monitor Kristal's performance was with respect to each transaction.  While the objection is

probably well-taken, because micro-managing is hardly the job of policymakers, nevertheless, one may exercise general supervision without looking over another's shoulder on a daily basis and a director such as Crary certainly had a duty to look further when once informed of CEO misbehavior. That Crary took no steps to insure that Kristal was performing his duties with respect to the benefit plans is established by the record. (*See* Crary dep., at 82).

The thrust of Plaintiff's case is that Kristal was diverting health care premiums, paid by payroll deductions from Lassen employees, to the general fund of the company, instead of remitting them to Great West Insurance Company. Direct evidence of this allegation comes from Pickering and likely from directors Morris and Kristal, but not via the hearsay statements of Michael Lindemuth and Michael Pekar. Direct evidence to the contrary comes not only from Crary, but from Polly Jones and Shirley Monroe, who Crary asserts were the plan administrators. Circumstantial evidence that Crary had no such information comes from the fact that he did not work on the Lassen premises and lived hundreds of miles away. Lassen's operating headquarters was in Irvine, California; Mr. Crary lives in San Francisco, approximately 350 miles from Irvine. (Crary dep., at 77).

While Plaintiffs describe the quality of the above-described evidence as "overwhelming" and of the "smoking gun" variety, Defendant Crary sees it as "irrelevant, deficient and inadmissible." We see it as creating a factual issue for determination by the triers of fact and make no assessment regarding the quality of the proof.

Lastly, Plaintiffs assert that Crary is liable for breach of fiduciary duty based on his own exercise of discretion over the management and disposition of plan assets and as a co-fiduciary to the Lassen plans. Plaintiffs base their argument on the fact that Crary participated in negotiating a collective bargaining agreement with the Union. While routine corporate transaction can have a collateral affect upon employee benefit plans, there are other purposes for such transactions. Defendant Crary did not fall within the ERISA definition of a fiduciary simply because a collective bargaining agreement that he participated in negotiating might have some affect upon an employee benefit plan. *See Sengpiel v. B.F. Goodrich*, 156 F.3d 660 (6th Cir. 1998).      Plaintiffs also argue that Crary may be held liable under Section 405 0f ERISA for his knowledge of and assistance to Kristal. Plaintiffs refer to Kristal's deposition testimony that Defendant Crary knew that the employee contributions to the health care plan were being diverted from the carrier. The evidence is circumstantial, but nonetheless present.

Kristal testified that Crary had negotiated with the Union that 21% of the premiums for medical insurance was to be deducted from employee paychecks and that Crary was "made aware" that Lassen was having cash flow problems and was having trouble paying the cost of medical insurance. Kristal also testified that he spoke to Crary "virtually every day" and that "We discussed virtually everything of any consequence that related to The Lassen Companies and its subsidiaries." Crary was the majority stockholder and was kept "completely in the loop" by Kristal who recognized that Crary held an M.B.A. from Columbia and respected his advice. (Kristal dep., Pg. 133). Although unable to pinpoint when and how Crary was told about the fact that earmarked deductions were being diverted to pay corporate bills other than medical insurance, there is a series of facts, supported by direct evidence, from which the triers of fact, might connect the dots. The motivation was arguably due to the shaky financial status of Lassen, as supplemented by Kristal's testimony that Lassen's primary workforce was Hispanic and that the workers tended to seek treatment at local clinics, rather than use their medical insurance. (Kristal dep., at 81-87).

## PLAINTIFF'S CROSS-MOTION AGAINST CRARY

Plaintiffs' Memorandum in Opposition to Defendant Crary's Motion for Summary Judgment contains a Cross-Motion for Summary Judgment against Crary. (Doc. 74). Crary objects to this filing as having been filed on November 10, 2003 and after the deadline for dispositive motions of October 15, 2003. Plaintiffs offer no excuse so such a dilatory filing and are apparently under the impression either that the best defense is a good offense or that time limits for dispositive motions only apply to defendants. Having concluded that there is a sufficient factual basis for Defendant Crary to stand trial, one would have to conclude that there are certainly material issues of fact with reference to Plaintiff's claims against Crary. Were it not for this fact, Plaintiff's Motion for Summary Judgment would be stricken as untimely filed. Instead, the Motion (Doc. 68) is DENIED on the merits.

October 22, 2004                             *s/Timothy S. Hogan*
                                                                  Timothy S. Hogan
                                                                  United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**Dennis Allen, et al.,**
    **Plaintiffs,**

                                        CASE NO. 1:01cv159

      v.                             (Weber, Sr., J.; Hogan, M.J.)

**Leonard Kristal, et al.,**
    **Defendants.**

# NOTICE

Attached hereto is the Report and Recommended decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 10/22/2004. Any party may object to the Magistrate's findings, recommendations, and report within (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge, and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made along with a memorandum of law setting forth the basis for such objection, (such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.